# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DIAGNOSTIC AFFILIATES OF NORTHEAST HOU, LLC D/B/A 24 HOUR COVIDRT-PCR LABORATORY** | § § § § § | **CIVIL ACTION NUMBER** <br><br> 2:21-cv-131 |
| **vs.** | § § | |
| **UNITED HEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC.; UNITED HEALTHCARE BENEFITS OF TEXAS, INC.; UNITED HEALTHCARE OF TEXAS, INC.; UMR, INC.; OPTUMHEALTH CARE SOLUTIONS, INC.; AMERICAN INTERNATIONAL GROUP, INC. MEDICAL PLAN; ANADARKO PETROLEUM CORP. HEALTH BENEFIT PLAN; APPLE INC. HEALTH AND WELFARE BENEFIT PLAN; GROUP HEALTH AND WELFARE PLANS(ARAMARK UNIFROM SERVICES); AT&T UMBRELLA BENEFIT PLAN NO. 1; AT&T UMBRELLA BENEFIT PLAN NO. 3; BAKER HUGHES, A GE COMPANY WELFARE BENEFITS PLAN; BAYLOR COLLEGE OF MEDICINE HEALTH AND WELFARE BENEFITS PLAN; BROOKDALE SENIOR LIVING, INC. WELFARE PLAN; C.H ROBINSON COMPANY GROUP HEALTH MAJOR MEDICAL PLAN; CALPINE CORPORATION EMPLOYEE BENEFIT PLAN; CATERPILLAR INC. GROUP INSURANCE MASTER TRUST;** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

CELANESE HEALTH AND WELFARE §
BENEFITS PROGRAM; §
CENTERPOINT ENERGY GROUP §
WELFARE BENEFITS PLAN FOR §
RETIREES; §
CITGO PETROLEUM CORPORATION §
DEFINED CONTRIBUTION §
MASTER TRUST; §
DELTA ACCOUNT BASED §
HEALTHCARE PLAN; §
ENVISION HEALTHCARE §
CORPORATION WELFARE §
BENEFITS PLAN; §
H&E EQUIPMENT SERVICES INC. §
BENEFIT PLAN; §
FLOUR EMPLOYEE BENEFIT §
TRUST PLAN; §
FRESENIUS MEDICAL CARE §
TRAVELLING NURSES HEALTH AND §
WELFARE BENEFITS PLAN; §
GEICO CORP. CONSOLIDATED §
WELFARE BENEFITS PROGRAM; §
GEOSPACE TECHNOLOGIES §
WELFARE BENEFIT PLAN; §
HUDSON GROUP (HG) INC. §
EMPLOYEE BENEFITS PLAN; §
IQOR HEALTH AND §
WELFARE PLAN; §
JONES LANG LASALLE GROUP §
BENEFITS PLAN; §
KELLOGG BROWN & ROOT, INC, §
WELFARE BENEFITS PLAN; §
KINDER MORGAN, INC. MASTER §
EMPLOYEE WELFARE PLAN; §
LEXICON PHARMACEUTICALS INC. §
COMPREHENSIVE WELFARE §
BENEFITS PLAN; §
LINEAGE LOGISTICS LLC §
BENEFITS PLAN; §
LOCKTON, INC. WELFARE §
BENEFITS PLAN; §
M/I HOMES, INC. HEALTH, LIFE AND §
DENTAL WELFARE PLAN; §
MAERSK INC. ACTIVE NONUNION §
HEALTH AND WELFARE PLAN; §
THE MALLINCKRODT §

PHARMACEUTICALS WELFARE                §
BENEFIT PLAN;                          §
MOTIVA ENTERPRISES LLC                 §
HEALTHAND WELLNESS BENEFIT             §
PLAN;                                  §
NOVO NORDISK INC. WELFARE              §
BENEFIT PLAN;                          §
PETSMART SMARTCHOICES                  §
BENEFIT PLAN;                          §
PROCTER AND GAMBLE RETIREE             §
WELFARE BENEFITS PLAN;                 §
RAILROAD EMPLOYEES NATIONAL            §
HEALTH FLEXIBLE SPENDING               §
ACCOUNT PLAN;                          §
RAISING CANES USA HEALTH AND           §
WELFARE BENEFITS WRAP PLAN;            §
REPUBLIC SERVICES INC.                 §
EMPLOYEE BENEFIT PLAN;                 §
REPUBLIC NATIONAL DISTRIBUTING         §
COMPANY, LLC WELFARE                   §
BENEFITS PLAN;                         §
SAIA MOTOR FREIGHT LINE LLC            §
EMPLOYEE PREFERRED                     §
PROVIDER PLAN;                         §
SIEMENS CORPORATION GROUP              §
INSURANCE AND FLEXIBLE                 §
BENEFITS PROGRAM;                      §
SKADDEN, ARPS, SLATE, MEAGHER          §
& FLOM PARTNERS' WELFARE               §
BENEFITS PLAN;                         §
SKYWEST INC. CAFETERIA PLAN;           §
SOUTHWEST AIRLINES CO.                 §
WELFARE BENEFIT PLAN;                  §
SPIRIT AIRLINES INC. HEALTH            §
AND WELFARE BENEFITS PLAN;             §
SWISSPORT NORTH AMERICA                §
HOLDINGS, INC. HEALTH &                §
WELFARE PLAN;                          §
TARGA RESOURCES LLC WELFARE            §
BENEFITS PLAN;                         §
TEXAS CAPITAL BANCSHARES               §
INC. EMPLOYEE BENEFIT PLAN;            §
TEXTRON NON-BARGAINED                  §
WELFARE BENEFITS PLAN;                 §
ADECCO, INC WELFARE                    §
BENEFITS PLAN;                         §

**T-MOBILE USA, INC. EMPLOYEE** §
**BENEFIT PLAN;** §
**TRANSOCEAN GROUP WELFARE** §
**BENEFIT PLAN;** §
**UHS WELFARE BENEFITS PLAN;** §
**UNITEDHEALTH GROUP** §
**VENTURES, LLC HEALTH AND** §
**WELFARE BENEFIT PLAN;** §
**VALERO ENERGY CORPORATION** §
**RETIREE BENEFITS PLAN;** §
**VALMONT INDUSTRIES INC.** §
**WELFARE BENEFIT PLAN;** §
**WALGREENS HEALTH AND** §
**WELFARE PLAN;** §
**WCA MANAGEMENT COMPANY,** §
**LP WELFARE BENEFIT PLAN;** §
**WEBBER, LLC WELFARE** §
**BENEFIT PLAN;** §
**WINSTEAD PC FLEXIBLE** §
**BENEFIT PLAN;** §
**GROUP BENEFITS PLAN FOR** §
**EMPLOYEES OF WORLEYPARSONS** §
**CORPORATION** §

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory ("24 Hour Covid" or "Plaintiff"), by and through its attorneys, bring its Original Complaint against United[1] and the Employer Plans[2], and allege as follows:

## INTRODUCTION

1.      Plaintiff brings this action against United and the Employer Plans that United administers because United has unjustifiably engaged in unconscionable and fraudulent conduct during the COVID-19 public health emergency period in order to evade and circumvent its obligations to fully cover all United Plan and Employer Plan members' COVID-19 diagnostic

---

[1] "**United**" refers to United Health Group, Inc., United Healthcare Services, Inc., United Healthcare Benefits of Texas, Inc., United Healthcare of Texas, Inc., UMR, Inc., United Healthcare Services, Inc., OptumHealth Care Solutions, Inc.

[2] "**Employer Plans**" refer to American International Group, Inc. Medical Plan; Anadarko Petroleum Corp. Health Benefit Plan; Apple Inc. Health And Welfare Benefit Plan; Group Health And Welfare Plans (Aramark Uniform Services); AT&T Umbrella Benefit Plan No. 1; AT&T Umbrella Benefit Plan No. 3; Baker Hughes, A GE Company Welfare Benefits Plan; Baylor College Of Medicine Health And Welfare Benefits Plan; Brookdale Senior Living, Inc. Welfare Plan; C.H Robinson Company Group Health Major Medical Plan; Calpine Corporation Employee Benefit Plan; Caterpillar Inc. Group Insurance Master Trust; Celanese Health And Welfare Benefits Program; Centerpoint Energy Group Welfare Benefits Plan For Retirees; Citgo Petroleum Corporation Defined Contribution Master Trust; Delta Account Based Healthcare Plan; Envision Healthcare Corporation Welfare Benefits Plan; H&E Equipment Services Inc. Benefit Plan; Flour Employee Benefit Trust Plan; Fresenius Medical Care Travelling Nurses Health And Welfare Benefits Plan; Geico Corp. Consolidated Welfare Benefits Program; Geospace Technologies Welfare Benefit Plan; Hudson Group (HG) Inc. Employee Benefits Plan; IQOR Health And Welfare Plan; Jones Lang Lasalle Group Benefits Plan; Kellogg Brown & Root, Inc, Welfare Benefits Plan; Kinder Morgan, Inc. Master Employee Welfare Plan; Lexicon Pharmaceuticals Inc. Comprehensive Welfare Benefits Plan; Lineage Logistics LLC Benefits Plan; Lockton, Inc. Welfare Benefits Plan; M/I Homes, Inc. Health, Life And Dental Welfare Plan; Maersk Inc. Active Nonunion Health And Welfare Plan; The Mallinckrodt Pharmaceuticals Welfare Benefit Plan; Motiva Enterprises LLC Health and Wellness Benefit Plan; Novo Nordisk Inc. Welfare Benefit Plan Petsmart Smartchoices Benefit Plan; Procter And Gamble Retiree Welfare Benefits Plan; Railroad Employees National Health Flexible Spending Account Plan; Raising Canes USA Health And Welfare Benefits Wrap Plan; Republic Services Inc. Employee Benefit Plan; Republic National Distributing Company, LLC Welfare Benefits Plan; Saia Motor Freight Line LLC Employee Preferred Provider Plan; Siemens Corporation Group Insurance And Flexible Benefits Program; Skadden, Arps, Slate, Meagher & Flom Partners' Welfare Benefits Plan; Skywest Inc. Cafeteria Plan; Southwest Airlines Co. Welfare Benefit Plan; Spirit Airlines Inc. Health And Welfare Benefits Plan; Swissport North America Holdings, Inc. Health & Welfare Plan; Targa Resources LLC Welfare Benefits Plan; Texas Capital Bancshares Inc. Employee Benefit Plan; Textron Non-Bargained Welfare Benefits Plan; Adecco, Inc Welfare Benefits Plan; T-Mobile USA, Inc. Employee Benefit Plan; Transocean Group Welfare Benefit Plan; UHS Welfare Benefits Plan; UnitedHealth Group Ventures, LLC Health And Welfare Benefit Plan; Valero Energy Corporation Retiree Benefits Plan; Valmont Industries Inc. Welfare Benefit Plan; Walgreens Health And Welfare Plan; WCA Management Company, LP Welfare Benefit Plan; Webber, LLC Welfare Benefit Plan; Winstead PC Flexible Benefit Plan; Group Benefits Plan For Employees Of Worleyparsons Corporation.

testing ("Covid Testing") services and to reimburse Plaintiff, an out-of-network ("OON") laboratory, for bona fide Covid Testing services offered to these same members in accordance with a Congressionally set methodology established and supported by the Families First Coronavirus Response Act (the "FFCRA"), the Coronavirus Aid, Relief, Economic Security Act (the "CARES Act"), Texas Department of Insurance Commissioner's Bulletin B-0017-20, and other Federal and Texas authorities and guidance.

2.      The importance of Covid Testing during a worldwide pandemic cannot be overlooked as it is the best mitigation mechanism in place to identify and curtail the spread of the COVID-19 virus. Due to the urgent need to facilitate the nation's response to the public health emergency posed by COVID-19, Congress passed the FFCRA and the CARES Act to, amongst other things, address issues pertaining to the costs of and access to Covid Testing during the COVID-19 pandemic.

3.      United and the Employer Plans' conduct (or lack thereof as it pertains to the Employer Plans) has undermined national efforts made to mitigate the spread of the COVID-19 virus as it has caused Plaintiff, and other similarly situated OON providers, to shutter specimen collection and testing locations and to potentially stop offering Covid Testing services altogether. United's misprocessing and denials of Covid Testing claims is nearing an insurmountable financial loss for Plaintiff and has caused Plaintiff to hemorrhage its own funds to cover such financial losses.

4.      United has not only mis-adjudicated almost every single Covid Testing claim submitted by Plaintiff on behalf of members of United Plans and Employer Plans administered by United, but has, in fact, denied the vast majority of Covid Testing claims that Plaintiff has submitted, the reasons for which are to be detailed throughout the course of this Original

Complaint.

5.      United's fraudulent behavior, in its capacity as an insurer and third-party claims administrator, and the Employer Plans' failures to oversee and regulate United's behavior (despite being provided with notice and an opportunity to remedy United's behavior) has had a material adverse effect on the nation's response to the COVID-19 pandemic as it has largely diminished access to testing, shifted financial responsibility for the cost of Covid Testing to the members of United Plans and Employer Plans, and, in the event of any future pandemics requiring the cooperation and the joint efforts of licensed medical facilities and professionals (*e.g.* Plaintiff), providers who have fallen victim to United's predatory practices will be hesitant and less likely to participate in any such future Federal and/or State efforts, in turn, jeopardizing any future pandemic responses.

6.      Plaintiff has incessantly attempted to contact United to inform it of its unlawful practices, has attempted to negotiate an agreed amount/rate to be reimbursed for Covid Testing services with United, and has provided notice to all Employer Plans of United's unlawful practices. However, all attempts by Plaintiff to amicably resolve this matter have failed, and Plaintiff is now left with no other option than to file this lawsuit against all Defendants.

7.      By way of this lawsuit, Plaintiff seeks to: (i) hold United accountable for its fraudulent and unlawful practices, and Employer Plans responsible for their failures to monitor and check United on its practices despite being provided with notice of such misconduct; (ii) ensure Plaintiff is properly reimbursed for its efforts to provide a public service in response to the COVID-19 public health emergency; and (iii) act as a safeguard against future unlawful practices instituted by United, Employer Plans, and other insurers and health plans in the event of other national public health emergencies.

**NATURE OF THE CLAIMS**

8.      Plaintiff is a CLIA certified high complexity laboratory that has requested emergency use authorization under Section 564 of the Federal Food, Drug, and Cosmetic Act; therefore, has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.[3] At the height of the pandemic Plaintiff operated seven specimen collection sites located across the States of Texas and Louisiana, and partnered with employers and independent school districts across Texas to render Covid Testing services to employees, teachers, students, and other staff members.[4]

9.      United provides health insurance and/or benefits to members of United Plans pursuant to a variety of health benefit plans and policies of insurance, including employer-sponsored benefit plans and individual health benefit plans.

10.     United also serves in the trusted role of third-party claims administrator for self-funded health plans, including the Employer Plans that are named as Defendants in this Original Complaint.

11.     Under ordinary circumstances, not all health plans insured or administered by United offer its members with access to OON providers and facilities. However, pursuant to Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, all group health plans and health insurance issuers offering group or individual health insurance coverage are required to provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of cost-sharing, prior authorization,

---

[3] See 21 U.S.C. § 360bbb–3.
[4] Humble ISD Expands Options for Student Covid Testing (https://www.humbleisd.net/covid19studenttesting);
Humble ISD expands free COVID-19 testing options to provide easier access for students
(https://communityimpact.com/houston/lake-houston-humble-kingwood/education/2021/01/07/humble-isd-expands-free-covid-19-testing-options-to-provide-easier-access-for-students/).

or other medical management requirements when such items or services are furnished on or after March 18, 2020, for the duration of the COVID-19 public health emergency regardless of whether the Covid Testing provider is an in-network or OON provider.[5]

12.    Furthermore, Section 3202(a) of the CARES Act provides that all group health plans and health insurance issuers covering Covid Testing items and services, as described in Section 6001 of the FFCRA must reimburse OON providers in an amount that equals the cash price for such Covid Testing services as listed by the OON provider on its public internet website or to negotiate a rate/amount to be paid that is less than the publicized cash price.

13.    United has intentionally disregarded its obligations to comply with its requirements to cover Covid Testing services without the imposition of cost-sharing and other medical management requirements pursuant to Section 6001 of the FFCRA and, in the instances Plaintiff is reimbursed for its Covid Testing services, has failed to reimburse Plaintiff in accordance with Section 3202(a) of the CARES Act. These violations are made to financially benefit United and, by acting in its own self-interests, has also caused the Employer Plans to be in violation of the FFCRA, the CARES Act, Employee Retirement Income Security Act of 1974 ("ERISA")[6], and applicable State law.

14.    United has set up complex processes and procedures: (i) to deny or underpay claims for arbitrary reasons; (ii) to force Plaintiff into a paperwork war of attrition in hopes of wearing down Plaintiff to the point of collapse through continuous inundation of Plaintiff's financial and operational resources; (iii) that have turned United's internal administrative appeals procedures into a kangaroo court where facts and law have no relevance, thus, rendering the administrative appeals process functionally meritless; (iv) to disinform its members, the Employer Plans and other

---

[5] *See* CMS FAQ Parts 42, 43, and 44, The FFCRA and the CARES Act.
[6] 29 U.S.C. § 1001 *et seq*.

self-funded health plans that it administers, Plaintiff and other similarly situated OON providers, the general public, and Federal and State regulators of its obligations to adjudicate Covid Testing claims in accordance with the FFCRA and the CARES Act; and (v) to ultimately engage in unscrupulous and fraudulent conduct  for its own financial benefit during this public health emergency.

15.    United's schemes and misconduct also violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). United has engaged in a pattern of racketeering activity that includes, but may not be limited to, the embezzlement and/or conversion of welfare funds and the repeated and continuous use of mails and wires in the furtherance of multiple schemes to defraud as detailed through this Original Complaint.

16.    Furthermore, because Employer Plans have contracted with United to act as their third-party claims administrator, the Employer Plans, through their silence and inaction, are dually liable for United's violations of the FFCRA, the CARES Act, and ERISA pursuant to 29 U.S.C. § 1105(a).

## **PARTIES**

17.    Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory is a limited liability company organized under the laws of the State of Texas, with its company headquarters located at 22751 Professional Drive, Kingwood, Texas 77339. Plaintiff has lawful standing to bring in all claims asserted herein.

18.    Defendant UnitedHealth Group, Inc. is a publicly traded Delaware corporation with its principal place of business in Minneapolis, Minnesota. It issues health insurance and administers group health plans nationally through its various wholly-owned and controlled subsidiaries, including but not limited to United Healthcare Services, Inc. UnitedHealth Group,

Inc. may be served with process by serving its registered agent for service The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

19.     Defendant United Healthcare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Minnetonka, Minnesota. It is a foreign for-profit corporation operating in the State of Texas, and it issues health insurance and administers plans that are funded by plan sponsors in Texas. It is a wholly-owned subsidiary of UnitedHealth Group, Inc. United Healthcare Services, Inc. may be served with process by serving its registered agent for service CT Corporation System, 1010 Dale Street N, St. Paul, Minnesota, 55117-5603.

20.     Defendant United Healthcare Benefits of Texas, Inc. is a corporation organized under the laws of the State of Texas, with its principal place of business in Austin, Texas. It is a for-profit corporation operating in the State of Texas, and its issues health insurance and administers plans that are funded by plan sponsors in Texas. It is a wholly-owned subsidiary of UnitedHealth Group, Inc. United Healthcare Benefits of Texas, Inc. may be served with process by serving its registered agent for service CT Corporation System, 350 North St. Paul Street, Dallas Texas 75201.

21.     Defendant UnitedHealthcare of Texas, Inc. is a corporation organized under the laws of the State of Texas, with its principal place of business in Austin, Texas. It is a for-profit corporation operating in the State of Texas, and its issues health insurance and administers plans that are funded by plan sponsors in Texas. It is a wholly-owned subsidiary of UnitedHealth Group, Inc. UnitedHealthcare of Texas, Inc. may be served with process by serving its registered agent for service CT Corporation System, 350 North St. Paul Street, Dallas Texas 75201.

22.     Defendant UMR, Inc. is a corporation organized under the laws of the State of Wisconsin, with its principal place of business in Wausau, Wisconsin. It is a foreign for-profit corporation operating in the State of Texas and administers plans that are funded by plan sponsors in Texas. It is a wholly-owned subsidiary of UnitedHealth Group, Inc. UMR, Inc. may be served with process by serving its registered agent for service Commissioner of Insurance, 333 Guadalupe Street, Austin, Texas 78701.

24.     Defendant OptumHealth Care Solutions, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Eden Prairie, Minnesota. It is a foreign for-profit corporation operating in the State of Texas and administers plans that are funded by plan sponsors in Texas. It is a wholly-owned subsidiary of UnitedHealth Group, Inc. OptumHealth Care Solutions, Inc. may be served with process by serving its registered agent for service Commissioner of Insurance, 333 Guadalupe Street, Austin, Texas 78701.

25.     Defendant American International Group, Inc. Medical Plan (the "AIG Plan") is a self-funded health plan subject to ERISA. The AIG Plan may be served with process by serving its Plan Administrator, Justin Orlando and/or Megan Moran, at 175 Water Street, 21st Floor, New York, New York 10038.

26.     Defendant Anadarko Petroleum Corp. Health Benefits Plan (the "Anadarko" Plan) is a self-funded health plan subject to ERISA. The Anadarko Plan may be served with process by serving its Plan Administrator, Madeline N. Pfahler, at Human Resources Department 5 Greenway Plaza, Suite 110 Houston, TX 77046-0521.

27.     Defendant Apple Inc. Health and Welfare Benefit Plan (the "Apple Plan") is a self-funded health plan subject to ERISA. The Apple Plan may be served with process by servingits Plan Administrator, Grace Gippetti Munson, at One Apple Park Way Cupertino, CA 95014.

28.     Defendant Group Health and Welfare Plans (Aramark Unifrom Services) (the "Aramark plan") is a self-funded health plan subject to ERISA. The Aramark Plan may be served with process by serving its Plan Administrator, Cheryl Heimer, at 115 N First St Burbank, CA 91502-1856.

29.     Defendant AT&T Umbrella Benefit Plan No. 1 (the "AT&T No. 1 Plan") is a self-funded health plan subject to ERISA. The AT&T Plan may be served with process by serving its Plan Administrator, Paul W. Stephens, at Po Box 132160 Dallas, TX 75313-2160.

30.     Defendant AT&T Umbrella Benefit Plan No. 3 (the "AT&T No. 3 Plan") is a self-funded health plan subject to ERISA. The AT&T Plan may be served with process by serving its Plan Administrator, Paul W. Stephens, at Po Box 132160 Dallas, TX 75313-2160.

31.     Defendant Baker Hughes, A GE Company Welfare Benefits Plan (the "Baker Hughes Plan") is a self-funded health plan subject to ERISA. The Baker Hughes Plan may be served with process by serving its Plan Administrator, Bernard Casey Makel, at 17021 Aldine Westfield Houston, TX 77073.

32.     Defendant Baylor College of Medicine Health and Welfare Benefits Plan (the "Baylor Plan") is a self-funded health plan subject to ERISA. The Baylor Plan may be served with process by serving its Plan Administrator, Angela Garcia and/or Tamara Norris, at C/O Accounting One Baylor Plaza Bcm200 Houston, TX 77030.

33.     Defendant Brookdale Senior Living, Inc. Welfare Plan (the "Brookdale Plan") is a self-funded health plan subject to ERISA. The Brookdale Plan may be served with process by serving its Plan Administrator, Diane Johnson May, at 6737 W Washington Street Suite 2300 Milwaukee, WI 53214.

34.     Defendant C.H Robinson Company Group Health Major Medical Plan (the "Robinson Plan") is a self-funded health plan subject to ERISA. The Robinson Plan may be served with process by serving its Plan Administrator, John Donovan, at 14701 Charlson Rd, Eden Prairie, Mn 55347-5076.

35.     Defendant Calpine Corporation Employee Benefit Plan (the "Calpine Plan") is a self-funded health plan subject to ERISA. The Calpine Plan may be served with process by serving its Plan Administrator, Tonja Benjamin, at 717 Texas Ave. Suite 1000 Houston, TX 77002.

36.     Defendant Caterpillar Inc. Group Insurance Master Trust (the "Caterpillar Plan") is a self-funded health plan subject to ERISA. The Caterpillar Plan may be served with process by serving its Plan Administrator, Todd Bisping, at 510 Lake Cook Road Deerfield, IL 60015.

37.     Defendant Celanese Health and Welfare Benefits Program (the "Celanese Plan") is a self-funded health plan subject to ERISA. The Celanese Plan may be served with process by serving its Plan Administrator, Jose A Motta, at 222 West Las Colinas Boulevard Suite 900N Irving, TX 75039.

38.     Defendant Centerpoint Energy Group Welfare Benefits Plan for Retirees (the "Centerpoint Plan") is a self-funded health plan subject to ERISA. The Centerpoint Plan may be served with process by serving its Plan Administrator, Carla A. Kneipp, at 1111 Louisiana Street Houston, TX 77002-5230.

39.     Defendant Citgo Petroleum Corporation Defined Contribution Master Trust (the "Citco Plan") is a self-funded health plan subject to ERISA. The Citco Plan may be served with process by serving its Plan Administrator, James R. Shoemaker, at Po Box 4689 Houston, TX 77210-4689.

40.     Defendant Delta Account Based Healthcare Plan (the "Delta Plan") is a self- funded health plan subject to ERISA. The Delta Plan may be served with process by serving its Plan Administrator, Greg Tahvonen, at 1030 Delta Boulevard Atlanta, GA 30354.

41.     Defendant Envision Healthcare Corporation Welfare Benefits Plan (the "Envision Plan") is a self-funded health plan subject to ERISA. The Envision Plan may be served with process by serving its Plan Administrator, Donald King, at 1A Burton Hills Boulevard Nashville, TN 37215.

42.     Defendant H&E Equipment Services Inc. Benefit Plan (the "H&E Plan") is a self-funded health plan subject to ERISA. The H&E Plan may be served with process by serving its Plan Administrator, Angela Broocks, at 7500 Pecue Ln Baton Rouge, LA 70809-5107.

43.     Defendant Flour Employee Benefit Trust Plan (the "Flour Plan") is a self-funded health plan subject to ERISA. The Flour Plan may be served with process by serving its Plan Administrator, Stacy Dillow, at 6700 Las Colinas Boulevard Irving, TX 75039.

44.     Defendant Fresenius Medical Care Travelling Nurses Health and Welfare Benefits Plan (the "Fresenius Plan") is a self-funded health plan subject to ERISA. The Fresenius Plan may be served with process by serving its Plan Administrator, Steven Covino, at 920 Winter Street Waltham, MA 02451.

45.     Defendant Geico Corp. Consolidated Welfare Benefits Program (the "Geico Plan") is a self-funded health plan subject to ERISA. The Geico Plan may be served with process by serving its Plan Administrator, H. A. White and/or J.C Stewart, at C/O Corporation Tax Division One Geico Plaza Washington, DC 20076.

46.      Defendant Geospace Technologies Welfare Benefit Plan (the "Geospace Plan") is a self-funded health plan subject to ERISA. The Geospace Plan may be served with process by serving its Plan Administrator, Lacey Rice, at 7007 Pinemont Dr Houston, TX 77040-6601.

47.      Defendant Hudson Group (HG) Inc. Employee Benefits Plan (the "Hudson Plan") is a self-funded health plan subject to ERISA. The Hudson Plan may be served with process by serving its Plan Administrator, William Wolf, at One Meadowlands Plaza, 6th Floor East Rutherford, NJ 07073.

48.      Defendant IQOR Health and Welfare Plan (the "IQOR Plan") is a self-funded health plan subject to ERISA. The IQOR Plan may be served with process by serving its Plan Administrator, Ian Carroll, at 200 Central Ave 7th Fl St Petersburg, FL 33701-3566.

49.      Defendant Jones Lang Lasalle Group Benefits Plan (the "JLL Plan") is a self-funded health plan subject to ERISA. The JLL Plan may be served with process by serving its Plan Administrator, Tim Quitmeyer, at 200 East Randolph Street Chicago, IL 60601.

50.      Defendant Kellogg Brown & Root, Inc, Welfare Benefits Plan (the "KBR Plan") is a self-funded health plan subject to ERISA. The KBR Plan may be served with process by serving its Plan Administrator, Valerie Hulse, at 601 Jefferson Street, Suite 2916 Houston, TX 77002.

51.      Defendant Kinder Morgan, Inc. Master Employee Welfare Plan (the "Kinder Morgan Plan") is a self-funded health plan subject to ERISA. The Kinder Morgan Plan may be served with process by serving its Plan Administrator, T. Mark Smith, at 1001 Louisiana Street, Suite 1000, Houston, TX 77002.

52.     Defendant Lexicon Pharmaceuticals Inc. Comprehensive Welfare Benefits Plan (the "Lexicon Plan") is a self-funded health plan subject to ERISA. The Lexicon Plan may be served with process by serving its Plan Administrator, Jefferey L. Wade, at 8800 Technology Forest Pl the Woodlands, TX 77381-1160.

53.     Defendant Lineage Logistics LLC Benefits Plan (the "Lineage Plan") is a self-funded health plan subject to ERISA. The Lineage Plan may be served with process by serving its Plan Administrator, Sean Vanderelzen, at 17911 Von Karman, Suite 400 Irvine, CA 92614.

54.     Defendant Lockton, Inc. Welfare Benefits Plan (the "Lockton Plan") is a self-funded health plan subject to ERISA. The Lockton Plan may be served with process by serving its Plan Administrator, Janet O'Connor, at 444 w. 47th Street Suite 900 Kansas City, MO 64112.

55.     Defendant M/I Homes, Inc. Health, Life and Dental Welfare Plan (the "M/I Homes Plan") is a self-funded health plan subject to ERISA. The M/I Homes Plan may be served with process by serving its Plan Administrator, Karla Cupp, at 4131 Worth Avenue Columbus, OH 43219.

56.     Defendant Maersk Inc. Active Nonunion Health and Welfare Plan (the "Maersk Plan") is a self-funded health plan subject to ERISA. The Maersk Plan may be served with process by serving its Plan Administrator, Jennifer M. Swartz, at 180 Park Avenue Florham Park, NJ 07932.

57.     Defendant the Mallinckrodt Pharmaceuticals Welfare Benefit Plan (the "Mallinckrodt Plan") is a self-funded health plan subject to ERISA. The Mallinckrodt Plan may be served with process by serving its Plan Administrator, Cathryn Beisel, at 675 Mcdonnell Boulevard Hazelwood, MO 63042.

58.     Defendant Motiva Enterprises LLC Health and Wellness Benefit Plan (the "Motiva Plan") is a self-funded health plan subject to ERISA. The Motiva Plan may be served with process by serving its Plan Administrator, Dennis Fox, at 500 Dallas St 4th Fl Houston, TX 77002-4800.

59.     Defendant Novo Nordisk Inc. Welfare Benefit Plan (the "Novo Plan") is a self-funded health plan subject to ERISA. The Novo Plan may be served with process by serving its Plan Administrator, Pamela Gottlieb, at 800 Scudders Mill Road Plainsboro, NJ 08536.

60.     Defendant Petsmart Smartchoices Benefit Plan (the "Petsmart Plan") is a self-funded health plan subject to ERISA. The Petsmart Plan may be served with process by serving its Plan Administrator, Chris Stillman, at 19601 North 27th Avenue Phoenix, AZ 85027.

61.     Defendant Procter and Gamble Retiree Welfare Benefits Plan (the "Proctor and Gamble Plan") is a self-funded health plan subject to ERISA. The Proctor and Gamble Plan may be served with process by serving its Plan Administrator, Kyle Schiedler, at Procter and Gamble Tax Division P.O. Box 599 Cincinnati, OH 45201.

62.     Defendant Railroad Employees National Health Flexible Spending Account Plan (the "Railroad Plan") is a self-funded health plan subject to ERISA. The Railroad Plan may be served with process by serving its Plan Administrator, Brendan M. Brandon, 251 - 18TH Street, South, Suite 750, Arlington, VA 22202.

63.     Defendant Raising Canes USA Health and Welfare Benefits Wrap Plan (the "Raising Canes Plan") is a self-funded health plan subject to ERISA. The Raising Canes Plan may be served with process by serving its Plan Administrator, Ashlee Glock, 6800 Bishop Road Plano, TX 75024.

64.     Defendant Republic Services Inc. Employee Benefit Plan (the "Republic Services Plan") is a self-funded health plan subject to ERISA. The Republic Services Plan may be served with process by serving its Plan Administrator, Ann Reed, 18500 North Allied Way Phoenix, AZ 85054.

65.     Defendant Republic National Distributing Company, LLC Welfare Benefits Plan (the "Republic National Plan") is a self-funded health plan subject to ERISA. The Republic National Plan may be served with process by serving its Plan Administrator, Shannon Dacus, One National Drive, S.W. Atlanta, GA 30336.

66.     Defendant Saia Motor Freight Line LLC Employee Preferred Provider Plan (the "Saia Plan") is a self-funded health plan subject to ERISA. The Saia Plan may be served with process by serving its Plan Administrator, Kristy Roger, 11465 Johns Creek Parkway Suite 400 Johns Creek, GA 30097.

67.     Defendant Siemens Corporation Group Insurance and Flexible Benefits Program (the "Siemens Plan") is a self-funded health plan subject to ERISA. The Siemens Plan may be served with process by serving its Plan Administrator, Ewout Naarding, 170 Wood Ave. South Iselin, NJ 08830.

68.     Defendant Skadden, Arps, Slate, Meagher & Flom Partners' Welfare Benefits Plan (the "Skadden Plan") is a self-funded health plan subject to ERISA. The Skadden Plan may be served with process by serving its Plan Administrator, Joseph M. Penko, Lisa Gross, One Manhattan West New York, NY 10001-8602.

69.     Defendant Skywest Inc. Cafeteria Plan (the "Skywest Plan") is a self-funded health plan subject to ERISA. The Skywest Plan may be served with process by serving its Plan Administrator, Robert J. Simmons, 444 South River Road St. George, UT 84790.

70.     Defendant Southwest Airlines Co. Welfare Benefit Plan (the "Southwest Plan") is a self-funded health plan subject to ERISA. The Southwest Plan may be served with process by serving its Plan Administrator, Julie Weber, 2702 Love Field Drive, Hdq-6tx Dallas, TX 75235.

71.     Defendant Spirit Airlines Inc. Health and Welfare Benefits Plan (the "Spirit Plan") is a self-funded health plan subject to ERISA. The Spirit Plan may be served with process by serving its Plan Administrator, Carolyn Hernandez, 2800 Executive Way Miramar, FL 33025.

72.     Defendant Swissport North America Holdings, Inc. Health & Welfare Plan (the "Swissport Plan") is a self-funded health plan subject to ERISA. The Swissport Plan may be served with process by serving its Plan Administrator, Giancarlo Ladaga, 45025 Aviation Drive Dulles, VA 20166.

73.     Defendant Targa Resources LLC Welfare Benefits Plan (the "Targa Plan") is a self-funded health plan subject to ERISA. The Targa Plan may be served with process by serving its Plan Administrator, Jennifer Kneale, 811 Louisiana St. Suite 2100 Houston, TX 77002.

74.     Defendant Texas Capital Bancshares Inc. Employee Benefit Plan (the "Texas Capital Plan") is a self-funded health plan subject to ERISA. The Texas Capital Plan may be served with process by serving its Plan Administrator, Mandy Barrera, 2000 Mckinney Ave Ste 700 Dallas, TX 75201.

75.     Defendant Textron Non-Bargained Welfare Benefits Plan (the "Textron Plan") is a self-funded health plan subject to ERISA. The Textron Plan may be served with process by serving its Plan Administrator, Joyce Lafond, 40 Westminster Street Providence, RI 02903.

76.     Defendant Adecco, Inc Welfare Benefits Plan (the "Adecco Plan") is a self-funded health plan subject to ERISA. The Adecco Plan may be served with process by serving its Plan Administrator, Brian P. Evans, 10151 Deerwood Park Blvd Building 200, Suite 400 Jacksonville, FL 32256.

77.     Defendant T-Mobile USA, Inc. Employee Benefit Plan (the "T-Mobile Plan") is a self-funded health plan subject to ERISA. The T-Mobile Plan may be served with process by serving its Plan Administrator, Kate Blaylock, 12920 Se 38th Street Bellevue, WA 98006.

78.     Defendant Transocean Group Welfare Benefits Plan (the "Transocean Plan") is a self-funded health plan subject to ERISA. The Transocean Plan may be served with process by serving its Plan Administrator, Nathaniel Peneguy, P.O. Box 10342, 36C Dr. Roy's Drive Bermuda House, 4th Floor Cayman Islands, Grand Cayman 1-1003 KY KY.

79.     Defendant UHS Welfare Benefit Plan (the "UHS Welfare Plan") is a self-funded health plan subject to ERISA. The UHS Welfare Plan may be served with process by serving its Plan Administrator, Virginia Cullinan, 367 South Gulph Road King of Prussia, PA 19406.

80.     Defendant UnitedHealth Group Ventures, LLC Health and Welfare Benefit Plan (the "UnitedHealth Group Plan") is a self-funded health plan subject to ERISA. The UnitedHealth Group Plan may be served with process by serving its Plan Administrator, Rob Webb, 9900 Bren Road East Mn008-B217 Minnetonka, MN 55343.

81.     Defendant Valero Energy Corporation Retiree Benefits Plan (the "Valero Plan") is a self-funded health plan subject to ERISA. The Valero Plan may be served with process by serving its Plan Administrator, Christina Jennings, P.O. Box 696000 San Antonio, TX 78269, One Valero Way MS E1T San Antonio, TX 78249.

82.     Defendant Valmont Industries Inc. Welfare Benefit Plan (the "Valmont Plan") is a self-funded health plan subject to ERISA. The Valmont Plan may be served with process by serving its Plan Administrator, Jennifer Paisley, One Valmont Plaza Omaha, NE 68154.

83.     Defendant Walgreen Health and Welfare Plan (the "Walgreen Plan") is a self-funded health plan subject to ERISA. The Walgreen Plan may be served with process by serving its Plan Administrator, Todd Bajek, 102 Wilmot Road MS#122H Deerfield, IL 60015

84.     Defendant WCA Management Company, LP Welfare Benefit Plan (the "WCA Plan") is a self-funded health plan subject to ERISA. The WCA Plan may be served with process by serving its Plan Administrator, Joe Saad, 1330 Post Oak Boulevard, 7th Floor Houston, TX 77056.

85.     Defendant Webber, LLC Welfare Benefit Plan (the "Webber Plan") is a self-funded health plan subject to ERISA. The Webber Plan may be served with process by serving its Plan Administrator, Jared Branch, 1725 Hughes Landing Blvd Suite 1200 The Woodlands, TX 77380.

86.     Defendant Winstead PC Flexible Benefit Plan (the "Winstead Plan") is a self-funded health plan subject to ERISA. The Winstead Plan may be served with process by serving its Plan Administrator, Lydia Dillon, 2728 N Harwood Street Suite 500 Dallas, TX 75201.

87.     Defendant Group Benefits Plan for Employees of Worleyparsons Corporation (the "Worleyparsons Plan") is a self-funded health plan subject to ERISA. The Worleyparsons Plan may be served with process by serving its Plan Administrator, Jennifer Miller, 2675 Morganton Road, Reading, PA 19607-9676.

## JURISDICTION ANE VENUE

88.     This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as Plaintiff asserts federal claims against United and Employer Plans in Counts I, II, and III, under the FFCRA, the CARES Act, and ERISA.

89.     This Court also has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1131, as Plaintiff asserts federal claims against United in Count IV, under RICO.

90.     This Court also has supplemental jurisdiction over Plaintiff's state law claims against United, in Counts V, VI, VII, VIII, and IX because these claims are so related to Plaintiff's federal claims that the state law claims form a part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

91.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action arose in this District.

[INTENTIONALLY LEFT BLANK]

## BACKGROUND AS TO THE FFCRA AND THE CARES ACT

92.     Pursuant to Section 319 of the Public Health Service Act, on January 31, 2020, the Secretary of Health and Human Services ("HHS") issued a determination that a Public Health Emergency exists and has existed as of January 27, 2020, due to confirmed cases of COVID-19 being identified in this country.[7]

93.     On March 13, 2020, the President issued Proclamation 9994 declaring a National Emergency concerning the COVID-19 outbreak with a determination that a national emergency exists nationwide, pursuant to Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

94.     To facilitate the nation's response to the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act to, amongst other things, require group health plans and health insurance issuers offering group or individual health insurance coverage to: (i)  provide benefits for certain items and services related to diagnostic testing for the detection or diagnosis of COVID-19 without the imposition of any cost-sharing requirements (*i.e.* deductibles, copayments, and coinsurance) or prior authorization or other medical management requirements;[8] and (ii) to reimburse any provider for COVID-19 diagnostic testing an amount that equals the negotiated rate or, if the plan or issuer does not have a negotiated rate with the provider (*e.g.* Plaintiff), the cash price for such service that is listed by the provider on its public website in accordance with 45 CFR § 182.40.[9]

95.     To further clarify to issuers and health plans their legal expectations when processing a claim for Covid Testing in accordance with the FFCRA and the CARES Act, the

---

[7] *See* https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (Determination that a Public Health Emergency Exists).
[8] Pub. L. No. 116-127 (2020).
[9] Pub. L. No. 116-136 (2020).

Department of Labor ("DOL"), the Department of Health and Human Services ("HHS"), and the Department of the Treasury (the "Treasury") (collectively, the "Departments") jointly prepared and issued a series of Frequently Asked Questions ("FAQs") to address any stakeholder questions or concerns pertaining to the proper adjudication of Covid Testing claims. The following FAQs summarize the health plan and issuers' obligations as it pertains to covering and paying for Covid Testing services during the public health emergency:

**The Departments FAQ, Part 42, Q1**: *Which types of group health plans and health insurance coverage are subject to section 6001 of the FFCRA, as amended by section 3201 of the CARES Act?*

Section 6001 of the FFCRA, as amended by section 3201 of the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered health plans as defined in section 1251(e) of the Patient Protection and Affordable Care). The term "group health plan" includes both insured and self-insured group health plans. It includes private employment-based group health plans (ERISA plans), non-federal governmental plans (such as plans sponsored by states and local governments), and church plans.

"Individual health insurance coverage" includes coverage offered in the individual market through or outside of an Exchange, as well as student health insurance coverage (as defined in 45 CFR 147.145).[10]

**The Departments FAQ, Part 42, Q3**: *What items and services must plans and issuers provide benefits for under section 6001 of the FFCRA?*

Section 6001(a) of the FFCRA, as amended by Section 3201 of the CARES Act, requires plans and issuers to provide coverage for the following items and services:

(1) An in vitro diagnostic test as defined in section 809.3 of the title 21, Code of Federal Regulations, (or its successor regulations) for the detection of SARS-CoV-2 or the diagnosis of COVID-19, and the administration of such a test, that - …

B. The developer has requested, or intends to request, emergency use authorization under section564 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bbb-3), unless and until the emergency use authorization request under such section 564 has been denied or the developer of such test does not submit a request under such section within a reasonable timeframe;…[11]

---

[10] *See* https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf.

[11] *Id.*

**The Departments FAQ, Part 42, Q6**: *May a plan or issuer impose any cost-sharing requirements, prior authorization requirements, or other medical management requirements for benefits that must be provided under section 6001(a) of the FFCRA, as amended by section 3201 of the CARES Act?*

<u>No</u>. Section 6001(a) of the FFCRA provides that plans and issuers shall not impose any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization requirements, or other medical management requirements for these items and services. <u>These items and services must be covered without cost sharing when medically appropriate for the individual, as determined by the individual's attending healthcare provider in accordance with accepted standards of current medical practice</u>.[12]

**The Departments FAQ, Part 42, Q7**: *Are plans and issuers required to provide coverage for items and services that are furnished by providers that have not agreed to accept a negotiated rate as payment in full (i.e., out-of-network providers)?*

<u>Yes</u>. Section 3202(a) of the CARES Act provides that a plan or issuer providing coverage of items and services described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing as follows: …

    2. <u>If the plan or issuer does not have a negotiated rater with such provider, the plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or the plan or issuer may negotiate a rate with the provider for less than such cash price</u>…[13]

**The Departments FAQ, Part 43, Q9**: *Does Section 3202 of the CARES Act protect participants, beneficiaries, and enrollees from balance billing for a COVID-19 diagnostic test?*

The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with <u>section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test</u>. <u>Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website</u>. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore, the statute generally precludes balance billing for COVID-19 testing. However, section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.[14]

---

[12] *Id*.

[13] *Id*.

[14] *See* https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf; *See also* FAQ Part 43 Q12: … Because the Departments interpret the provisions of section 3202 of the CARES Act as specifying a rate that generally protects participants, beneficiaries, and enrollees from balance billing for a COVID-19 test (see Q9 above), the requirement to pay the greatest of three amounts under the regulations implementing section 2719A of the PHS Act is superseded by the requirements of section 3202(a) of the CARES Act with regard to COVID-19 diagnostic tests that are out-of-network emergency services. For these services, the plan or issuer must reimburse an out-of-network provider of COVID-19 testing an amount that equals the cash price for such service that is listed by the provider on a public website, or the plan or issuer may negotiate a rate that is lower than the cash price.

**The Departments FAQ, Part 44, Q1**: *Under the FFCRA, can plans and issuers use medical screening criteria to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19?*

<u>No</u>. The FFCRA prohibits plans and issuers from imposing medical management, including specific medical screening criteria, on coverage of COVID-19 diagnostic testing. Plans and issuers cannot require the presence of symptoms or a recent known or suspected exposure, or otherwise impose medical screening criteria on coverage of tests.

<u>When an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment" and the test should be covered</u> without cost sharing, prior authorization, or other medical management requirements.[15]

**The Departments FAQ, Part 44, Q3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*

Yes. As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing. If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drivethrough" site, and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."[16]

**The Departments FAQ, Part 44, Q5**: *What items and services are plans and issuers required to cover associated with COVID-19 diagnostic testing? What steps should plans and issuers take to help ensure compliance with these requirements?*

… Plans and issuers should maintain their claims processing and other information technology systems in ways that protect participants, beneficiaries, and enrollees from inappropriate cost sharing and should document any steps that they are taking to do so…[17]

96.     To supplement the FAQs publicized by the Departments, the Internal Revenue Service (the "IRS") issued Notice 2020-15 pertaining to high deductible health plans ("HDHPs") and expenses related to COVID-19 to provide members of HDHPs (including those HDHPs insured or administered by United) the confidence that Covid Testing will be covered, in full, by their HDHP. Notice 2020-15 states as follows:

---

[15] *See* https://www.cms.gov/files/document/faqs-part-44.pdf.
[16] *Id*.
[17] *Id*.

<u>[d]ue to the unprecedented public health emergency posed by COVID-19, and the need to eliminate potential administrative and financial barriers to testing for and treatment of COVID-19</u> [emphasis added], a health plan that otherwise satisfies the requirements to be an HDHP under section 223(c)(2)(A) will not fail to be an HDHP merely because the health plan provides medical care services and items purchased related to testing for and treatment of COVID-19 prior to the satisfaction of the applicable minimum deductible.

97.    In addition to the federal guidance publicized by the Departments, the Texas Department of Insurance ("TDI") issued Commissioner's Bulletin # B-0017-20, which also pertains to coverage for COVID-19 testing and network adequacy. In this Bulletin, TDI mandates exclusive provider networks ("EPOs") and health maintenance organizations ("HMOs") to comply with the Covid Testing adjudication requirements of the FFCRA and the CARES Act, and "instructs health plans to pay a provider's negotiated rate or, <u>if a health plan does not have a negotiated rate with the provider, pay the provider's publicly available cash price for testing</u> [emphasis added]."[18]

[INTENTIONALLY LEFT BLANK]

---

[18] In an inquiry posed by Plaintiff to TDI pertaining to the applicability of Commissioner's Bulletin #B-0017-20 to PPO and POS plans, TDI states the following: "Yes, it is TDI's position that PPO and POS plans must also comply with FFCRA and the 'CARES Act' … Commissioner's Bulletin #B-0017-20 made it expressly clear that in-network based plans, "insurers offering exclusive provider networks (EPOs) and health maintenance organizations (HMOs)… fall within the federal definitions for group health plans or health insurance issuers offering group or individual health insurance coverage." Presumably, the purpose of the bulletin was to expressly clarify for network-based plans such as EPOs and gated HMO plans our expectation to protect consumers regardless of network affiliation, as contemplated by the CARES Act and by Texas' laws. PPO and EPO issuers are subject to but not limited to Texas Insurance Code (TIC) Chapter 1301. HMOs may issue POS plans as required under TIC Chapter 1273. As PPO and POS plans are captured under the terms "issuer", "HMO", "group health plans", "health insurance issuers", and "individual health insurance coverage"; PPO and POS plans are not excluded from compliance."

## UNITED'S PUBLIC-FACING REPRESENTATIONS REGARDING COMPLIANCE WITH THE FFCRA, THE CARES ACT, AND OTHER APPLICABLE AUTHORITIES

98.     Since the start of the public health emergency and Congress's passing of the FFCRA and the CARES Act, United has consistently made public-facing representations regarding its obligations to comply with the requirements of the FFCRA and the CARES Act and to process Covid Testing claims accordingly. These representations can be found on United's websites and other publications.

99.     The following are public-facing statements made by United on its websites and other publications regarding its obligations to process Covid Testing service claims in accordance with the FFCRA and the CARES Act:

### Our Response to COVID-19[19]

### Actions to support providers

We're working to improve access to care, decrease your administrative processes and help address the short-term financial pressure that may be caused by the national public health emergency.

[INTENTIONALLY LEFT BLANK]

---

[19] https://www.uhc.com/health-and-wellness/health-topics/covid-19/our-response (June 16, 2021).

## COVID-19 Testing and Cost Share Guidance[20]

UnitedHealthcare will cover COVID-19 testing for all lines of business, in accordance with the member's benefit plan.

Testing coverage may vary by health plan. Please review each section below for details. Dates are subject to change based on the national public health emergency period.

- **Virus Detection Diagnostic (Molecular or Antigen) and Antibody Testing:** UnitedHealthcare will cover medically appropriate COVID-19 testing for the following health plans at no cost share, when ordered by a physician or appropriately licensed health care professional for purposes of the diagnosis or treatment of an individual member:*
  - **Medicare Advantage**
    Waiver of cost share is effective from Feb. 4, 2020, through the national public health emergency period, currently scheduled to end July 19, 2021, for in-network and covered out-of-network tests.
  - **Individual and Group Market health plans**
    Waiver of cost share is effective from Feb. 4, 2020, through the national public health emergency period, currently scheduled to end July 19, 2021, for in-network and out-of-network tests.
  - **Medicaid**
    Waiver of cost share is subject to state regulations.

Please do not collect upfront payment from the member. Benefits will be otherwise adjudicated in accordance with the member's health plan. We will reimburse COVID-19 testing in accordance with applicable law, including the CARES Act ⧉ and UnitedHealthcare's reimbursement requirements. State variations and regulations may apply during this time.

UnitedHealthcare is following the CDC guidelines, which recommend that a physician order the test. FDA-approved tests are sent to an approved laboratory that can properly test for the presence of COVID-19.

COVID-19 tests can be ordered through a public health facility, commercial laboratory (e.g., LabCorp and Quest Diagnostics) or hospital. The commercial laboratory testing through LabCorp and Quest Diagnostics became available March 11, 2020. Additional laboratories – including local hospital systems – are also beginning to test.

## COVID-19 Testing, Treatment, Coding & Reimbursement[21]

**COVID-19 Testing Guidance**

UnitedHealthcare will cover medically appropriate COVID-19 testing during the national public health emergency period (currently scheduled to end July 19, 2021), at no cost share, when ordered by a physician or appropriately licensed health care professional for purposes of the diagnosis or treatment of an individual member.*

---

[20]   https://www.uhcprovider.com/en/resource-library/news/Novel-Coronavirus-COVID-19/covid19-testing/covid19-testing-guidance.html (June 16, 2021).

[21]      https://www.uhcprovider.com/en/resource-library/news/Novel-Coronavirus-COVID-19/covid19-testing.html (June 16, 2021).

This coverage applies to members enrolled in Medicare Advantage, Medicaid and Individual and Group Market health plans. Please do not collect upfront payment from the member. Benefits will be otherwise adjudicated in accordance with the member's health plan. We will reimburse COVID-19 testing in accordance with applicable law, including the CARES Act ↗ and UnitedHealthcare's reimbursement requirements. State variations and regulations may apply during this time.

### United Healthcare COVID-19 Billing Guide[22]

## COVID-19 testing and testing-related services

UnitedHealthcare will cover medically appropriate COVID-19 testing at no cost share during the national public health emergency period (currently scheduled to end July 19, 2021) when ordered by a physician or appropriately licensed health care professional for purposes of the diagnosis or treatment of an individual member. Scope-of-practice requirements vary by state. In some states, a pharmacist or other health care professional, such as a nurse practitioner, may have the appropriate licensure to order a test.

- State and federal mandates, as well as self-insured customer benefit plan designs, may supersede the information listed below
- Centers for Medicare & Medicaid Services (CMS) guidelines for place of service may vary
- Cost share will be waived for testing and testing-related services through the national public health emergency period for tests ordered by an appropriate provider and test-related services related to the diagnosis of COVID-19

### Your Questions Answered[23]

Testing for COVID-19 plays an important part in identifying people in need of care and controlling the spread of the virus. UnitedHealthcare strongly supports the need for reliable testing and encourages health care providers to use reliable FDA-authorized tests. Learn more about **benefits coverage information** for COVID-19 testing.

### COVID-19 Temporary Provisions[24]

| Program or benefit scenario | Medicare Advantage | Medicaid | Individual and Group Market health plans | Additional details |
|---|---|---|---|---|
| COVID-19 diagnostic testing | From Feb. 4, 2020, through the national public health emergency period, currently scheduled to end July 19, 2021, UnitedHealthcare is waiving cost share (copay, coinsurance and deductible) for in-network and out-of-network tests. | State variations and requirements may apply during this time. Please refer to your state's COVID-19-specific website for more information. | From Feb. 4, 2020, through the national public health emergency period, currently scheduled to end July 19, 2021, UnitedHealthcare is waiving cost share (copay, coinsurance and deductible) for in-network and out-of-network tests. | • UnitedHealthcare will cover medically appropriate COVID-19 testing during the national public health emergency period (currently scheduled to end July 19, 2021), at no cost share, when ordered or reviewed by a physician or appropriately licensed health care professional to either 1) diagnose if the virus is present due to symptoms or potential exposure, or 2) help in the treatment of the virus for a person.<br><br>• UnitedHealthcare will cover testing for employment, education, travel, public health, surveillance or social purposes when required by applicable law. Benefits will be adjudicated in accordance with a member's benefit plan; health benefit plans generally do not cover testing for surveillance or public health purposes. |

---

[22]  https://www.uhcprovider.com/content/dam/provider/docs/public/resources/news/2020/covid19/UHC-COVID-19-Provider-Billing-Guidance.pdf (June 16, 2021).

[23]  https://www.uhc.com/health-and-wellness/health-topics/covid-19/your-questions-answered (June 16, 2021).

[24]  https://www.uhcprovider.com/content/dam/provider/docs/public/resources/news/2020/covid19/COVID-19-Date-Provision-Guide.pdf (June 16, 2021).

| Program or benefit scenario | Health plan* | Date details | Additional details |
|---|---|---|---|
| Timely filing extensions | Individual and Group Market health plans | UnitedHealthcare is following the IRS/DOL regulation related to the national emergency declared by the President. This regulation pauses the timely filing requirements clock for claims that would have exceeded the filing limitation during the national emergency period that began on March 1, 2020.* | • Timely filing requirements have been extended an additional 60 days following the last day of the national emergency period.** This regulatory guidance has been issued by the IRS and the U.S. Department of Labor (Employee Benefits Security Administration). <br><br>• Our standard timely filing requirements apply to claims that exceeded requirements prior to the national emergency period* |

## Understanding COVID-19 Testing and Treatment Coverage[25]

## COVID-19 testing

Testing for COVID-19 is important to slowing the spread of COVID-19. We encourage you and your health care provider to use **FDA-authorized tests**. There are 2 types of COVID-19 tests:

- **Diagnostic tests** determine if you are currently infected with COVID-19. There are 2 types of these viral diagnostic tests: nucleic acid amplification and antigen tests.

- Antibody **tests**, also known as serology tests, may determine if you might have been infected with the virus. **According to the FDA** ↗, antibody tests should not be used to diagnose a current infection.

Medically-appropriate COVID-19 tests have $0 cost-share during the national public health emergency period, currently scheduled to end July 19, 2021. Medically-appropriate COVID-19 tests must be FDA-authorized or approved, and be ordered or reviewed by a health care professional to either 1) diagnose if the virus is present in a person due to symptoms or potential exposure, or 2) help in the treatment of the virus for a person. This coverage applies to in-network and out-of-of-network tests for Medicare Advantage, Exchange, Individual and Employer-sponsored health plans. For individuals enrolled in **UnitedHealthcare Community Plans** ↗, state variations and regulations may apply during this time.

## United FAQ Regarding All Savers[26]

**Do we send All Savers subscribers to UHC.com also? Are all the same practices being done by both UHC and All Savers? Update 11/19**

For general information on COVID-19, All Savers members can utilize UHC.com; benefit specific information is on the All Savers member portal myallsaversconnect.com.   All Savers is following the same practices that are in place as with Fully Insured. including coverage during reduction of work hours, and Virtual Visit and telehealth coverage.

[INTENTIONALLY LEFT BLANK]

---

[25] https://www.uhc.com/health-and-wellness/health-topics/covid-19/coverage-and-resources (June 16, 2021).
[26] https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs-all_savers.pdf (June 16, 2021).

## United FAQ Regarding Federal Guidance[27]

**What information can you provide on the Federal Legislation that passed on March 18, 2020? Update 10/8**

The Families First Coronavirus Response Act (HR 6201) ("Act") requires group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered plans) to cover COVID-19 diagnostic testing and certain COVID-19 diagnostic testing related items and services without cost sharing ( deductibles, copayments and coinsurance), prior authorization or other medical management requirements.

- This coverage includes the COVID-19 diagnostic test and a COVID testing-related visit to order or administer the test.  A testing related visit may occur in a health care provider's office or through a telehealth visit.
- For plans with in- network and out- of- network benefits cost sharing (copayments, coinsurance and deductibles) will not apply.
- For plans with in-network benefits only, cost sharing (copayments, coinsurance, deductibles) will not apply for out-of-network emergency services or when an in- network provider is not available.
- Telehealth services apply both in and out-of-network.
- The Act is effective March 18, 2020 to apply retroactively. Currently our approach will be to have these guidelines in place on April 1 and then re-adjust the claims to meet the March 18 effective date.

## United FAQ Regarding ASO – Business Disruption and Stop Loss Support[28]

**Are self-funded clients required to follow the different rules on COVID-19?**

Self-Funded clients are generally not impacted by state laws and regulations but instead are required to follow federal standards under ERISA and other federal legislation such as The Families First Coronavirus Response Act (HR 6201).  If a self-funded client chooses to follow the state regulations, please contact your Account Executive to work through UnitedHealthcare's ability to support the request.

**What should a self-funded employer consider relative to stop loss risk, plan documents, cost projections or other implications concerning COVID-19?**

Self-funded clients are considered the plan fiduciary. As such, they are the final authority on plan design provisions and should consult with their professional advisors.

---

[27]   https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs-federal_guidance.pdf (June 16, 2021).
[28]https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs aso_business_disruption_and_stop_loss.pdf (June 16, 2021).

**What is UnitedHealthcare's intent to comply with all requirements of the CARES Act? New 6/26**

The CARES Act and the related guidance create both permissive, as well as mandatory, requirements.

UnitedHealthcare's administration of self-insured plans is aligned with the requirements of the CARES Act including supplementary guidance provided from time to time by applicable regulatory agencies.

However, self-funded plans have some discretion in what is implemented/administered.

## United FAQ Regarding Products and Programs[29]

**Are testing and testing related visit claims covered for UnitedHealthcare Preventive Plan members? Update 4/17/21**

The Preventive Plan does include waiver of cost sharing including co-payments, coinsurance and deductibles for medically appropriate COVID-19 testing and testing related visits at physician offices or telehealth in and out of network. Inpatient testing is out of scope. Testing must be ordered by a physician or appropriately licensed health care professional for purposes of the diagnosis or treatment of an individual member and provided at approved locations in accordance with CDC guidelines.  Coverage is effective for claims as of March 18, 2020 and will remain in place through the public health emergency period, now July 19, 2021.

[INTENTIONALLY LEFT BLANK]

---

[29]https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs-programs_and_products.pdf (June 16, 2021).

## United FAQ Regarding Testing[30]

### Overview — Update 4/17/2021

Testing is important to slowing the spread of COVID-19. We encourage our members and health care providers to use **FDA-authorized tests**. There are two types of COVID-19 tests:

- **Diagnostic tests** determine if you are currently infected with COVID-19.
- **Antibody tests** may determine if you might have been infected with the virus. **According to the FDA**, antibody tests should not be used to diagnose a current infection.

For UnitedHealthcare members there is $0 cost-share (copayment, coinsurance or deductible) on medically appropriate COVID-19 testing during the national public health emergency period, currently scheduled to end July 19, 2021.

- Medically appropriate testing is ordered by a physician or health care professional for the purposes of diagnosis or treatment.
- Tests must be FDA-authorized to be covered without cost-sharing.
- This coverage applies to in-network and out-of-of-network tests for Medicare Advantage, Exchange, Individual and Employer-sponsored health plans through the national public health emergency period. For individuals enrolled in **UnitedHealthcare Community Plans**, state variations and regulations may apply during this time.

UnitedHealthcare benefit plans generally do not cover testing for employment, education, travel, public health or surveillance purposes, unless required by law. Benefits will be processed according to your health benefit plan.

Members who think they need a COVID-19 test, should talk to their health care provider.

### Does UnitedHealthcare cover the diagnostic test for COVID-19? Update 4/17/21

UnitedHealthcare and its self-funded customers will waive cost sharing (copayment, coinsurance, and deductible) for medically appropriate COVID-19 diagnostic testing during this national emergency. We are also waiving cost sharing for COVID-19 diagnostic testing related visits during this same time, whether the testing related visit is received in a health care provider's office or through a telehealth visit. This coverage applies to Medicare Advantage, Medicaid and fully insured and self-funded employer-sponsored plans.

Testing must be ordered by a physician or appropriately licensed health care professional and provided at approved locations in accordance with U.S. Centers for Disease Control and Prevention (CDC) guidelines including FDA approved testing at designated labs around the country.

Cost share will be waived for testing and testing-related services during the national public health emergency beginning on February 4, 2020.  The Secretary of HHS renewed the National Public Health Emergency through July 19, 2021.

---

[30]  https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs-testing.pdf  (June 16, 2021).

### Can an administrative services-only (ASO) customer choose to only cover in-network testing? New 6/8

During the national public health emergency period, cost share is required to be waived for testing, both in and out of network.

### Will diagnostic testing for COVID-19 be covered as a preventive service under the Affordable Care Act (ACA)?

The cost of COVID-19 diagnostic testing is considered an essential health benefit but is not classified as an ACA preventative health benefit.

### Where can a member go to get a COVID-19 diagnostic test?

If someone thinks they have been exposed to COVID-19 and develops symptoms such as fever, cough and/or difficulty breathing, they should first CALL a health care professional for medical advice. The provider will use their judgment to determine if a patient should be tested. The provider may collect a respiratory specimen or in certain situations the provider may refer a member to one of the approved testing locations and UnitedHealthcare will cover the COVID-19 diagnostic test and test-related visit with no cost sharing (copayment, coinsurance, and deductible).

### If the physician requests a second test for COVID-19 to determine if the member is positive, would the second test be covered? New 4/20

Our claim payment is dependent upon accurate coding. If coded as a test, we will pay multiple COVID-19 tests at zero cost share.

### What is the process if client requests to opt out of covering the diagnostic test or test related expenses?

Based on federal legislation passed on March 18, 2020, all plans are required to cover these services without cost sharing (copayment, coinsurance, and deductible) during the emergency period.

### Will drive-up diagnostic testing be an option?

Yes. If your health care provider determines you should be tested for COVID-19 and orders the diagnostic test, they should work with local and state health departments to coordinate testing. As long as the testing place is at an FDA approved facility/location and administered in accordance CDC Guidelines, it will be covered.

**Are more labs, such as LabCorp and Quest, available for testing?**

Yes, per the CDC as of March 23, the total number of public health laboratories (PHL) that have completed verification and are offering testing is 91. This includes one or more PHL in 50 states plus DC, Guam and Puerto Rico. CDC is updating this information regularly.

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/testing-in-us.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftesting-in-us.html

[31]

### United FAQ Regarding Claims and Appeals[32]

**If a plan does not have out-of-network (OON) benefits, will the plan pay for COVID-19 OON care? New 5/12**

Yes, for a plan that doesn't have OON benefits but related to the COVID treatment during this COVID emergency period, we would pay at the network (INN) level including inpatient care.

**Do UnitedHealthcare commercial out of network programs satisfy the requirement in the CARES Act that states "the plan may negotiate a rate with a provider for less than the cash price"? New 4/20**

**Yes.** CARES Act provision (3202) requires plans to reimburse providers for COVID-19 tests at the contract rate negotiated before the COVID-19 emergency, or, if there is no contract, a cash price posted by the provider as listed on a public internet website, or the plan may negotiate a rate with the provider for less than the cash price.

Where UnitedHealthcare has an out-of-network program in place, the price may be negotiated based on the rule.

    100.    Despite these numerous public-facing representations directed towards its members, to health plans that it administers (including the Employer Plans), and providers of Covid Testing services (*e.g.*, Plaintiff), United's actions and conduct, to be detailed below, shows its intentional disregard for complying with all applicable authorities.

---

[31] The CDC's Covid Testing provider/laboratory search function identifies Plaintiff as an eligible lab and testing site to receive Covid Testing. Further, United's Covid Testing provider/laboratory search functions also lead to Plaintiff's laboratory and testing locations.

[32] https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs-claims.pdf (June 16, 2021).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

*a.*     *The Improper Record Request Scheme and the Imposition of Prohibited Medical Management Requirements*

101.     As explained above, Section 6001 of the FFCRA expressly prohibits the imposition of medical management requirements as a condition of coverage and reimbursement for Covid Testing services regardless of whether the testing provider is in-network or OON.

102.     However, despite this prohibition, United implemented an unlawful scheme that consists of improper, irrelevant, and burdensome medical record requests to Plaintiff for the sole purpose of denying as many claims for bona fide Covid Testing services submitted by Plaintiff as possible (the "Improper Record Request Scheme"). The details of United's Improper Record Request Scheme are set forth below.

    i.     Details of United's Improper Record Request Scheme

103.     Regardless of the fact that Plaintiff is a CLIA certified high complexity laboratory, holds all proper FDA emergency use authorizations and approvals necessary, and is identified by the CDC and Texas Department of State Health Services Covid Testing locator functions as a qualified laboratory to render Covid Testing services, United deployed its Improper Record Request Scheme against Plaintiff with the intended purpose of placing barriers and denying Covid Testing claims for its own financial benefit.

104.     Since the time Plaintiff commenced with submitting Covid Testing claims to United for reimbursement, United almost immediately responded with sending <u>identical</u> pre-payment record request letters to Plaintiff for the following materials:

- Physician's orders for the laboratory test, including any standing orders and/or provider custom panel orders, whether for the ordering provider or all referring providers;

- Laboratory testing method, specimen type, and test results related to all billed services;

- CLIA Documentation (certificates, licenses, permits, etc.);

- Manufacturer and model number of the testing equipment used for billed services; and

- Manufacturer and brand information for all test supplies used for billed services.

105.    United's request for the aforementioned records for almost every claim submitted conflicts with the presumption created by FFCRA, the CARES Act, and supportive guidance that all Covid Testing claims submitted to issuers or health plans for reimbursement are medically appropriate, ordered by a licensed medical professional, and that the receipt of the test reflects an "individualized clinical assessment".[33] These record requests conflict with this presumption and is an overly burdensome and improper condition of payment to Plaintiff.

106.    Of important note, aside from a copy of a signed order form from a medical professional establishing the need for Covid Testing, the rest of the records/materials requested by United on almost every single claim are not unique to that particular Covid Testing claim. Instead, requests for laboratory testing methods, CLIA documentation, and testing equipment and supplies information should be directly made to the provider of such services and should <u>not</u> be used to expand the scope by which pre-payment record request denials may be made by United on a claim-by-claim basis.

---

[33] **The Departments FAQ, Part 44, Q3**: *Under the FFCRA, are plans and issuers required to cover COVID-19 diagnostic tests provided through state- or locality-administered testing sites?*
Yes. As stated in FAQs Part 43, Q3, any health care provider acting within the scope of their license or authorization can make an individualized clinical assessment regarding COVID-19 diagnostic testing. If an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized provider, including from a state- or locality-administered site, a "drivethrough" site, and/or a site that does not require appointments, plans and issuers generally must assume that the receipt of the test reflects an "individualized clinical assessment."

107.    Furthermore, when United made medical record requests on a claim-by-claim basis to Plaintiff, United's Special Investigations Unit (the "SIU") simultaneously made the same record requests directly to Plaintiff on October 8, 2020, and November 16, 2020, for the purpose of "confirming the logistics and the capability of the laboratory to provide services to UHC [United] patients."[34] As part of United SIU's investigation, the following information and materials were requested:

- Laboratory Identification Information (*e.g.*, Name, NPI, EIN, Address);

- CLIA Certification Information and Scope of Laboratory Services;

- Laboratory Director and Other Personnel Information;

- Premises and Security Information; and

- Laboratory Equipment and Supplies Information.

108.    The requested information and materials were provided to United on November 17, 2020.[35] Since this date, United has not contacted Plaintiff regarding any supplemental or subsequent requests, made any additional inquiries regarding the legitimacy of Plaintiff, expressed any concerns about Plaintiff and its ability to render Covid Testing services, nor informed Plaintiff about the status of its investigation. In fact, Plaintiff inquired with United's SIU regarding the status of the investigation and notified United's SIU that if no response was received within a set time period, the SIU investigation shall be de facto closed.[36] United's SIU did not respond.

109.    Given that United's claim-by-claim record requests and United's SIU record request both commenced in October 2020, Plaintiff reasonably assumed, as would any reasonably prudent person, that the purpose of the requests were to confirm that Plaintiff is a qualified lab

---

[34] *See* Exhibit A (United SIU Record Request Letters dated October 8, 2020, and November 16, 2020).
[35] *See* Exhibit B (United SIU Record Request Proof of Submission on November 17, 2020).
[36] *See* Exhibit C (Plaintiff Email to United re the Status of SIU Investigation dated May 19, 2021).

capable of rendering Covid Testing services. Therefore, Plaintiff complied with both the claim-by-claim and UHC SIU requests. However, even though Plaintiff directly provided United's SIU with the information and materials that were requested and provided substantially similar materials on the claim-by-claim requests, United unreasonably continued with making the same generic requests for information by the thousands which leads Plaintiff to believe that United has not even reviewed the materials provided and is purposefully leading Plaintiff along.

110.    The thousands upon thousands of requests for the same information and materials specific to the qualifications and abilities of Plaintiff has overwhelmed and inundated Plaintiff; thus, allowing United to deny thousands of claims on the technicality that Plaintiff did not provide the requested records within the time period prescribed by United despite the same materials and information being provided to United and its SIU nearly 2,000 times.

111.    Furthermore, even when Plaintiff does submit records to United on claim-specific requests, United has created arbitrary criteria to review records that are inconsistently applied for the purpose of denying or substantially underpaying on the majority of Covid Testing claims that Plaintiff has provided requested records for. The arbitrary records review process in furtherance of the Improper Record Request Scheme is explained below.

ii.    United's Arbitrary and Inconsistent Review of Requested Records

112.    Because Plaintiff only provides Covid Testing services and no other laboratory services, Plaintiff is in the unique position that all claims being electronically submitted to United via the HCFA-1500 forms are uniformly constructed and submitted. Given the uniformity of the Covid Testing services and the electronic claims being submitted to United coupled with the Federal and State mandates that require United to process Covid Testing claims submitted by OON providers in a very singular fashion, Plaintiff's very reasonable expectation was that all Covid

Testing claims should be paid at Plaintiff's cash price since United, to date, has not even attempted to negotiate an amount to be paid despite Plaintiff's good faith attempts to do so.

113.    Leaving aside the unlawful and burdensome nature of United's Improper Record Request Scheme, Plaintiff also assumed that compliance with United's claim-by-claim record requests would lead to a consistent review and adjudication of Plaintiff's Covid Testing claims since all Covid Testing claims and requested records submitted to United are the same or substantially similar. That is far from the case.

114.    By way of example, below are two Covid Testing claims submitted to United where United also requested records from Plaintiff for that particular claim. Despite the same Covid Testing services being provided to these two patients, who are members of health plans either insured or administered by United and the same records being submitted to United on behalf of these two members' claims, United's adjudication of these claims had two different outcomes.

115.    Patient JF received Covid Testing services from Plaintiff on July 31, 2020, and is a member of an HMO plan that is fully-insured by United and subject to the jurisdiction of TDI; therefore, this particular Covid Testing claim should be adjudicated in accordance with TDI Commissioner's Bulletin No. B-0017-20 which mandates compliance with the FFCRA and the CARES Act. A copy of Patient JF's electronic HCFA-1500 claims form is copied below:


[INTENTIONALLY LEFT BLANK]

116. Upon receipt of Patient JF's claim, United requested records from Plaintiff, and those records were submitted to United on November 6, 2020.[37] Surprisingly, United allowed and paid the full cash price on this claim; however, for the Covid Testing claim detailed below, the

---

[37] *See* Exhibit D (Medical Records Submitted to United on Patient JF's Claim).

outcome of the record review is completely different despite the fact that the HCFA 1500 forms and the records submitted to United being the same.

117.    Patient MM also received Covid Testing services from Plaintiff on July 31, 2020, and is a member of an PPO plan that is fully-insured by United and subject to the jurisdiction of TDI; therefore, like Patient JF's claim, this particular Covid Testing claim should also be adjudicated in accordance with TDI Commissioner's Bulletin No. B-0017-20 which mandates compliance with the FFCRA and the CARES Act. A copy of Patient MM's electronic HCFA-1500 claims form is copied below:

[INTENTIONALLY LEFT BLANK]

A CMS-1500 health insurance claim form containing the following legible data:

- 2. PATIENT'S NAME: M[redacted], M[redacted]
- 5. PATIENT'S ADDRESS — CITY: Humble, STATE: TX, ZIP CODE: 77339
- 4. INSURED'S NAME: M[redacted]
- 7. INSURED'S ADDRESS: SAME
- 12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE: SIGNATURE ON FILE, DATE 08/11/2020
- 13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE: SIGNATURE ON FILE
- 14. DATE OF CURRENT ILLNESS: 07 31 2020
- 17. NAME OF REFERRING PROVIDER OR OTHER SOURCE: DN Edward McCoig MD
- 17b. NPI: 1912933284
- 21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY: A. Z20.828   ICD Ind. 0

| 24.A DATE(S) OF SERVICE From — To | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. | I. ID. QUAL | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07 31 20  07 31 20 | 11 | N | U0004 | | A | 900.00 | 1 | | NPI | 1154930279 |
| 2 | 07 31 20  07 31 20 | 11 | N | G2023 | | A | 128.00 | 1 | | NPI | 1154930279 |
| 3 | | | | | | | | | | NPI | |
| 4 | | | | | | | | | | NPI | |
| 5 | | | | | | | | | | NPI | |
| 6 | | | | | | | | | | NPI | |

- 25. FEDERAL TAX I.D. NUMBER: 851991956  [X] EIN
- 28. TOTAL CHARGE: $ 1028.00
- 29. AMOUNT PAID: 0.00
- 30. Rsvd for NUCC Use: 1028.00
- 31. SIGNATURE OF PHYSICIAN OR SUPPLIER: Diagnostic Affiliates of Northeas  05192021
- 32. SERVICE FACILITY LOCATION INFORMATION: Diagnostic Affiliates of Northeast HOU, 22751 Professional Drive Ste 210, Kingwood TX 77339
  - 1154930279   TJ851991956
- 33. BILLING PROVIDER INFO & PH #: Diagnostic Affiliates of Northeast HOU LLC, 22751 Professional Drive Ste 210, Kingwood TX 77339
  - 1154930279   851991956

118.    Upon receipt of Patient MM's claim, United requested records from Plaintiff and those records were submitted to United on November 12, 2020.[38]  Instead of adjudicating Patient MM's Covid Testing claim in the same manner as Patient JF's claim, United denied the claim for

---

[38] *See* Exhibit E (Medical Records Submitted to United on Patient MM's Claim).

the following reasons:

| PATIENT: M██████ M███████ (EE) | | | |
|---|---|---|---|

| SUBSCRIBER ID: | ██████ | SUBSCRIBER NAME: | ██████ | CLAIM NUMBER: | ██████ |
|---|---|---|---|---|---|
| CLAIM DATE: | 07/31/20-07/31/20 | DATE RECEIVED: | 02/01/21 | PRODUCT: | CHOYC |
| REND PROV ID: | 1154930279 | REND PROV: | DIAGNOSTIC AFFILIATES | | |

| PATIENT CONTROL NUMBER | PATIENT ID | AUTH/REF NUMBER | DRG | DRG WEIGHT | CLAIM CHARGE AMOUNT | CLM ADJ AMT | GRP CD | CLM ADJ RSN CD | CLAIM PAYMENT AMOUNT | PATIENT RESPONSIBILITY |
|---|---|---|---|---|---|---|---|---|---|---|
| ██████ | | | | | $1,026.00 | | | | $0.00 | |

**SERVICE LINE DETAIL(S)**

| LINE CTRL# | DATES OF SERVICE | SUB PROD/ SVC/ MOD | ADJ PROD/ SVC | MOD | REV | UNITS | ADJ QTY | CHARGE | AMOUNT ALLOWED | ADJ AMOUNT | GRP CD | CLM ADJ RSN CD | PAYMENT AMOUNT | REMARK/ NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ZZZZZ041L M | 07/31/20 – 07/31/20 | | U0004 | | | | 1 | $900.00 | | $900.00 | PI | 16 | $0.00 | AU, M50 |
| ZZZZZ041L N | 07/31/20 – 07/31/20 | | G2023 | | | | 1 | $126.00 | | $126.00 | PI | 251 | $0.00 | HP, N705 |
| CLAIM# ██████ | | | | | | | SUBTOTAL | $1,026.00 | | $1,026.00 | | | $0.00 | |

PI16        PAYER INITIATED REDUCTIONS - CLAIM/SERVICE LACKS INFORMATION OR HAS SUBMISSION/BILLING ERROR(S).
PI251      PAYER INITIATED REDUCTIONS - THE ATTACHMENT/OTHER DOCUMENTATION THAT WAS RECEIVED WAS INCOMPLETE OR DEFICIENT. THE NECESSARY INFORMATION IS STILL NEEDED TO PROCESS THE CLAIM.

119.    It is clear that Patient MM's claim does not lack information or billing errors, and the records provided to United are not incomplete or deficient because Patient JF's claim did not lack information or have any billing errors, nor did the records submitted to United on Patient JF's claim lack any information or were deficient in any way.

120.    In furtherance of its Improper Record Request Scheme, United makes the following misrepresentations to Patient MM and other United members' whose claims are denied for the same or similar reasons:

AU        BENEFITS FOR THIS SERVICE ARE DENIED. THE SUBMITTED CODE IS INCORRECT. FOR THE CLAIM TO BE RECONSIDERED, WE ASK THAT THE PROVIDER SUBMIT A CORRECTED CLAIM WITH THE APPROPRIATE CODE. THE PROVIDER MUST ALSO INDICATE IT IS A REPLACEMENT CLAIM OR CLEARLY MARK IT WITH THE WORD "CORRECTED." IF THE PROVIDER BELIEVES THE CODE SUBMITTED IS VALID FOR THE DATE OF SERVICE AND CORRECTLY IDENTIFIES THE SERVICE RENDERED, THEY MAY SUBMIT AN APPEAL WITH THE MEDICAL RECORD DOCUMENTATION AND THE RATIONALE FOR THE CODE AS BILLED.

HP        THE INFORMATION SUBMITTED DOES NOT CONTAIN SUFFICIENT DETAIL TO SUPPORT ALL RELATED CHARGES BILLED.

M50       MISSING/INCOMPLETE/INVALID REVENUE CODE(S).

N705      INCOMPLETE/INVALID DOCUMENTATION.

121.    United makes these misrepresentations to Patient MM and other United members, whose claims are denied for the same or similar reasons, despite knowing that these comments are categorically false. These misrepresentations are meant to make a scapegoat of Plaintiff to United members and to health plans that United administers (*e.g.* Employee Plans) when members' claims are denied for purported issues or deficiencies with claim submissions and/or Plaintiff's medical records.

122.    Plaintiff contacted United on May 21, 2021, specifically regarding the inconsistency of how Patient JF and Patient MM's Covid Testing claims were adjudicated. By the United representative's own admission, there are no differences between Patient JF and Patient MM's claim, and Patient MM's claim should have been adjudicated in the same manner as Patient JF's claim.

123.    The United representative informed Plaintiff that the Patient MM's claim would be reprocessed and paid in accordance with Patient JF's claim within 15 days from the date of the call, but, as of the date of this Original Complaint, Patient MM's claim remains denied.

124.    The United representative further explains that claims and the records provided in response to each record request may not be reviewed under one singular approach, and, if reviewed under one singular approach, that each United representative tasked with reviewing the Covid Testing claims has different learning curves. Therefore, no level of consistency in the adjudication of Covid Testing claims can be achieved, even if those same claims are identical to one another.

125.    United's failures to provide proper training, policies, and instructions to its representatives tasked with the review of Covid Testing claims and/or records relevant to the Covid Testing claims is an intentional institutional failure meant to further perpetuate its Improper Record Request Scheme.

iii.    Inquiries to United Pertaining to the Improper Record Request Scheme

126.    In addition to Plaintiff's call to United regarding Patient JF and Patient MM's claims, Plaintiff has made many other attempts to solicit a response from United regarding the Improper Record Request Scheme, but United has ducked and weaved through all of Plaintiff's attempts.

127.    In one particular email exchange with Optum's Head of Regulatory Affairs, Plaintiff clearly and unequivocally pressed United to respond to the following inquiries: (i) why United does not consider its Improper Record Request Scheme to be a prohibited medical management requirement; (ii) why Covid Testing claims and records provided in response to Covid Testing claims are reviewed and adjudicated inconsistently; (iii) why Covid Testing claims submitted by Plaintiff  continue to be denied, despite providing United with all of Plaintiff's credentialing materials; and (iv) why United feels that its conduct does not constitute violations of the FFCRA, the CARES Act, and other applicable Federal and State authorities.[39]

128.    Neither Optum's Head of Regulatory Affairs nor any other representative from United ever responded to Plaintiff's concerns and grievances despite Plaintiff's multiple attempts to follow-up on its inquiries.

129.    Additionally, included with each patient record produced to United in response to United's claim-by-claim record requests, Plaintiff also includes a supporting letter notifying United of the: (i) legitimacy of Plaintiff and its credentials to render Covid Testing services to its members; (ii) United's obligations to process its members' Covid Testing claims in accordance with the FFCRA and CARES Act; (iii) the improper and burdensome nature of United's Improper Record Request Scheme (iv) and that the Improper Record Request Scheme constitutes as an

---

[39] Exhibit F (Plaintiff's Email Exchange with United's Head of Regulatory Affairs Commencing on April 15, 2021).

improper medical management requirement that is prohibited by Section 6001 of the FFCRA.[40]

130.    Despite Plaintiff's inclusion of the supporting letters with each members' records produced to United, United pressed forward with its Improper Record Request Scheme and failed to provide a single response to address Plaintiff's concerns.

131.    Ultimately, United's Improper Record Request Scheme has an adverse financial impact on United members whose claims are denied. The financial responsibility of the Covid Testing services shifts from United and the Employer Plans to becoming the responsibility of the member. Section 6001 of the FFCRA and Section 3202(a) of the CARES Act were passed by Congress to protect against this shifting of financial responsibility.

### b.    The Inconsistent Adjudication of Covid Testing Claims

132.    As touched on above, United not only fails to apply a consistent criteria for its representatives to review records submitted by Plaintiff and other similarly situated OON providers of Covid Testing services, but United has also failed to adjudicate Covid Testing claims that have not been subject to United's Improper Record Request Scheme.

### i.    Inconsistent Adjudication of Covid Testing Claims of Members of the Same Self-Funded Health Plan Subject to ERISA

133.    On July 23, 2020, Plaintiff provided Covid Testing services to a family of eight, all belonging to the same self-funded health plan that United administers (Health Plan Group Number 917201) that is subject to ERISA. Even though the family members are all members of the same self-funded health plan, all received Covid Testing services on the same day, and their Covid Testing claims are all subject to the same applicable laws, the claims submitted by Plaintiff on behalf of the eight family members were adjudicated by United to have five different outcomes.[41]

---

[40] Exhibit G (Plaintiff's Supporting Letter Accompanying Patient Records Produced to United in Response to United's Improper Record Request Scheme).
[41] All eight of the family members' Covid Testing service claims were submitted using the same HCFA 1500 claims

134.    By way of example, below are high level overviews of how each of the eight claims

were adjudicated by United:

- Patient EEG is the primary subscriber to this self-funded health plan. Upon review of Patient EEG's records, United denied the actual Covid Testing service (CPT Code U0004) because the claim lacked information or had submission or billing errors, but reimbursed Plaintiff its cash price for its specimen collection services (CPT Code G2023).[42]

- Patient JP is the spouse of Patient EEG and Patient JJR and Patient KR are both dependents of Patient EEG. Upon initial review of the records of Patient JP, Patient JJR, and Patient KR, all three claims were fully denied by United. However, each claim was reprocessed by United and Plaintiff was reimbursed the full cash price for these services.[43]

- Patient JNG and Patient IAR are both dependents of Patient EEG. Upon initial review of the records of Patient JNG and Patient IAR, both claims were fully denied by United. Neither claim has been reprocessed as United has denied Plaintiff's attempts to appeal United's denials.[44]

- Patient ER is a dependent of Patient EEG. Upon initial review of Patient ER's records, the claim was fully denied by United. The claim was reprocessed by United at an in-network rate arbitrarily and unilaterally determined by United even though Plaintiff is an OON provider. However, after reprocessing the claim and paying Plaintiff an in-network rate that conflicts with the health plan's reimbursement requirements, United made an overpayment determination on this claim in the full amount of the in-network rate Plaintiff was reimbursed because the records previously provided lacked information or had submission billing errors. [45]

- Patient JEG is a dependent of Patient EEG. Upon initial review of Patient JEG's records, the claim was fully denied by United. Patient JEG's claim was reprocessed by United and Plaintiff was reimbursed the full cash price for its services. However, after reprocessing the claim and paying Plaintiff the full cash price, United then made an overpayment determination on this claim in the full amount that Plaintiff was reimbursed because the records previously provided lacked information or had submission billing errors. [46]

---

form that is uniformly completed by Plaintiff and the same records were produced to United on each claim in response to United's claim-by-claim record requests.

[42] *See* Exhibit H (Patient EEG's Full Administrative Covid Testing Claims File).

[43] *See* Exhibit I (Patient JP, Patient JJR, and Patient KR's Full Administrative Covid Testing Claims Files).

[44] *See* Exhibit J (Patient JNG and Patient IAR's Full Administrative Covid Testing Claims Files).

[45] *See* Exhibit K (Patient ER's Full Administrative Covid Testing Claims File).

[46] *See* Exhibit L (Patient JEG's Full Administrative Covid Testing Claims File).

135.    Five of this family's eight Covid Testing claims were not adjudicated in accordance with the requirements of the FFCRA and the CARES Act, and, even for two of the claims that Plaintiff did receive full or partial reimbursement for, United unilaterally and arbitrarily determined that it had overpaid on those claims for conflicting and inconsistent reasons. So even if Plaintiff is paid any amount for Covid Testing services from the funds of self-funded health plans (*e.g.* Employer Plans), Plaintiff remains at risk as United may at any time unilaterally and arbitrarily determine that it overpaid Plaintiff and engage in suspect offsetting and recovery practices with no benefit to the self-funded health plans or their members

136.    Section 6001 of the FFCRA and Section 3202(a) of the CARES Act were passed by Congress to protect Patient EEG and his family from any financial responsibility for Covid Testing. However, because United failed to reimburse Plaintiff either at its cash price or a negotiated amount, Patient EEG and the rest of his family are now financially responsible for the balance of what was unpaid by (or recouped by) United on behalf of the self-funded health plans it administers. United is not adjudicating the claims it is charged to administer, through self-funded health plans, in the best interests of its members.

      ii.    <u>Inconsistent Adjudication of Covid Testing Claims of Members of the Same Fully-Insured Health Plan Subject to the Texas Insurance Code</u>

137.    Plaintiff provided Covid Testing services to three members of the same EPO health plan that is fully-insured by United (Health Plan Group Number 2U7557) and is subject to the Texas Insurance Code. Each of the three members are all members of the same fully-insured EPO health plan, all received Covid Testing services in the same benefit plan year, and their Covid Testing claims are all subject to the same applicable laws. <u>However, these three members' claims were adjudicated by United to have three different outcomes.</u>[47]

_____

[47] All three of the members' Covid Testing service claims were submitted using the same HCFA 1500 claims form

138.    By way of example, below are high level overviews of how each of the three claims were adjudicated by United:

- Patient GBG is a member of United's EPO health plan with Group Number 2U7557. Upon review of Patient GBG's records, United denied the actual Covid Testing service (CPT Code U0004) because the claim lacked information or had submission or billing errors, but allowed for Plaintiff to be reimbursed its cash price for its specimen collection services (CPT Code G2023). However, no amount for specimen collection services were ever paid to Plaintiff as it was recouped by United to make itself whole for an overpayment determination unilaterally and arbitrarily made on a different Covid Testing claim. [48]

- Patient KLH is a member of United's EPO health plan with Group Number 2U7557. Upon initial review of Patient KLH's records, the claim was fully denied by United. However, Patient KLH's claim was reprocessed by United and Plaintiff was reimbursed the full cash price for these services.[49]

- Patient SM is a member of United's EPO health plan with Group Number 2U7557. Upon initial review of Patient SM's records, the claim was fully denied by United. Patient SM's claim has not been reprocessed.[50]

139.    Two of the three Covid Testing claims were not adjudicated in accordance with the requirements of the FFCRA and the CARES Act that TDI Commissioner's Bulletin B-0017-20 demands insurers of EPO health plans comply with, and, even for the two claims Plaintiff did receive full or partial reimbursement for, United may unilaterally and arbitrarily determine that it has overpaid on those claims for conflicting and inconsistent reasons. So even if Plaintiff is paid any amount for Covid Testing services from United's funds, Plaintiff remains at risk as United may at any time unilaterally and arbitrarily determine that it overpaid Plaintiff and engage in suspect offsetting and recovery practices to detriment of its members.

---

that is uniformly completed by Plaintiff and the same records were produced to United on each claim in response to United's record requests.
[48] *See* Exhibit M (Patient GBG's Full Administrative Covid Testing Claims File).
[49] *See* Exhibit N (Patient KLH's Full Administrative Covid Testing Claims File).
[50] *See* Exhibit O (Patient SM's Full Administrative Covid Testing Claims File).

140.     TDI Commissioner's Bulletin B-0017-20 was issued by TDI to reinforce to insurers that Section 6001 of the FFCRA and Section 3202(a) of the CARES Act were passed by Congress to protect Patient GBG and Patient SM from any financial responsibility for Covid Testing. However, because United failed to reimburse Plaintiff either at its cash price or a negotiated amount, Patient GBG and Patient SM are now financially responsible for the balance of what was unpaid by United as the insurer for this EPO health plan. United is not adjudicating the claims it fully insures in the best interests of its members.

**c.     *Meritless Internal Administrative Appeals Process***

i.     <u>Inconsistent and Arbitrary Appeal Outcomes</u>

141.     Looking back to Patient JF's claim that was used as an example to support Plaintiff's allegations of United's inconsistent and arbitrary records review criteria, this same claim also evidences United's failures to provide a full review of appealed Covid Testing claims that have been denied or otherwise improperly adjudicated.[51]

142.     Patient JF received Covid Testing services from Plaintiff on July 31, 2020, and records were requested and provided. Upon initial review of Patient JF's records, the claim was fully denied by United for the following reasons:

[INTENTIONALLY LEFT BLANK]

---

[51] *See* Exhibit P (Patient JF's Full Administrative Covid Testing Claims File).

**PATIENT:** J███ F███ (EE)

| SUBSCRIBER ID: | ████████ | SUBSCRIBER NAME: | ████████ | CLAIM NUMBER: | ████████ |
|---|---|---|---|---|---|
| CLAIM DATE: | 07/31/20-07/31/20 | DATE RECEIVED: | 01/09/21 | PRODUCT: | Navigat |
| REND PROV ID: | 1154930279 | REND PROV: | DIAGNOSTIC AFFILIATES | | |

| PATIENT CONTROL NUMBER | PATIENT ID | AUTH/REF NUMBER | DRG | DRG WEIGHT | CLAIM CHARGE AMOUNT | CLM ADJ AMT | GRP CD | CLM ADJ RSN CD | CLAIM PAYMENT AMOUNT | PATIENT RESPONSIBILITY |
|---|---|---|---|---|---|---|---|---|---|---|
| ████ | | | | | $1,028.00 | | | | $0.00 | |

**SERVICE LINE DETAIL(S)**

| LINE CTRL# | DATES OF SERVICE | SUB PROD/ SVC/ MOD | ADJ PROD/ SVC | MOD | REV | UNITS | ADJ QTY | CHARGE | AMOUNT ALLOWED | ADJ AMOUNT | GRP CD | CLM ADJ RSN CD | PAYMENT AMOUNT | REMARK/ NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ZZZZZ043GU | 07/31/20 - 07/31/20 | | U0004 | | | | 1 | $900.00 | | $900.00 | PI | 171 | $0.00 | OH, N428 |
| ZZZZZ043GV | 07/31/20 - 07/31/20 | | G2023 | | | | 1 | $128.00 | | $128.00 | PI | 171 | $0.00 | OH, N428 |
| CLAIM# ████ | | | | | | SUBTOTAL | | $1,028.00 | | $1,028.00 | | | $0.00 | |

**NOTES**

PI171      PAYER INITIATED REDUCTIONS - PAYMENT IS DENIED WHEN PERFORMED/BILLED BY THIS TYPE OF PROVIDER IN THIS TYPE OF FACILITY.

OH      THIS SERVICE IS NOT REIMBURSABLE FOR THIS PROVIDER IN THIS PLACE OF SERVICE.

N428      NOT COVERED WHEN PERFORMED IN THIS PLACE OF SERVICE.

143.    Plaintiff submitted a level 1 appeal to contest the denial of Patient JF's Covid Testing claim on the basis that this claim was processed in violation of the FFCRA and the CARES Act and should be re-adjudicated accordingly. On appeal, this claim was reconsidered by United and the full cash price for Patient JF's Covid Testing service was paid to Plaintiff.[52]

144.    Though, on appeal, Patient JF's claim was reconsidered and paid at the full cash price, the vast majority of appeals submitted by Plaintiff to contest United's adverse benefit determinations have been denied and largely ignored. By way of example, below is the adjudication details of Patient MG's Covid Testing claim. United initially denied Patient MG's claim for the following reasons:

[INTENTIONALLY LEFT BLANK]

---

[52] *Id.*



WE RECEIVED THE REQUESTED INFORMATION ON 11/24/20 AND HAVE PROCESSED CLAIM NUMBER CG91862758 0153188637.

NOTES

PI171    PAYER INITIATED REDUCTIONS - PAYMENT IS DENIED WHEN PERFORMED/BILLED BY THIS TYPE OF PROVIDER IN THIS TYPE OF FACILITY.

145.    Though United's initial denial reasons for Patient MG and Patient JF were identical,

Patient MG's denial was upheld for the following reasons:

DETERMINATION:        UPHELD

Dear M██████ G███████:

I reviewed the request received April 14, 2021, to reconsider our previous decision regarding the service(s) that you received. I understand the appeal to state that this service(s) should be eligible for reimbursement because it was covid test.

We carefully reviewed the documentation submitted, our payment policies and the limitations, exclusions and other terms of your Benefit Plan, including any applicable Riders, Amendments, and Notices. We confirmed, however, that this  service(s) is not eligible for payment as you requested. You are responsible for all costs related to this service(s).

Because the claim(s) for this service(s) was processed according to the above plan provision(s), our original determination remains unchanged, and the determination is upheld. Our administrative decision does not reflect any view about the appropriateness of this service(s). Only you and your provider can make decisions about your care.

146.    Patient MG and Patient JF's Covid Testing claims, the records submitted to United

upon request, and the appeal materials submitted to contest the initial denials are virtually identical,

but the outcomes are drastically different. Because it is fundamentally impossible to predict how

a particular Covid Testing claim may be adjudicated on initial submission, appeal, or otherwise,

especially when the purpose of such applicable laws and guidance were to create a level of predictability for all stakeholders on how Covid Testing claims should be adjudicated, United's claim submission and internal administrative appeals process have no merit.

        ii.    <u>Failure to Provide Requested Materials to Plaintiff and United Members</u>

147.    On all appeal letters submitted to contest United's adverse benefit determinations, Plaintiff explicitly requests the following materials that are relevant to adjudication of the Covid Testing claims:

**<u>SUPPLEMENT TO APPEAL: PROCESSING AND PAYMENT OF COVID-19 LABORATORY TESTING IN ACCORDANCE WITH THE FFCRA, THE CARES ACT, AND TEXAS INSURANCE LAWS</u>**

24 Hour Covid requests that this claim be immediately reprocessed and paid accordingly. Continued failure to properly cover and reimburse 24 Hour Covid for COVID-19 testing in accordance with the above-referenced federal and state requirements constitutes a violation of these applicable federal and state laws and shall be escalated and addressed accordingly. Pursuant to 29 CFR 2560.503-1(j)(5) and (j)(3) and/or applicable Texas Insurance laws and regulations, if the adverse benefit determination is upheld and/or an adverse benefit determination remains after reprocessing the claim, we request that you immediately provide us with copies of all documents, records, and other information relevant to this claim, including, but not limited to: the health plan's summary plan document(s) and other relevant plan documents; the administrative services agreement (if applicable); the methodology used in calculating the allowed amount for this claim; and any and all internal rules, policies, and guidelines relied upon in the processing of this claim. Failure to fully comply with this document request shall subject the health plan, its plan administrator, and/or its third-party claims administrator to statutory per diem penalties as set forth under 29 USC 1132(c) or Texas Insurance laws and regulations.

**<u>LEVEL 2 APPEAL: PROCESSING AND PAYMENT OF COVID-19 LABORATORY TESTING IN ACCORDANCE WITH THE FFCRA, THE CARES ACT, AND TEXAS INSURANCE LAWS</u>**

24 Hour Covid requests that this claim be immediately reprocessed and paid accordingly. Continued failure to properly cover and reimburse 24 Hour Covid for COVID-19 testing in accordance with the above-referenced federal and state requirements constitutes a violation of these applicable federal and state laws and shall be escalated and addressed accordingly. Pursuant to 29 CFR 2560.503-1(j)(5) and (j)(3) and/or applicable Texas Insurance laws and regulations, if the adverse benefit determination is upheld and/or an adverse benefit determination remains after reprocessing the claim, we request that you immediately provide us with copies of all documents, records, and other information relevant to this claim, including, but not limited to: the health plan's summary plan document(s) and other relevant plan documents; the administrative services agreement (if applicable); the methodology used in calculating the allowed amount for this claim; and any and all internal rules, policies, and guidelines relied upon in the processing of this claim. Failure to fully comply with this document request shall subject the health plan, its plan administrator, and/or its third-party claims administrator to statutory per diem penalties as set forth under 29 USC 1132(c) or Texas Insurance laws and regulations.

148.    Despite Plaintiff's request for any and all records relevant to the adjudication of Covid Testing claims, United has failed to provide any materials in response to Plaintiff's request even though United expects Plaintiff to comply with each and every one of its record requests.

149.    United is also denying members of its health plans materials they are legally obligated to disclose to its members upon request.

150.    Patient VE is a member of a self-funded health plan subject to ERISA. Patient VE and her three children all received Covid Testing services from Plaintiff and all four Covid Testing claims were not processed in accordance with the requirements of the FFCRA and the CARES Act. As a result, Patient VE, in accordance with her rights, personally filed appeals with United on all four claims, and, as part of her appeal, made the following requests:[53]

**Expected Outcome:**

The adverse benefits determination be overturned, and the claim is processed and reimbursed in accordance with the Families First Coronavirus Response Act and the Coronavirus Aid, Relief, and Economic Security Act. The claim must be reprocessed and paid the cash price that is properly publicized on the Laboratory's website (U0004: $900; G2023: $120). **I also request that you provide me with, free of charge, a copy of any and all internal rules, guidelines, or protocols relied upon. Please mail these documents to my mailing address above.**

151.    The requested materials were never provided to Patient VE even though the explanation of benefits and summary plan description outline that she is entitled to such materials. The explanation of benefits and summary plan description states the following:

### Patient VE Explanation of Benefits

1974.

An internal rule, guideline, protocol, or other similar criterion was referenced in making this possible adverse benefit determination.  A copy of the rule, guideline, protocol, or other similar criterion may be requested free of charge.  If the adverse benefit determination was based upon medical necessity, experimental treatment, or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination, if not already indicated, may be requested free of charge.  Please send the written request indicating the specific information being requested to: Information Request PO Box 31375 Salt Lake City, UT 84131-0375.

There may be other resources available to help you understand the appeals process. You can contact the Employee Benefits Security Administration at 1-866-44-EBSA(3272).

### Patient VE's Summary Plan Description

## Appeal Process

A qualified individual who was not involved in the decision being appealed will be review the appeal. If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with expertise in the field, who was not involved in the prior determination. The Claims Administrator may consult with, or ask medical experts to take part in the appeal process. You consent to this referral and the sharing of needed medical claim information. Upon request and free of charge, you have the right to reasonable access to and copies of all documents, records and other information related to your claim for Benefits. Any new or additional evidence is relied upon or generated by the Plan during the determination of the appeal, will be provided to you free of charge and in advance of the due date of the response to the adverse benefit determination.

152.    Of important note, not only were the requested materials never provided to Patient VE, __but__ her appeals, mailed to United in March of 2021, have yet to be responded to despite

---

[53] *See* Exhibit Q (Patient VE's Level 1 Appeal Letters Submitted to United to Contest the Adverse Benefit Determinations of Her and Her Children's' Covid Testing claims).

United's legal obligations to respond to appeals within 30-45 days.

153.    Lastly, Patient MO's claim to United for Covid Testing services was adjudicated incorrectly. On or about April 23, 2021, Patient MO contacted United to contest his adverse benefit determination for fear that he may be balance billed by Plaintiff for Covid Testing services.

154.    During the course of his call, Patient MO was informed of useful information relevant to the adjudication of his Covid Testing claim and was informed that he may request a copy of the recording and/or transcript of his call for his records. Patient MO sent a request to United for a copy of the recording and/or transcript of the call to utilize as supporting materials to include in his appeal to United; however, United did not provide Patient with the specific materials that he requested, thus, unfairly prejudicing Patient MO before even attempting to file a personal appeal.[54]

155.    Not only is Plaintiff reeling from the effects of United's Improper Record Request Scheme and its inconsistent and arbitrary claims adjudication and appeals practices, but United is also denying Plaintiff and its members all relevant documents and materials needed to engage in and properly contest United's unlawful practices through United's internal administrative appeals processes. Without these materials, Plaintiff and United members are denied their rights to a full and fair review of their Covid Testing claims in contravention of ERISA, the Affordable Care Act, and other applicable federal and state laws; therefore, United's internal administrative appeals process is functionally meritless.

---

[54] *See* Exhibit R (Patient MO's Request for a Transcript and Recording of Conversation dated April 23, 2021).

iii.    Deemed Exhaustion of Internal Administrative Appeals Process Due to Violations of the FFCRA, the CARES Act, and Internal Administrative Appeals Requirements

156.    United's internal administrative appeals process has no merit.

157.    This kangaroo court either intentionally created by United or created through its intentional disregard of its obligations to maintain a just and fair internal administrative appeals process should be made an example of.

158.    Pursuant to 29 C.F.R. § 2560.503-1(l) and 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(1), (b)(3)(ii)(F)(1), United and the Employer Plans' internal claims and appeals processes failed to comply with or strictly adhere to the minimum requirements of the internal claims and appeals processes as prescribed by 29 C.F.R. § 2560.503-1 and/or 45 C.F.R. § 147.136; therefore, the internal claims and appeals processes available under each United Plan and Employer Plans are deemed to have been exhausted, allowing Plaintiff to pursue any available remedies under Section 502(a) of ERISA or under State law on the basis that United and the Employer Plans have failed to provide a reasonable claims procedure that would yield a decision on the merits of the Covid Testing claims at issue.

159.    Additionally, pursuant to 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(2), (b)(3)(ii)(F)(2), United, in its capacity as an insurer and third-party claims administrator, failed to respond to Plaintiff's written request for a written explanation of United and the Employer Plans' patterns and practices of violations as alleged and detailed in this Original Complaint within ten (10) days of Plaintiff's specific written request to United; therefore, the internal claims and appeals processes available under each United Plan and Employer Plans are further deemed to have been exhausted.[55]

---

[55] A specific written request for a detailed explanation of United and the Employer Plans' numerous violations was made by Plaintiff to United on May 3, 2021, but not response was ever provided. Despite United's failure to respond

d.    ***Financial Incentives and Benefits for United to Unlawfully Adjudicate Covid Testing Claims***

i.    Health Plans Fully-Insured by United

160.    Individuals and employers that pay premiums directly to an insurer are typically members of fully-insured health plans, and the members' medical costs are paid using the funds of the insurer. Because the medical costs are paid using the funds of the insurance company, the insurer assumes all the risk of providing health coverage for insured members. As a result, the more of its own funds an insurer must utilize to cover medically necessary services, the less revenue an insurance company has to distribute internally to its stakeholders and investors and to utilize for itself.

161.    United is at risk and financially responsible for reimbursing Plaintiff for Covid Testing claims submitted by Plaintiff on behalf of members of United's fully-insured health plans. United's Improper Record Request Scheme, meritless claims and administrative review processes, and blatant disregard of its obligations to comply with the requirements of the FFCRA, the CARES Act, and TDI guidance are done by United to drastically limit funds United has a fiduciary obligation to pay to providers of Covid Testing services so that it may financially benefit from such adverse benefit determinations.

ii.    Self-Funded Health Plans Administered by United

162.    By contrast, many larger employers (*e.g.* Employer Plans) choose to assume the risk for payment of medical claims by sponsoring a benefits plan that forms a specific fund for that purpose, and is funded by the employer and/or employees who contribute premium payments to the fund. Employers that elect to have a self-funded health plan generally contract with insurance

---

to Plaintiff within ten (10) days of the Plaintiff's written request, Plaintiff attempted to again solicit a written explanation from United on two (2) subsequent occasions – May 5 and May 20, 2021.

companies to act in the capacity of a third-party claims administrator to oversee the claims and appeals processing and other administrative services.

163.    Employer Plans have contracted with United to act as their self-funded health plans' third-party claims administrator, and United is duly compensated by Employer Plans for providing such administrative services.

164.    United's compensation is made up of a number of administration and access fees that are charged to the Employer Plans, which include, but are not limited to, cost reduction services aimed at generating savings on claims when the primary network is not utilized. As part of these cost reduction services offered by United is known as its CRS Benchmark Program, United takes for itself anywhere between 20% to 35% of the "savings" it is able to manufacture for itself through this program.

165.    For example, Patient MM received Covid Testing services from Plaintiff on July 10, 2020, and rather than pay Plaintiff the full cash price or negotiate an amount less than the cash price to pay, United pushed this claim into its CRS Benchmark Program and arbitrarily and unilaterally determined an amount to be paid. By subjecting this claim to the CRS Benchmark Program, United is able to pocket up to 35% of the difference between the charge amount and the payment amount shown below:

[INTENTIONALLY LEFT BLANK]



166.    Though Plaintiff was paid $185.19 on Patient MM's claim, United was able to pocket up to $294.00 for itself. The amount United has paid itself is more than what United has paid to Plaintiff for providing bona fide Covid Testing services to Patient MM.

167.    Because of the CRS Benchmark Program, United has no incentive to comply with the CARES Act and to reimburse Plaintiff the cash price for its Covid Testing services <u>or</u> to negotiate an in-network agreement or an amount to be paid on Covid Testing claims despite Plaintiff's numerous attempts to enter into good faith negotiations.

168.    United has had hundreds, if not thousands, of Covid Testing claims placed into the CRS Benchmark Program, unilaterally and arbitrarily set a price to be paid on the Covid Testing claims, paid such claims using the proceeds of the self-funded health plans United administers, then has pocketed anywhere between 20% to 35% of the "savings" between Plaintiff's cash price and the amount actually reimbursed.

169.    From the perspective of the self-funded health plans, it has and remains financially prudent for United to negotiate an amount to be paid on Covid Testing claims with Plaintiff. However, rather than act in the best financial interests of its clients and in the best interests of the clients' employees, United chose its own best interest.

170.    United has used unlawful and willful conduct to abstract and convert the assets and funds of self-funded health plans to the benefit of its own financial interest in violation of 18. U.S.C. § 664.

iii.    <u>HRSA COVID-19 Uninsured Program Partnership with United</u>

171.    As part of the national effort to combat the COVID-19 pandemic, the Health Resources & Services Administration ("HRSA") instituted the HRSA COVID-19 Uninsured Program to provide reimbursements on a rolling basis directly to eligible providers for claims attributed to the testing, treatment, or vaccine administration for COVID-19 for uninsured individuals. HRSA has contracted with United to administer this program, but reimbursement for COVID-19 related services is made from the Provider Relief Fund and the American Rescue Plan Act of 2021.[56]

172.    Because United is not at risk for paying Covid Testing claims on behalf of the uninsured and cannot subject claims billed by Plaintiff to the HRSA COVID-19 Uninsured Program to its CRS Benchmark Program, virtually none of these claims have been subject to United's Improper Record Request Program, been denied for technical billing issues, nor otherwise denied in the same manner as the Covid Testing claims submitted to plans United insures or administers. This is not a coincidence.

---

[56] https://www.hrsa.gov/coviduninsuredclaim/frequently-asked-questions

### e.    *United's Disinformation Campaign*

    i.   <u>Misrepresentations to Plan Sponsors and Administrators of Health Plans United Administers</u>

173.    In an effort to amicably resolve all issues Plaintiff has detailed in this Original Complaint, Plaintiff sent notice letters to the Employer Plans and other self-funded health plans to inform the health plans of United's misconduct and to implore the health plans to take action. Some health plans were responsive, but the majority were not.

174.    One responsive health plan directly inquired with United as to why its members' Covid Testing claims were not being adjudicated, and United provided these initial responses:

> For the out-of-network providers:
> Non-participating providers can charge any amount they choose.
> However, the insurance company will look at Medicare rates or other sources to determine what amount is actually eligible to pay on.
> For COVID-19 tests, we will pay even if the provider or lab is out-of-network, but we will only pay on the eligible amount. Any amount that is over what is determined to be the eligible or allowed amount, the provider can balance-bill for that.
> So, when you see the amounts where there is a balance, the member may owe that because those amounts are not eligible or allowed for us to pay on.

> Now, if the provider sees our Explanation of Benefits and if they follow the CARES act, then they will not balance-bill the patient.
> But we cannot force them to take a discount if they do not follow a contract. We still pay according to the rates set by Medicare or other sources if Medicare rates are not available. This is what we call the MNRP fee schedule (Maximum Non-network Reimbursement Program). The other sources may be what their cash price is, but I will not know what source we used to determine the reimbursement rate.

175.    When presented with the language of the FFCRA and the CARES Act and the FAQs issued by the Departments, United again misrepresented its obligations:

Everything below states "either a cash price or negotiated rate".
Because an out-of-network provider was used, there is no negotiated rate
or contracted rate.
We are just going to base our allowed amounts to be paid at 100% based
on either the Medicare rates or other sources. The "other sources" may
be the cash price rate. But the provider may not have billed the
insurance company that way.

If the provider feels they should have been paid more, then the provider
may appeal with the insurance company and provide us with those cash
prices or other supporting information to show what the correct
reimbursement rate should be based on their sources. However, if what
the provider billed the insurance company is still above that rate, we
will still be listing the overage under the not covered amount. The
provider can do what they will with that amount, but according to your
information below, the provider should not be billing the patient for
that amount. We do not have control over that.

176.    Lastly, when informed by the health plan that Plaintiff's billed rates are the cash

price, that Plaintiff has appealed a substantial portion of the adverse benefit determinations and

has included its cash price in the appeal letters, and United has not even attempted to negotiate a

rate to be paid on Covid Testing claims, despite Plaintiff's efforts to negotiate, United fell silent

and has failed to respond to this health plan's concern.[57]

177.    This communication between the health plan and United is representative of the

misrepresentations that United directly makes to self-funded health plans, including the Employer

Plans. Moreover, these misrepresentations directly conflict and contradict with the information

and materials available on United's website, and with all applicable Federal and State laws and

guidance.

       ii.    <u>Misrepresentations to Members of Health Plans Insured and Administered
          by United</u>

178.    In the event of any adverse benefit determination, Federal and State laws pertaining

to the internal claims and appeals processes require issuers and health plans to inform its members

---

[57] Exhibit S (Self-Funded Health Plan Communications with United Regarding the FFCRA and the CARES Act).

of the outcome of how their particular medical claims are adjudicated and to provide the specific reasons for the adverse benefit determination. Members are provided these notices by mail and/or through an electronic medium.

179.    Through these communications to its members, United has consistently misrepresented its obligations as to how Covid Testing claims should be adjudicated. Not only do the representations to the members contradict with the applicable authorities, but the explanations and remarks also conflict with the representations made on United's website, made to self-funded plans it administers, and to Plaintiff.

180.    In a series of communications, between a United member and multiple United representatives, pertaining to the improper adjudication of the member and his child's Covid Testing Claims, United informs the member that his claims were adjudicated correctly, but were unwilling to provide any internal materials or policies that support United's adjudication of the claims. Furthermore, when inquiring why his and his child's claims were adjudicated differently, United was unable to provide an explanation.

181.    Patient RB, a member of a self-funded health plan administered by United, obtained Covid Testing services from Plaintiff on December 18, 2020. Patient RB's child, a dependent of Patient RB, also obtained services from Plaintiff on December 14, 2020. In contravention of the FFCRA and the CARES Act, both claims were mis-adjudicated by United and also had different outcomes, and when inquiring about his concerns, Patient RB was consistently misled by United of United's obligations.


[INTENTIONALLY LEFT BLANK]

**Patient RB's First Call with United (52 Minutes, 57 seconds)**

- Upon receipt of his initial explanation of benefits informing him of his denied Covid Testing claim, Patient RB placed a call to United on April 20, 2021, to further inquire about the outcome of his claim. The claim representative ("UHC Representative 1") informed Patient RB that his claim was denied because, under the terms of Patient RB's health plan, Patient RB did not have OON benefits; therefore, all services received from OON providers, regardless of whether the services were COVID-19 related, are to be denied.[58]

- Patient RB requested that this call be escalated as UHC Representative 1's explanation conflicted with his understanding of how Covid Testing claims should be adjudicated. The call was escalated to a second United representative ("UHC Representative 2"). While UHC Representative 2 researched Patient RB's concerns, UHC Representative 1 informed Patient RB that it is difficult to provide a clear answer on how Covid Testing claims should be adjudicated as United is consistently changing its internal policies and requirements on a daily basis. For example, UHC Representative 1 states that under the terms of Patient RB's health plan, OON Covid Testing services were covered until approximately the end of 2020, but, effective January 2021, OON Covid Testing services are no longer to be covered.

- UHC Representative 2 informed Patient RB that his health plan <u>does</u> cover OON Covid Testing services, but only up to 100% of eligible charges, and those eligible charges are determined by a federal mandate. Additionally, because there would be a difference between what United pays due to eligible charges/federal mandate and the billed amount/cash price for the Covid Testing services, the OON provider would be able to bill Patient RB for the balance bill.[59] Patient RB requested that he be provided with materials detailing the federal mandate but was informed that it was an internal document that could not be provided to him.[60]

---

[58] This is a flagrant misrepresentation of United's obligations to cover Covid Testing services. Section 6001 of the FFCRA, as amended by section 3201 of the CARES Act, applies to group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered health plans as defined in section 1251(e) of the Patient Protection and Affordable Care). The term "group health plan" includes both insured and self-insured group health plans. It includes private employment-based group health plans (ERISA plans), non-federal governmental plans (such as plans sponsored by states and local governments), and church plans.

[59] The Departments read the requirement to provide coverage without cost sharing in section 6001 of the FFCRA, together with section 3202(a) of the CARES Act establishing a process for setting reimbursement rates, as intended to protect participants, beneficiaries, and enrollees from being balance billed for an applicable COVID-19 test. Section 3202(a) contemplates that a provider of COVID-19 testing will be reimbursed either a negotiated rate or an amount that equals the cash price for such service that is listed by the provider on a public website. In either case, the amount the plan or issuer reimburses the provider constitutes payment in full for the test, with no cost sharing to the individual or other balance due. Therefore, the statute generally precludes balance billing for COVID-19 testing. However, section 3202(a) of the CARES Act does not preclude balance billing for items and services not subject to section 3202(a), although balance billing may be prohibited by applicable state law and other applicable contractual agreements.

[60] Patient RB's initial explanation of benefits states, "An internal rule, guideline, protocol, or other similar criterion was referenced in making this possible adverse benefit determination. <u>A copy of the rule, guideline, protocol, or other</u>

- Patient RB inquired with UHC Representative 2 as to why his Covid Testing claim was not initially adjudicated in accordance with United's federal mandate/internal policies. UHC Representative 2 stated that he was uncertain but if he had reviewed the claim that it would have been processed in accordance with his explanation. UHC Representative 2 goes on to state that even though United's internal policies provide for a federal mandate for Covid Testing claims, United may also pay an OON provider an amount higher than the federal mandate.

- Patient RB also made reference to the Departments' FAQ guidance as well which states that OON providers are to be paid either their cash price or a negotiate amount, but UHC Representative 2 again stated that he is only permitted to process Patient RB's claim in accordance with internal policies. The internal policy relied upon was last updated on April 13, 2021. Updates to the internal policy are regularly circulated.

### Patient RB's Second Call with United (1 Hour, 18 Minutes, 59 Seconds)

- Patient RB's claim was reprocessed and paid in accordance with UHC Representative 2's explanation; however, the second explanation of benefits provides that the OON provider cannot balance bill Patient RB, which contradicts UHC Representative 2's explanation regarding an OON provider's right to balance bill.

- In a call with a third United Representative ("UHC Representative 3") on April 30, 2021, Patient RB was informed that Plaintiff was prohibited from balance billing Patient RB on this claim.[61] Patient RB also requested that he be provided the federal and state emergency guidance materials that United relied upon when adjudicating his claim, but UHC Representative 3 informed him that he is only entitled to his explanation of benefits and nothing else.[62]

- During the call with Patient RB, UHC Representative 3 contacted Plaintiff to discuss Patient RB's claim. After UHC Representative 3's call with Plaintiff, Patient RB was informed that he is not financially responsible for the claim and that additional materials on why Patient RB is not responsible for the difference will be provided to Plaintiff.[63]

- Patient RB requested that the call be escalated, and Patient RB then spoke with a fourth United representative ("UHC Representative 4"). UHC Representative 4 informed Patient RB that the adjudication of his claim was correct since it was processed in accordance with Medicare guidelines, and read the internal policy to

---

similar criterion may be requested free of charge [emphasis added]."
[61] *Supra* Footnote 14
[62] Patient RB's second explanation of benefits states, "An internal rule, guideline, protocol, or other similar criterion was referenced in making this possible adverse benefit determination. <u>A copy of the rule, guideline, protocol, or other similar criterion may be requested free of charge</u> [emphasis added]."
[63] Patient RB has not been provided with any materials as of the date of this Original Complaint.

Patient RB. Patient RB again inquired whether the internal policy and materials could be provided, but UHC Representative 4 was not able to provide the materials.[64]

### Patient RB's Third Call with United (26 Minutes, 2 Seconds)

- A fifth United representative ("UHC Representative 5") called Patient RB to discuss his Covid Testing claim. When Patient RB requested clarification on whether United is obligated to pay Plaintiff's cash price or a negotiated amount, but UHC Representative 5 did not provide an explanation.

- Patient RB again inquired as to whether he is entitled to access to policies and materials used or relied upon in the adjudication of his Covid Testing claim, and UHC Representative 5 informed Patient RB that he may be able to obtain the materials from the claims processing department.[65]

- Patient RB also inquired about his child's Covid Testing claim that was also adjudicated and paid at a different amount than Patient RB's claim. UHC Representative 5 was unable to provide a response, and informed Patient RB that she would investigate the matter and call him with her findings.

### Patient RB's Fourth Call with United (16 Minutes, 51 Second)

- UHC Representative 5 called Patient RB to inform him of her findings. Patient RB was informed that the re-adjudication of his Covid Testing claims was actually incorrect because United overpaid Plaintiff on Patient RB's claim and that an overpayment notice will be issued to Plaintiff for a refund to United.

- Patient RB explained to UHC Representative 5 that a prior United representative informed him that United's internal policy required OON providers of Covid Testing to be reimbursed at a fixed federally mandated amount, but UHC Representative 5 provided no additional insight or comments.

- UHC Representative 5 did not provide any comment on the Covid Testing claim for Patient RB's child.

- Patient RB was transferred to a sixth United representative ("UHC Representative 6") to discuss the adjudication of his Covid Testing claim. After summarizing his experiences with multiple United representatives, Patient RB again requested all materials involved in the review of his claim. UHC Representative 6 denied Patient RB's request for materials and informed him that he needs to send a written request.

---

[64] *Supra* Footnote 62
[65] Patient RB had previously requested the United claims department to provide him with materials relevant to the adjudication of his claim, but a representative from the United claims department informed him that they are unable to provide the materials to him.

- Patient RB further inquired about UHC Representative 6's understanding of the CARES Act and its requirement for United to either pay the cash price or a lower agreed upon amount. UHC Representative 6 stated that OON providers are paid at a usual and customary rate, not in accordance with the CARES Act.

- During the call, UHC Representative 6 also noticed that Patient RB's claim was processed as in-network because it was a Covid Testing claim even though Plaintiff is an OON laboratory.

- UHC Representative 6 then informs Patient RB that if he wants to continue to contest the claims, he should file an appeal to dispute the adjudication of the claims.

182.    For nearly three hours, Patient RB was misled by multiple United representatives as to United's obligations to process Covid Testing claims in accordance with FFCRA and the CARES Act, denied materials that he is entitled to, and given non-answers regarding his specific inquiries/concerns. Additionally, over the course of his call, Patient RB's Covid Testing claim was adjudicated three different times, with the final outcome of his claim conflicting with UHC Representative 2's explanation.

183.    Below are additional examples that are representative of the types of contradictory and conflicting representations United makes to members who have received Covid Testing services from Plaintiff and whose claims were not adjudicated in accordance with the requirements of the FFCRA and the CARES Act:

| | |
|---|---|
| ED | THIS SERVICE HAS BEEN PROCESSED IN ACCORDANCE WITH FEDERAL AND STATE EMERGENCY GUIDANCE. PROVIDERS MAY NOT BILL THE MEMBER ABOVE THE ALLOWED AMOUNT. IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING THE PROCESSING OF THIS CLAIM PLEASE CONTACT US. |
| Y5 | OUT-OF-NETWORK BENEFITS HAVE BEEN APPLIED TO THESE LAB, X-RAY AND/OR DIAGNOSTIC SERVICES BECAUSE THE SERVICES WERE PERFORMED BY AN OUT-OF-NETWORK HEALTH CARE PROVIDER. IN ACCORDANCE WITH YOUR BENEFIT PLAN, CLAIMS FOR THESE COVERED SERVICES FROM OUT-OF-NETWORK PROVIDERS WILL BE PAID AT YOUR OUT-OF-NETWORK BENEFIT LEVEL, WHICH DOES NOT ALLOW REIMBURSEMENT FOR THE AMOUNT THAT EXCEEDS THE ELIGIBLE AMOUNT, EVEN IF YOUR IN-NETWORK DOCTOR OR OTHER HEALTH CARE PROVIDER REFERRED THE SERVICE. THE ELIGIBLE AMOUNT IS BASED ON A DATABASE OF COMPETITIVE FEES FOR SIMILAR SERVICES OR SUPPLIES IN YOUR AREA. |
| N810 | ALERT: DUE TO FEDERAL, STATE OR LOCAL DISASTER DECLARATION, THIS CLAIM HAS BEEN PROCESSED AT THE IN-NETWORK LEVEL OF BENEFIT. AT THE CONCLUSION OR EXPIRATION OF THE DISASTER DECLARATION, NETWORK PAYMENT RULES WILL BE REINSTATED. |

| IS | MEMBER: THIS SERVICE WAS PROVIDED BY AN OUT-OF-NETWORK PROVIDER. WE PAID THE PROVIDER ACCORDING TO YOUR BENEFITS AND DATA PROVIDED BY DATA ISIGHT. IF YOU'RE ASKED TO PAY MORE THAN THE DEDUCTIBLE, COPAY AND COINSURANCE, PLEASE CALL DATA ISIGHT AT 866-835-4022 OR VISIT DATAISIGHT.COM. THEY WILL WORK WITH THE PROVIDER ON YOUR BEHALF. IF THE PROVIDER DISAGREES WITH DATA ISIGHT, THE PROVIDER MIGHT BILL YOU FOR THE DIFFERENCE BETWEEN THE AMOUNT BILLED AND THE AMOUNT ALLOWED. WE'VE ASKED THEM NOT TO. PLEASE CONTACT US IF THEY DO. PROVIDER: PLEASE DON'T BILL THE PATIENT ABOVE THE AMOUNT OF DEDUCTIBLE, COPAY AND COINSURANCE. |
|---|---|
| ND | THIS OUT-OF-NETWORK SERVICE WAS PAID BASED ON MEDICARE ALLOWED AMOUNTS OR OTHER SOURCES IF NO MEDICARE AMOUNT IS AVAILABLE. THESE AMOUNTS ARE USED EVEN IF THE PATIENT DOESN'T HAVE MEDICARE. |

184.    Clearly, these statements and remarks made by United to its members regarding the adjudication of their Covid Testing claims misrepresent United's obligations to process Covid Testing Claims in accordance with the FFCRA and the CARES Act. Furthermore, the contents of these remarks conflict with the explanations provided to Patient RB by the multiple United representatives he spoke with.

         iii.    <u>Misrepresentations to Plaintiff and Other Similarly Situated OON Providers</u>

185.    Plaintiff has endeavored to address these issues directly with United, but United has largely remained silent on these issues.

186.    Furthermore, Plaintiff's billing and collection representatives have confronted and pressed United representatives as to why Covid Testing claims are not being processed in accordance with the requirements prescribed by the FFCRA and the CARES Act, but United representatives make contradictory and conflicting representations similar to the statements United makes to its members and self-funded health plans that it administers.

187.    United has been unable to justify its Improper Record Request Scheme nor its claims and appeals practices to any person that has inquired about its actions.

[INTENTIONALLY LEFT BLANK]

## CAUSES OF ACTION

## COUNT I – VIOLATION OF THE FFCRA AND THE CARES ACT
(*Against All Defendants*)

188.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

189.    Defendants offer group health plans and/or are health insurance issuers offering group or individual health insurance coverage, as those terms are defined under Section 6001 of the FFCRA.

190.    The Covid Testing services that Plaintiff provided to members of the United Plans and the Employer Plans administered by United constitute as in vitro diagnostic products for the detection of COVID-19, as provided by Section 6001 of the FFCRA.

191.    Plaintiff is an OON laboratory and did not have a negotiated rate with United for the provision of Covid Testing services.

192.    In compliance with the CARES Act, Plaintiff posted its cash prices for Covid Testing services on its public website.

193.    Under section 3202(a)(2) of the CARES Act, if a health plan does not have a negotiated rate with a provider, such as Plaintiff, for providing Covid Testing services, the health plan is obligated to pay the provider its posted cash price for providing those services.

194.    United and the Employer Plans, despite numerous and persistent demands and requests, have failed and refused to provide anything remotely close to Plaintiff's cash price for providing Covid Testing services. In fact, United has paid nothing for the vast majority of Covid Testing claims Plaintiff has submitted to United.

195.    By reason of the foregoing, Plaintiff has been injured.

196.    Based on the above, Plaintiff is entitled to judgment against United and the

Employer Plans in an amount to be determined at the trial of this matter, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees.

## COUNT II – VIOLATION OF SECTION 502(a)(1)(B) OF ERISA
### (*Against All Defendants*)

197.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

198.    All of the Employer Plans at issue are benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").[66]

199.    ERISA, the FFCRA and the CARES Act require the Employer Plans and United to reimburse OON providers for Covid Testing Services in a specific manner.

200.    United's denials and mis-adjudication of Covid Testing claims submitted by Plaintiff on behalf of members of self-funded health plans administered by United (*e.g.* Employer Plans) are a violation of the requirements of self-funded ERISA health plans to cover Covid Testing services and a wrongful denial of benefits owed under ERISA.

201.    Many of the members of plans either insured or administered by United who received Covid Testing services from Plaintiff executed assignment of benefits documents.

202.    Moreover, the FFCRA and the CARES Act, by directing all plans, including self-funded ERISA health plans (*e.g.* Employer Plans), not just to cover Covid Testing and related services, but to pay OON providers certain amounts for Covid Testing services provided to covered members, have obviated the need for a provider to obtain a specific assignment of ERISA benefits from a member of a health plan subject to ERISA to be entitled to seek reimbursement from the health plan for Covid Testing services, or to be entitled to bring an action under ERISA for reimbursement and/or injunctive relief.

---

[66] 9 U.S.C. §§ 1001, et seq.

203.    In effect, the FFCRA and the CARES Act have given OON providers of Covid Testing services standing to sue self-funded health plans subject to ERISA (*e.g.* Employer Plans) for violations of ERISA, including violations of the FFCRA and the CARES Act, regardless of whether there has been an assignment of benefits. Indeed, the "benefit" Plaintiff is suing for is the provider reimbursement required by the FFCRA and the CARES Act. The FFCRA and the CARES Act do not merely require healthcare plans to "cover" Covid Testing services, they require self-funded health plans to pay amounts directly to OON providers, because the Congressional intent was to prevent patients from facing any possible out of pocket liability.

204.    Pursuant to 29 C.F.R. § 2560.503-1(l) and 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(1), (b)(3)(ii)(F)(1), United and the Employer Plans' internal claims and appeals processes (*i.e.* claims procedures) failed to comply with or strictly adhere to the minimum requirements of the internal claims and appeals processes, as prescribed by 29 C.F.R. § 2560.503-1 and/or 45 C.F.R. § 147.136; therefore, the internal claims and appeals processes available under each United Plan and Employer Plan are deemed to have been exhausted allowing Plaintiff to pursue any available remedies under Section 502(a) of ERISA, or under State law on the basis that United and the Employer Plans have failed to provide a reasonable claims procedure that would yield a decision on the merits of the Covid Testing claims at issue.

206.    Additionally, pursuant to 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(2), (b)(3)(ii)(F)(2), United, in its capacity as an insurer and third-party claims administrator, failed to respond to Plaintiff's written request for a written explanation of United and the Employer Plans' patterns and practices of violations as alleged and detailed in this Original Complaint within ten (10) days of Plaintiff's specific written request to United; therefore, the internal claims and appeals processes available under each United Plan and Employer Plan are further deemed to have been exhausted.

A specific written request for a detailed explanation of United and the Employer Plans' numerous violations was made by Plaintiff to United on May 3, 2021, but no response was ever provided. Despite United's failure to respond to Plaintiff within ten (10) days of Plaintiff's written request, Plaintiff attempted to again solicit a written explanation from United on two (2) subsequent occasions – May 5 and May 20, 2021.

207.    Thus, Plaintiff has exhausted available administrative remedies, or exhaustion of administrative remedies would be futile given the above, and, alternatively, United's utter disregard for ERISA deadlines and procedures described above excuses any failure to exhaust administrative remedies.

208.    29 U.S.C. § 1132 provides that a member of a self-funded health plan subject to ERISA and Plaintiff under these circumstances may bring a civil action to recover benefits due under the plan, to enforce rights under the plan and to clarify rights and future benefits under the plan.

209.    United and the Employer Plans' failures to pay Plaintiff in full for covered Covid Testing services rendered to the members constitutes a breach of these self-funded health plans, and United and the Employer Plans' failures were erroneous, arbitrary and capricious and were without reason, were unsupported by substantial evidence, and were erroneous as a matter of law.

210.    Plaintiff is entitled to payment, pursuant to the FFCRA and the CARES Act for the bona fide Covid Testing services provided to United members.

211.    Furthermore, the Court may equitably reform the Employer Plans that do not comply with ERISA, the FFCRA, and the CARES Act, to render them compliant. Fairness and justice require such equitable reformation, because the Plaintiff provided an invaluable service to the community, in reliance on federal law regarding reimbursement, and United is violating that

law, to its own benefit and the detriment of the Plaintiff and members of plans United insures and administers. The Court should equitably reform any of United's ERISA plans that do not comply with the FFCRA and the CARES Act at issue to require that they mirror the language of the FFCRA and the CARES Act.

212.    Plaintiff is also entitled to reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132 (g)(1).

## COUNT III – DENIAL OF FULL AND FAIR REVIEW
### (*Against All Defendants*)

213.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

214.    As assignees and authorized representatives of its patients' claims, Plaintiff is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by United on behalf of the Employer Plans and other self-funded health plans subject to ERISA; and (b) compliance by United with applicable claims procedure requirements.

215.    Based on all of the foregoing, United's and the Employer Plans' actions and inactions relating to the Covid Testing claims at issue in this lawsuit are tantamount functionally to an adverse benefit determination of these claims.

216.    For denied claims pursuant to 29 U.S.C. § 1133, self-funded health plans subject to ERISA must: (i) provide adequate written notice to any member whose claim for benefits under the health plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the member; and (b) afford a reasonable opportunity to any member whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.[67]

---

[67] 29 U.S.C. § 1133(1) and (2)

217.    ERISA regulations make clear that, in the case of post-service claims submitted pursuant to group health plans, the required notification that the claim has been denied must be issued within a reasonable period of time, but not later than 30 days after receipt of the claim, unless the member or beneficiary is notified that, due to circumstances beyond the plan's control, the plan requires an additional 15 days to issue a required denial notification.[68]

218.    Although United, on behalf of the Employer Plans, is obligated to provide a "full and fair review" of denied and underpaid claims pursuant to 29 U.S.C. § 1133, United has failed to do so by, among other things: (a) refusing to provide the specific reason or reasons for the denial or underpayment of claims; (b) refusing to provide the specific plan provisions relied upon to support its denials or underpayments; (c) refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims; (d) refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment codes; (e) refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; (f) refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure; (g) refusing to provide Plaintiff with the documents and information relevant to United's denial of the Covid Testing claims; (h) refusing to timely issue required notifications that the claims have been denied or underpaid; and (i) running a functionally meritless internal administrative appeals process.

219.    By failing to comply with the ERISA claims procedure regulations, United and the Employer Plans failed to provide a reasonable claims procedure.

---

[68] 29 C.F.R. § 2560.503-1(f)(2)(iii)(B)

220.    Because United and the Employer Plans have failed to comply with the substantive and procedure requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(I) and 29 C.F.R. § 590.715-2719(b)(2)(ii)(F)(1).

221.    Exhaustion is also excused because it would be futile to pursue any administrative remedies, because United does not acknowledge any legitimate basis for its denials, and thus offers no meaningful administrative process for challenging its denials.

222.    Additionally, pursuant to 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(2), (b)(3)(ii)(F)(2), United, in its capacity as an insurer and third-party claims administrator, failed to respond to Plaintiff's written request for a written explanation of United and the Employer Plans' patterns and practices of violations as alleged and detailed in this Original Complaint within ten (10) days of Plaintiff's specific written request to United; therefore, the internal claims and appeals processes available under each United Plan and Employer Plan are further deemed to have been exhausted. A specific written request for a detailed explanation of United and the Employer Plans' numerous violations was made by Plaintiff to United on May 3, 2021, but no response was ever provided. Despite United's failure to respond to Plaintiff within ten (10) days of Plaintiff's written request, Plaintiff attempted to again solicit a written explanation from United on two (2) subsequent occasions – May 5 and May 20, 2021.

223.    Plaintiff has been harmed by United and the Employer Plans' failures to provide a full and fair review of appeals submitted and their failure to comply with applicable claims procedure regulations under ERISA. 29 U.S.C. § 1133.

224.    Plaintiff is entitled to relief under 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy United and the Employer Plans' failures to provide a full and fair review, to disclose information relevant to appeals, and to generally comply with applicable claim

procedure regulations.

## COUNT IV – VIOLATION OF 18 U.S.C. § 1962(C) (NON-ERISA)
### (*Against United*)

225.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

226.    Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3).

227.    Each of the Employer Plans and self-funded health plans that United administers is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The Employer Plans and self-funded health plans that United administers were engaged in activities affecting interstate and foreign commerce at all times relevant to this Original Complaint.

228.    United is associated with the Employer Plans and the other self-funded health plans that it administers and has conducted or participated, directly or indirectly, in the conduct of the Employer Plans and self-funded health plans that United administers in relation to Plaintiff through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

229.    The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5), described more fully throughout this Original Complaint, includes United's multiple, repeated, and continuous use of the mails and wires in furtherance of the Improper Record Request Scheme, meritless claims and appeals processes, its disinformation campaign in violation of 18 U.S.C. §§ 1341 and 1343, and embezzlement and/or conversion of self-funded plans assets through its CRS Benchmark Program in violation 18 U.S.C. § 664. United's violations have occurred in relation to, and/or involve benefits authorized, transported, transmitted, transferred, disbursed, or paid in connection with this COVID-19 Public Health Emergency which is a presidentially declared "emergency" as this term is defined in Section 102 of the Robert T. Stafford Disaster Relief and

Emergency Assistance Act.[69]

230.    Specific and detailed explanations and examples of United's use of the mails and wires to engage in a pattern of racketeering activity and embezzlement, theft, and conversion of self-funded health plan assets are detailed throughout this Original Complaint.

231.    As a direct result of United's violation of 18 U.S.C. § 1962(c), Plaintiff has suffered substantial injury to its business and property within the meaning of 18 U.S.C. § 1964(c).

**COUNT V – DECLARATORY JUDGMENT PURSUANT TO
28 U.S.C. § 2201 (NON-ERISA)
(*Against United*)**

232.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

233.    This is a count for declaratory relief pursuant to 28 U.S.C. § 2201.

234.    The FFCRA and the CARES Act require health plans and issuers to cover all Covid Testing services offered by providers, regardless of whether such provider is in network or OON, and without the imposition of medical management and other requirements, and to reimburse OON providers either the cash price for Covid Testing services publicized on its website <u>or</u> to negotiate an amount less than the cash price to be paid to Plaintiff. The CARES Act directs health plans and issuers to directly reimburse OON providers for their Covid Testing services.

235.    United has engaged in unlawful and suspect conduct to circumvent its obligations to cover bona fide Covid Testing services submitted by Plaintiff on behalf of members of health plans either insured or administered by United, and has failed to reimburse Plaintiff, an OON

---

[69] 42 U.S.C. § 5122; Pursuant to 18 U.S.C. §§ 1341, 1343, if the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

provider, in accordance with the aforementioned methodology prescribed by the CARES Act.

236.    United has failed to comply with its obligations to cover Covid Testing services without the imposition of medical management and other requirements, and has failed to reimburse Plaintiff in accordance with reimbursement methodology prescribed by the CARES Act. As a result of United's conduct and institutional failures, Plaintiff has sustained and will continue to sustain damages and has been deprived of and will continue to be deprived of the compensation that Plaintiff is entitled to for providing bona fide Covid Testing services to members of health pans either insured or administered by United during this public health emergency.

237.    The existence of another potentially adequate remedy does not preclude a judgment for declaratory relief.[70]

238.    Plaintiff is entitled to supplemental relief pursuant to 28 U.S.C. § 2201, including the payment of all money that was not paid by United, both either in its capacity as insurer or an administrator to Plaintiff for providing bona fide Covid Testing as described in this Original Complaint.

### COUNT VI – UNJUST ENRICHMENT & QUANTUM MERUIT (NON-ERISA)
### (*Against United*)

239.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

240.    Plaintiff provided bona fide Covid Testing services to members of health plans that United insures and administers.

241.    By providing necessary Covid Testing services throughout the course of the COVID-19 public health emergency to United members, Plaintiff conferred a benefit upon United because Plaintiff's provision of Covid Testing services facilitated United's obligations to arrange

---

[70] *See* Federal Rules of Civil Procedure, Rule 57.

and pay for Covid Testing services for its members. Additionally, United benefited from the insurance premiums from members and the compensation from Employer Plans and other self-funded health plans to facilitate and cover Covid Testing services. To satisfy its legal obligations, United required the Covid Testing services of Plaintiff. Because of Plaintiff's Covid Testing services for United's members, Plaintiff conferred a benefit on United.

242.    United knew that Plaintiff provided bona fide Covid Testing services to United members in satisfaction of United's obligations to its members. Moreover, at all relevant times, United either virtually denied or underpaid Plaintiff for its bona fide Covid Testing services for United members in contravention of its requirements under the FFCRA and the CARES Act.

243.    United voluntarily accepted, retained, enjoyed, or continues to accept, retain, and enjoy the benefits conferred by Plaintiff, with the knowledge that Plaintiff expects to and is entitled to payment for such Covid Testing services.

244.    Despite proper demand being made on United for payment for these services, United has failed to reimburse Plaintiff for the Covid Testing services provided. United has received and retained a benefit and has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits, when said money should have been paid in a timely and appropriate manner to Plaintiff.

245.    As a result of United's unjust enrichment, Plaintiff has suffered damages. Based on the above, Plaintiff is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT VII – PROMISSORY ESTOPPEL (NON-ERISA)
### (*Against United*)

246.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

247.    United undertook conduct that conveyed to Plaintiff that coverage for COVID testing would be afforded to its members, but then arbitrarily adjudicated claims and refused to issue proper reimbursements when the claims were submitted on behalf of the members of health plans insured or administered by United.

248.    United expected, or reasonably should have expected, that Plaintiff would rely on United's compliance with the FFCRA and the CARES Act, especially given its public statements and publications emphasizing its compliance with the aforementioned laws.

249.    United's publicized statements and publications regarding its compliance with the requirements of the FFCRA and the CARES Act, its proper adjudication of Plaintiff's Covid Testing claims subject to the HRSA COVID-19 Uninsured Program, and the adjudication and full payment of Plaintiff's cash price on Covid Testing claims from time to time induced Plaintiff's reasonable reliance on the promise to pay.

250.    Plaintiff detrimentally relied on United's promises to pay by continuing to provide Covid Testing services to United members. Plaintiff's reliance on the promises caused it to suffer a definite and substantial detriment and has caused it damage.

251.    Based on the above, Plaintiff is entitled to compensatory damages, interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## COUNT IX – VIOLATION OF THE
## TEXAS PROMPT PAY ACT ("TPPA") (NON-ERISA)
### (*Against United*)

252.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

253.    With respect to the plans that United insures, United's processing of Covid Testing claims of the claims it insures is governed by the prompt payment requirements of the TPPA because the prompt payment deadlines apply to claims OON claims for emergency care.[71]

254.    The TPPA requires United to pay Plaintiff's Covid Testing claims within 30 days of the date Plaintiff electronically submits a clean claim and within 45 days of the date Plaintiff submits a non-electronic clean claim, provided that the Covid Testing claims meets the requirements of a clean claim.[72]

255.    Plaintiffs Covid Testing claims meet all the criteria for payment under the TPPA. As detailed in this Original Complaint, on the dates the Covid Testing services were provided, the United members of fully-insured health plans and the Covid Testing services were covered under the terms of the relevant United health plans. Moreover, Plaintiff was eligible for OON payments under the terms of the relevant United health plans as mandated by the FFCRA and the CARES Act.

256.    Moreover, as detailed throughout this Original Complaint, United accepted all Covid Testing claims submitted, but failed to adjudicate claims within the prescribed timeframe and/or continuously failed to adjudicate Covid Testing claims in accordance with the requirements of the FFCRA and the CARES Act.

---

[71] Texas Insurance Code §§ 843.351 and 1301.069; 28 Tex. Admin. Code § 21.2823
[72] 28 Tex. Admin. Code § 21.2807(b)

257.    Instead, as detailed throughout this Original Complaint, United engaged in unscrupulous and fraudulent conduct to avoid its obligation to reimburse Plaintiff in accordance with Section 3202(a) of the CARES Act. This unlawful conduct does not excuse United from delaying payments and/or perpetually paying the improper amount on Covid Testing claims.

258.    United's failures to timely pay the full amounts due to Plaintiff of its Covid Testing claims has resulted in overdue payment due to Plaintiff pursuant to the TPPA.

259.    By reason of the foregoing, Plaintiff is entitled to recover from United the full underpaid and unpaid amounts due to Plaintiff on all relevant Covid Testing claims, together with any and all applicable statutory interests pursuant to 28 Tex. Admin. Code § 21.2815.

## COUNT X – INJUNCTIVE RELIEF (NON-ERISA)
### (*Against United*)

260.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

261.    Currently, United is wrongfully denying payment in whole or in part for virtually all bona fide Covid Testing service claims submitted during this COVID-19 public health emergency by Plaintiff on behalf of members of health plans either insured or administered by United. In doing so, United has failed and is failing to comply with the FFCRA, the CARES Act, ERISA, the terms of the health plans, and other applicable Federal and State laws.

262.    Furthermore, as detailed throughout the course of this Original Complaint, United has engaged in unscrupulous and fraudulent conduct to circumvent its obligations to adjudicate and reimburse Plaintiff for bona fide Covid Testing services.

263.    Unless enjoined from doing so, United will continue to operate its fraudulent schemes and meritless claims and appeals processes and fail to comply with all applicable authorities to detriment of Plaintiff, members of health plans insured or administered by United,

and the self-funded health plans that United administers. A monetary judgment in this case will only compensate Plaintiff for past losses and will not stop United from continuing to engage in unscrupulous and fraudulent conduct and to embezzlement and/or convert the assets of self-funded health plans, which is necessary for Plaintiff to maintain its laboratory. Plaintiff has not practical or adequate remedy, either administratively or at law, to avoid these future losses.

264.    Plaintiff is entitled to a permanent injunction requiring United to comply with the requirements of the FFCRA and the CARES for Covid Testing claims submitted on behalf of members of plans that are insured by United, and removing United as claims administrator to the self-funded health plans United administers so that United cannot continue to summarily deny bona fide Covid Testing claims provided by Plaintiff.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in its favor against United as follows:

A.    Declaring all Defendants have breached the FFCRA and the CARES Act regarding the coverage and reimbursement of Covid Testing service claims submitted by Plaintiff on behalf of members of the aforementioned health plans, as well as awarding injunctive and declaratory relief to prevent United and the Employer Plans' continuous actions detailed herein;

B.    Declaring that Defendants have breached the FFCRA, the CARES Act, ERISA, and the terms of their health plans regarding the coverage and reimbursement of Covid Testing service claims submitted by Plaintiff on behalf of members of the aforementioned health plans, as well as awarding injunctive and declaratory relief to prevent United and the Employer Plans'

continuous actions detailed herein;

C.      Declaring that all Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedures regulations, and that "deemed exhaustion" under such regulations is effect as a result of Defendants actions and/or inactions, as well as awarding injunctive, declaratory, and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

D.      Declaring that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedures regulations, and that as a result Defendants' failures to provide to Plaintiff its requested documents and information, Plaintiff is entitled to statutory damages under Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1);

E.      Treble the damages sustained by Plaintiff as described above under 18 U.S.C. § 1962(c);

F.      Declaring that United violated its statutory obligations to process Covid Testing claims in accordance with the Section 6001 of the FFCRA and Section 3202(a) of the CARES Act.

G.      Statutory interest in prescribed by 28 Tex. Admin. Code § 21.2815;

H.      Punitive damages;

I.      Compensatory and consequential damages resulting from the injury to Plaintiff's business in the millions of dollars, as detailed throughout this Original Complaint and to be further established at trial;

J.      Awarding damages based on United's misrepresentations and misconduct regarding its fraudulent schemes and actions employed by United to damaged Plaintiff and embezzle and/or covert the assets of self-funded plans to the detriment of Plaintiff, members of plans either insured or administered by United, and the self-funded health plans (*e.g.*. Employer

Plans).

K.     Permanently enjoying United from continuing to administers claims processing for the Employer Plans and other self-funded health plans;

L.     Appointing an independent fiduciary at United's expense to re-adjudicate all of Plaintiff's Covid Testing claims initially processed by United, and to reimburse Plaintiff all amounts United, the Employer Plans, and other self-funded health plans were required to reimburse Plaintiff pursuant to the FFCRA, the CARES Act, ERISA, and the terms of the health plans.

M.     Ordering United to pay all reasonable costs and expenses of the independent fiduciary in re-adjudicating the Covid Testing claims.

N.     Awarding los profits, contractual damages, and compensatory damages in such amounts as the proofs at trial will show;

O.     Awarding exemplary damages for United's intentional and tortious conduct in such amounts as the proofs at trial will show;

P.     Awarding restitution for payments improperly withheld by United;

Q.     Declaring that United has violated the FFCRA, the CARES Act, and the terms of the health plans fully-insured by United;

R.     Awarding reasonable attorneys' fees, as provided by common law, Federal or State statute, or equity, including 18 U.S.C. § 1964(c) and 29 U.S.C. § 1132(g);

S.     Awarding costs of suit;

T.     Awarding pre-judgment and post-judgment interest as provided by common law, Federal or State statute or rule, or equity; and

U.     Awarding all other relief to which Plaintiff is entitled.

Respectfully submitted,

By: /s/ Ebad Khan
Ebadullah (Ebad) Khan
Federal Bar No. 2810999
State Bar No. 2409265
ekhan@24hourcovid.com
23330 US-59, Suite 300
Kingwood, Texas 77339
(281) 319.8306 Direct
(281) 605.6690 Facsimile

***Attorney for Plaintiff***