IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DIAGNOSTIC AFFILIATES OF | § | |
| NORTHEAST HOU, LLC d/b/a 24HOUR | § | |
| COVIDRT-PCR LABORATORY | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | C.A. No. 2:21-cv-00131 |
| v. | § | |
| | § | |
| UNITED HEALTH GROUP, INC., et al. | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT

Defendants United HealthCare Services, Inc., UnitedHealthcare Benefits of Texas, Inc.,

UnitedHealthcare of Texas, Inc., UMR, Inc., and OptumHealth Care Solutions, LLC (collectively,

"United") and the Defendant employer-sponsored health benefit plans identified on Exhibit A

attached hereto and incorporated herein (collectively, the "Employer Plans" and, together with

United, "Defendants"), pursuant to FED. R. CIV. P. 12(b)(6), file this Motion to Dismiss ("Motion")

the Original Complaint ("Complaint") [Doc. 2] filed herein by Plaintiff Diagnostic Affiliates of

Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory ("Plaintiff" or "Diagnostic

Affiliates") and state:

## I. NATURE OF THE CASE

Plaintiff filed this action seeking to recover health plan benefits from United and the

Employer Plans for COVID-19 diagnostic testing that Plaintiff claims to have performed. Plaintiff

is an out-of-network laboratory with respect to the health plans involved in this case, which are

insured or administered by United. Plaintiff acknowledges that many of the health plans at issue

are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1101, *et seq.*

("ERISA"). Plaintiff alleges that it received assignments of benefits from some of the members of health plans for whom it provided COVID-19 testing services, but that United and the Employer Plans failed to pay, or underpaid, the claims that were submitted.[1]

Plaintiff's Complaint asserts a claim for benefits pursuant to Section 502(a)(1)(B) of ERISA. In addition, Plaintiff alleges causes of action against all Defendants for: (1) violation of the Families First Coronavirus Response Act (the "FFCRA") and the Coronavirus Aid, Relief, Economic Security Act (the "CARES Act") and (2) denial of a "full and fair review" of its claims under ERISA § 503. Plaintiff also asserts claims against United only for: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) quantum meruit and unjust enrichment; (3) promissory estoppel; and (4) violation of the Texas Prompt Pay Act ("TPPA").

## II. <u>GROUNDS FOR MOTION</u>

For the reasons discussed below, the Court should dismiss the Complaint because:

1.  No private right of action exists for violations of the FFCRA and CARES Act, and Count I of the Complaint should therefore be dismissed against the Defendants.

2.  Counts II and III of the Complaint should be dismissed against the Defendants because Plaintiff has not stated a viable claim under ERISA. Nothing in the FFCRA or the CARES Act abrogates any provisions of ERISA or provides Plaintiff with standing to assert an ERISA claim for benefits under Section 502(a)(1)(B) that would not otherwise exist. Moreover, even if it had standing under ERISA, Plaintiff failed to exhaust its administrative remedies before filing suit. Nonetheless, Plaintiff's Section 502(a)(3) claim is not proper because Plaintiff's Section 502(a)(1)(B) claim, even if unsuccessful, provides adequate relief.

---

[1] Plaintiff conveniently omits that it refused to provide necessary provider demographic information in response to requests made by United on numerous occasions. Such requests would have allowed United to verify Plaintiff's credentials as a provider and the veracity of its operations. United had a contractual duty to perform this function as plan administrator on behalf of the Employer Plans and was permitted to do so under the FFCRA and the CARES Act.

3.      Plaintiff failed to allege facts sufficient to demonstrate its alleged damages were proximately caused by the alleged RICO violations and, therefore, has not stated a RICO claim, and Count IV of the Complaint should, therefore, be dismissed against United.

4.      Plaintiff cannot state a claim for quantum meruit and unjust enrichment based on an alleged indirect benefit to United from Plaintiff's provision of services to patients covered by plans insured or administered by United, and Count VI of the Complaint should therefore be dismissed against United.

5.      Plaintiff failed to state a claim for promissory estoppel because it did not plead facts demonstrating that United made a sufficiently specific and definite promise to Plaintiff that it blindly would pay COVID-19 diagnostic testing claims such that Plaintiff's purported reliance on any such alleged statements is reasonable, and Count VII of the Complaint should therefore be dismissed against United.

6.      Plaintiff is not entitled to statutory penalties under the TPPA, and Count IX of the Complaint[2] should therefore be dismissed against United.

7.      Plaintiff has failed to state any plausible claim for relief in the Complaint; therefore, it is not entitled to declaratory or injunctive relief, and Counts V and X of the Complaint should therefore be dismissed against United.

## III.   ARGUMENT & AUTHORITIES

### A.   THE LEGAL STANDARD

Under FED. R. CIV. P. 12(b)(6), a court may dismiss a pleading for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Naked assertions will not suffice, and conclusory statements unsupported by facts are not accepted as true. *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 664. The complaint must contain sufficient factual allegations that, if accepted as true, "nudge[] [the] claims across the line from

---

[2] The Complaint does not include a Count VIII.

conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim has facial plausibility only when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (*citing Twombly,* 550 U.S. at 556).

## B.  NO PRIVATE RIGHT OF ACTION EXISTS UNDER THE FFCRA AND CARES ACT

Count I of the Complaint alleges that all Defendants violated the FFCRA and the CARES Act by failing to pay Plaintiff's posted cash price for COVID-19 diagnostic testing. [Compl. ¶¶ 188-196.] The Complaint does not even attempt to identify any basis in the FFCRA or CARES Act (or otherwise) that expressly creates a private right of action or from which a private right of action can be inferred. *See Stokes v. Sw. Airlines*, 887 F.3d 199, 202 (5th Cir. 2018) ("[A]bsent 'affirmative' evidence of intent to allow private civil suits, there can be no private right of action— 'no matter how desirable that might be as a policy matter, or how compatible with the statute'") (citing *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)).

The FFCRA and the CARES Act were passed in March 2020 in response to the COVID-19 pandemic. *See* Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178; Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281. The FFCRA includes, among other things, expansions of the protections for workers affected by COVID-19, and the CARES Act focuses on providing economic support to businesses affected by COVID-19. *See* Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178; Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281.

Section 6001(a) of the FFCRA

> generally requires group health plans and health insurance issuers offering group or individual health insurance coverage . . . to provide benefits for certain items and services related to testing for the detection of SARS-CoV-2, which is the virus that causes COVID-19, or the diagnosis of COVID-19 . . . without imposing any cost-sharing requirements (including deductibles, copayments, and

coinsurance), prior authorization, or other medical management requirements.

U.S. DEP'T OF LABOR, DEP'T OF HEALTH AND HUMAN SERVICES, AND DEP'T OF TREASURY, FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation Part 44, Feb. 26, 2021, *available at* https://www.cms.gov/files/document/faqs-part-44.pdf. Section 3201 of the CARES Act amends Section 6001(a) of the FFCRA, expanding the coverage requirement to include a broader range of diagnostic services. *Id.* Section 3202(a) of the CARES Act requires group health plans and health insurance issuers to reimburse providers of diagnostic testing services either: (1) at any rate negotiated with the provider "before the public health emergency" (if one exists); (2) in an amount that equals the cash price for such service as listed by the provider on a public internet website; or (3) at a rate negotiated with the provider that is less than the provider's posted cash price. Pub. L. No. 116-136, 134 Stat. 281.

Notably, Section 6001(b) of the FFCRA and Section 3202(b) of the CARES Act empower the Secretary of Health and Human Services, the Secretary of Labor, and the Secretary of the Treasury to enforce these requirements. Pub. L. No. 116-136, 134 Stat. 281; Pub. L. No. 116-127, 134 Stat. 178. Nothing in either statute expressly creates a private cause of action to enforce Section 6001 of the FFCRA or Section 3201 of the CARES Act. *See Alexander*, 532 U.S. at 286 ("[P]rivate rights of action to enforce federal law must be created by Congress."). In fact, that Congress empowered administrative enforcement of Section 6001 of the FFCRA and Section 3201 of the CARES Act "'tends to contradict a congressional intent to create privately enforceable rights . . . The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F. Supp. 3d 421, 434 (S.D. Tex. 2020) (quoting *Alexander*, 532 U.S. at 290); *Acara v. Banks*, 470 F.3d 569,

571 (5th Cir. 2006) (specific delegation of enforcement power to administrative agency creates a "strong indication that Congress intended to preclude private enforcement").

Nor is there an implied private right of action to enforce Section 6001 of the FFCRA and Section 3201 of the CARES Act. Absent express language creating a private right of action, there is a "standard 'presumption that Congress did not intend to create a private right of action'" and "[t]he plaintiff generally 'bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute.'" *Lundeen v. Mineta*, 291 F.3d 300, 311 (5th Cir. 2002) (quoting *Resident Council of Allen Parkway Village v. United States Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993)). To determine whether Congress implicitly intended to create a private right of action, the Court must consider whether: (1) the statute creates a federal right for the plaintiff; (2) there is any evidence of legislative intent to create or deny a private remedy; (3) inferring a private remedy is consistent with the legislative scheme; and (4) the cause of action is "one traditionally relegated to state law so that implying a federal right of action would be inappropriate." *Lundeen v. Mineta*, 291 F.3d 300, 311 (5th Cir. 2002) (citing *Cort v. Ash*, 422 U.S. 66 (1975)). In other words, "the question is not simply who would benefit from the [statute] but whether Congress intended to confer federal rights upon those beneficiaries." *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F. Supp. 3d 421, 433 (S.D. Tex. 2020) (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)); *see Alexander*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.").

Section 6001 of the FFCRA and Section 3201 of the CARES Act empower federal administrative agencies to regulate group health plans, health insurance issuers, and diagnostic testing providers. Nothing in either Act expressly or implicitly creates a private right or remedy

for testing providers. *See Univs. Rsch. Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772 (1981) (declining

to imply private right of action where a statute "requires that certain stipulations be placed in

federal construction contracts for the benefit of mechanics and laborers, but . . . does not confer

rights directly on those individuals"); *see also Juan Antonio Sanchez, PC*, 494 F. Supp 3d at 434.

Indeed, courts across the country interpreting various provisions of the FFCRA and the

CARES Act have reached the same conclusion. *See, e.g.*, *Am. Video Duplicating, Inc. v. City Nat'l

Bank*, No. 2:20-CV-04036, 2020 WL 6882735, at *5 (C.D. Cal. Nov. 20, 2020) (listing cases)

("Unsurprisingly, every court to address whether the CARES Act created an implied private right

of action has held that it does not."); *see also Puckett v. U.S. Dep't of Treasury Internal Revenue

Serv.*, No. 1:21-CV-425, 2021 WL 2550995, at *2 (N.D. Ohio June 22, 2021); *Daniel T.A. Cotts

PLLC v. Am. Bank, N.A.*, No. 2:20-CV-185, 2021 WL 2196636, at *5 (S.D. Tex. Feb. 9, 2021);

*Autumn Court Operating Co., LLC v. Healthcare Ventures of Ohio*, No. 2:20-cv-4901, 2021 WL

325887, at *6 (S.D. Ohio Feb. 1, 2021); *Healthcare Ventures of Ohio, LLC v. HVO Operations

Windup LLC*, No. 20-CV-04991, 2020 WL 6688994, at *9 (S.D. Ohio Nov. 13, 2020); *Profiles,

Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 751 (D. Md. 2020); *Mescall v. U.S. Dep't of

Justice*, No. 2:20-cv-13364, 2021 WL 199277, at *2 (E.D. Mich. Jan 19, 2021); *Matava v. CTPPS,

LLC*, No. 3:20-CV-01709, 2020 WL 6784263, at *1 (D. Conn. Nov. 18, 2020); *Shehan v. U.S.

Dep't of Justice,* No. 1:20-cv-00500, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020).

Further, in context, the lack of congressional intent to create or imply a private right of

action to enforce Section 6001 of the FFCRA and Section 3201 of the CARES Act is unmistakable:

Sections 3102, 5102, and 5105 of the FFCRA expressly incorporate the private enforcement

provisions of Fair Labor Standards Act and Family and Medical Leave Act to remedy improper

denials of emergency paid employee leave. Pub. L. No. 116-127, 134 Stat. 178; *see Touche Ross*

*& Co. v. Redington*, 442 U.S. 560, 572 (1979) ("Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."). Plaintiff cannot enforce Section 6001 of the FFCRA and Section 3201 of the CARES Act, and therefore, Count I of the Complaint should be dismissed.

### C. NEITHER THE FFCRA NOR THE CARES ACT ABROGATE ANY PROVISIONS OF ERISA WITH RESPECT TO CLAIMS FOR BENEFITS

#### 1. Plaintiff does not have standing to assert an ERISA claim for benefits.

Section 502(a)(1)(B) permits a "participant" or "beneficiary" of an ERISA plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333 (5th Cir 2005); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 599 (N.D. Tex. 2014) ("Accordingly, to state a basis to recover under ERISA or for breach of an insurance policy, a medical provider must plead that the patients covered under the plan or policy assigned their rights to the provider.") (internal quotation marks omitted). Plaintiff's Complaint concedes that only *some* of the "members of plans either insured or administered by United who received Covid Testing services from Plaintiff executed an assignment of benefits," but it does not specify the particular claims or the particular Employer Plans for which it allegedly obtained assignments. [Compl. ¶ 201.] In fact, rather than pleading that it obtained proper assignments from particular members, Plaintiff baselessly contends that it has standing because

> the FFCRA and the CARES Act . . . have obviated the need for a provider
> to obtain a specific assignment of ERISA benefits from a member of a
> health plan subject to ERISA to be entitled to seek reimbursement from the

health plan for Covid Testing services, or to be entitled to bring an action
under ERISA for reimbursement and/or injunctive relief.

[Compl. ¶ 202.]

Plaintiff's argument is unavailing. Neither the FFCRA nor the CARES Act abrogates the statutory prerequisites to bring an ERISA claim for benefits, and no court has ever adopted Plaintiff's unsupported theory. Moreover, the FFCRA and the CARES Act do not incorporate Section 502(a)(1)(B) of ERISA. Had Congress intended the FFCRA and the CARES Act to amend or incorporate Section 502(a)(1)(B), it would have said so, as it did with the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201*, et seq.* Without demonstrating that Plaintiff obtained valid, enforceable assignments from each member on whose behalf it seeks payment of benefits, Plaintiff has no standing to bring an ERISA claim for benefits, and Plaintiff's ERISA claim for benefits (Count II) should be dismissed.[3]

### 2. Even if it had standing under ERISA, Plaintiff failed to exhaust its administrative remedies before filing suit.

Exhaustion of administrative remedies is a pre-requisite to an ERISA benefits claim. *Moss v. Unum Grp.*, 638 F. App'x 347, 349 (5th Cir. 2016). The Fifth Circuit has repeatedly held that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). "Exhaustion is to be excused only in the most exceptional circumstances." *Davis v. AIG Life Ins. Co.*, No. 95-60664, 1996 WL 255215, at *2 (5th Cir. Apr. 26, 1996). Plaintiff's Complaint concedes that it did not exhaust its

---

[3] Moreover, the majority (if not all) of the ERISA plans under which Plaintiff seeks payment of benefits are likely to contain valid, enforceable anti-assignment provisions. *Windmill Wellness Ranch, L.L.C. v. Meritain Health, Inc.*, No. SA-20-CV-01388-XR, 2021 WL 2635845, at *3 (W.D. Tex. June 25, 2021) ("A federal court does not have jurisdiction to hear a case when a healthcare provider lacks standing under ERISA to bring that case due to a valid anti-assignment clause.").

---

administrative remedies prior to bringing this suit but argues that (1) its administrative remedies should be "deemed exhausted" as a result of Defendants' alleged failure to adhere to the requirements set out in 29 C.F.R. § 2560.503-1 and 45 C.F.R. § 147.136, and/or (2) an appeal would have been futile. [Compl. ¶¶ 204-206.] Both arguments fail.

### a. Plaintiff is not entitled to a futility exception.

"To qualify for the futility exception to the exhaustion requirement, the claimant must show a '*certainty* of an adverse decision.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, No. 4:09-CV-2556, 2016 WL 9330500, at *3 (S.D. Tex. Sept. 28, 2016) (emphasis in original). Plaintiff bears the burden of alleging facts plausibly showing "hostility" toward it and that such hostility meant that denial of a timely instituted appeal would have been a foregone conclusion. *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). Plaintiff's failure to allege such facts is fatal to its claim of futility.

### b. Plaintiff's administrative remedies are not deemed exhausted.

With regard to Plaintiff's argument that its administrative remedies are "deemed exhausted," Plaintiff contends that the Defendants'

> internal claims and appeals processes . . . failed to comply with or strictly adhere to the minimum requirements of internal claims and appeals processes, as prescribed by 29 C.F.R. § 2560.503-1(1) and/or 45 C.F.R. §§ 147.136; therefore, the internal claims and appeals processes available under each United Plan and Employer Plan are deemed to have been exhausted . . . .

[Compl. ¶ 204.] Plaintiff further alleges that, "pursuant to 45 C.F.R. §§ 147.136(b)(2)(ii)(F)(2), b(3)(ii)(F)(2), United, in its capacity as an insurer and third-party claims administrator, failed to respond to Plaintiff's written request for a written explanation of United and the Employer Plans' patterns and practices of violations . . . within ten (10) days of Plaintiff's specific written request . . ." [Compl. ¶ 206.]

Courts in this district recognize a distinction between an assignee and an "authorized representative" who acts "on behalf of" a plan member; only the latter can submit claims and appeals "on behalf of" the plan member under the Department of Labor's regulations. *See, e.g., Outpatient Specialty Surgery Partners, Ltd. v. UnitedHealthcare Ins. Co*., No. 4:15-CV-2983, 2016 WL 3467139, at *4 (S.D. Tex. June 24, 2016). An assignment of benefits does not convert a provider into a statutory beneficiary or participant. *Tenet Healthcare Ltd. v. UniCare Health Plans of Tex., Inc*., No. CIV. A. H-07-3534, 2008 WL 5101558, at *7 (S.D. Tex. Nov. 26, 2008); *see* U.S. DEP'T OF LABOR, Benefit Claims Procedure Regulation FAQs, *available at* https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation ("An assignment of benefits by a claimant is generally limited to assignment of the claimant's right to receive a benefit payment under the terms of the plan [and] not a grant of authority to act on a claimant's behalf in pursuing and appealing a benefit determination under a plan."). Statutory "beneficiaries" and "participants" are entitled to ERISA-style notices of adverse benefits decisions, but there is no regulatory provision extending that right to providers—with or without an assignment of benefits—or to authorized representatives that submit claims and appeals on behalf of plan members. Rather, 29 C.F.R. § 503-1(a) defines "claimants" as used in the regulation as ERISA "participants" and "beneficiaries," and 29 C.F.R. § 503-1(g) requires that notices of adverse benefit determinations be provided to "claimants," (*i.e.,* participants and beneficiaries), but that does not include a claimant's authorized representative.[4] Plaintiff, even

---

[4] *Compare* 29 C.F.R. § 2560.503-1(a) (defining "claimants," as used in the regulation, as ERISA "participants" and "beneficiaries") *and* § 2560.503-1(g) (mandating that notices of adverse benefit determinations "provide a *claimant* with" notification of certain information regarding the decision, but with no mention of notice to a claimant's authorized representative or medical provider) *with* § 2560.503-1(b)(4) (requiring plans to allow "an authorized representative of a claimant" to act "on behalf of such claimant"). There is no regulation requiring that notices be sent to purported "authorized representatives" like Plaintiff.

presuming that it is an assignee of any claimants, is not entitled to rely on a deemed exhaustion argument based on the Defendants' alleged failure to comply with the specifications in 29 C.F.R. § 2650.503-1. *See* 29 C.F.R. § 2650.503-1(l) (explaining "a *claimant* shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any remedies under section 502(a) of ERISA on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."); *cf. Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 859 (S.D. Tex. 2016) (claimant's remedy for violation of duty to furnish information to a participant or beneficiary "is personal to the requesting participant or beneficiary, and [provider] is not a party enumerated to bring suit under this provision."); *Mem'l Hermann Health Sys. v. Sw. LTC, Ltd.*, No. 4:14-CV-02572, 2016 WL 3526137, at *8 (S.D. Tex. June 7, 2016), *adopted*, No. 4:14-CV-2572, 2016 WL 3552281 (S.D. Tex. June 23, 2016), *aff'd*, 683 Fed. App'x 274 (5th Cir. 2017) (plan administrator is not required to furnish provider who failed to provide proof of its status as an assignee with copies of plan documents). Accordingly, Count II of the Complaint should be dismissed for this reason as well.

**D.  NO CLAIM FOR ALLEGED DENIAL OF FULL AND FAIR REVIEW**

In Count III of the Complaint, Plaintiff alleges that United and the Employer Plans denied it a "full and fair review" of the claims Plaintiff submitted as required under 29 U.S.C. § 1133, and that, as a result, Plaintiff is entitled to declaratory and injunctive relief under 29 U.S.C. § 1132(a)(3). [Compl. ¶¶ 223-24.] Section 1132(a)(3) of ERISA allows a "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." But a claim for equitable relief under 29 U.S.C. § 1132(a)(3) cannot be asserted in a case, like here, where the

plaintiff can assert a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). *See Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (claim for relief under section 1132(a)(3) was not available because plaintiff had "adequate relief available for the alleged improper denial of benefits" through his claim directly under section 1132(a)(1)); *see also Rhorer v. Raytheon Eng'rs and Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by Cigna Corp. v. Amara*, 563 U.S. 421 (2011).

Even if Plaintiff does not prevail on its Section 1132(a)(1) claim, that does not make its claim under Section 1132(a)(3) viable. *Tolson*, 141 F. 3d 610. Moreover, a claimant may raise the issue of whether the plan administrator complied with ERISA's procedural regulations under Section 1132(a)(1), making dismissal of its Section 1132(a)(3) appropriate. *Manuel v. Turner Indus. Group, L.L.C.*, 905 F.3d 859, 867 (5th Cir. 2018). Accordingly, Count III of the Complaint should be dismissed.

## E. PLAINTIFF FAILS TO STATE A RICO CLAIM

Count IV of the Complaint for RICO violations also fails. "RICO makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020). To show a violation of § 1962(c), "a plaintiff must adequately plead that the defendant engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Further, in order to recover damages, a civil RICO plaintiff is required to show that the alleged predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).

Plaintiff asserts a RICO claim under section 1962(c) against United, alleging that United committed multiple acts of mail or wire fraud in connection with the nonpayment or underpayment of the benefit claims it submitted. As an initial matter, Plaintiff's allegations regarding the alleged pattern of activity are really nothing more than a recitation of a history of United's handling of claims that Plaintiff contends should have been, but were not paid. More importantly, however, Plaintiff cannot "plausibly allege that the RICO violation proximately caused [its] injuries." *Molina-Aranda*, 983 F.3d at 784. In this regard, the essence of Plaintiff's alleged injury is that it did not get paid, whether in whole or in part, for COVID-19 testing services it provided. Although the Complaint contains various allegations about United's communications with Plaintiff or plan members regarding the benefit claims submitted with respect to Plaintiff's services, which communications Plaintiff contends were false or misleading, there are no factual allegations that tie those alleged instances of mail or wire fraud to Plaintiff's alleged damages. Plaintiff's RICO claim should therefore be dismissed. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (competitor's alleged defrauding of state tax authority that allowed it to offer lower prices was not the proximate cause of plaintiff's lost sales for purposes of RICO claim); *Shannon v. Ham*, 639 F. App'x 1001, 1003 (5th Cir. 2016) (plaintiff who alleged pattern of mail and wire fraud in connection with insurance agents licensing failed to plausibly allege a direct relationship between the fraud and mishandling of plaintiff's insurance claims).

## F.   PLAINTIFF FAILS TO STATE A CLAIM FOR QUANTUM MERUIT AND UNJUST ENRICHMENT

In Count VI of the Complaint, Plaintiff seeks to recover the allegedly unpaid or underpaid plan benefits from United based on claims of quantum meruit and unjust enrichment. These claims also fail as a matter of law.

"To recover in quantum meruit, the plaintiff must prove (1) that valuable services were rendered or materials were furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged." *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "Recovery in quantum meruit will be had when nonpayment for the services rendered or materials furnished would result in an unjust enrichment to the party benefitted by the work." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 741 (Tex. 2018).

Plaintiff's quantum meruit and unjust enrichment claims fail because Plaintiff does not plausibly allege, because it cannot, that it rendered services for the benefit of United, as opposed to the patient beneficiaries of the health plans. *See Texas Med. Res., LLP v. Molina Healthcare of Texas, Inc.,* 620 S.W.3d 458, 470 (Tex. App.—Dallas 2021, pet. filed) ("Where, as here, a plaintiff renders services to an insured, courts applying Texas law have held the plaintiff does not have a quantum meruit claim against the insurer because any services rendered only indirectly benefit the insurer, if they benefit the insurer at all.")*; ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927, 935 (S.D. Tex. 2021) (provider cannot state a claim for quantum meruit against health plan because services were provided to plan members, not the plan administrator or insurer); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) ("Even if [the insurer] received some benefit as a result of [a provider] providing medical services to its insureds, a proposition the court finds dubious, [the provider's] services were rendered to and for its patients, not [the insurer].") (footnote omitted). Count VI of the Complaint should, therefore, be dismissed.

Plaintiff's quantum meruit claim is also doomed by the existence of the written plans themselves, which establish the sole basis for the payment of claims submitted for services rendered to members of those plans. It is well established that no claim for quantum meruit will lie when there is an express contract covering the subject matter. *Pepi Corp.*, 254 S.W.3d at 462. This rule is applicable here, even though the contract in question is between the plans and their members, not Plaintiff. *ACS Primary Care*, 514 F. Supp. 3d at 935 (express contract bar precluded quantum meruit claim because "healthcare plans are express contracts between the Defendants and their insureds which bear directly on Plaintiffs' claims"). The terms of the plans define what reimbursement United agreed to provide to members when they obtain services from out-of-network providers such as Plaintiff. For this reason as well, the quantum meruit claim should be dismissed.

## G.  PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL

Plaintiff's assertion in Count VII of promissory estoppel fails to state a plausible claim for relief based on the facts pleaded in the Complaint. The elements of promissory estoppel are: (1) a promise to the plaintiff; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment. *Garcia v. Lucero*, 366 S.W.3d 275, 280 (Tex. App.— El Paso 2012, no pet.); *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 761 (Tex. App.—Fort Worth 2012, pet. denied). "A promise, acceptance of which will form a contract, is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) (internal quotation marks omitted).

Plaintiff contends that "United's publicized statements and publications regarding its compliance with the requirements of the FFCRA and the CARES Act, its proper adjudication of Plaintiff's Covid Testing claims subject to the HRSA COVID-19 Uninsured Program, and the

adjudication and full payment of Plaintiff's cash price on Covid Testing claims from time-to-time induced Plaintiff's reasonable reliance on the promise to pay." [Comp. ¶ 249.] None of these allegations show that United made *a sufficiently specific and definite promise to the Plaintiff* that it would pay COVID testing claims such that Plaintiff's purported reliance on any statements would be reasonable. *Walker v. Walker*, 14-18-00569-CV, 2020 WL 1951631, at *3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.) ("To support a finding of promissory estoppel, the asserted 'promise' must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action.).

Moreover, nothing in the FFCRA or the CARES Act requires United to blindly pay claims for COVID diagnostic testing. Indeed, regulatory guidance confirms that neither the FFCRA nor the CARES Act restricts a payor's ability to ensure COVID diagnostic testing claims are proper. *See, e.g.*, U.S. Dep't of Labor, Dep't of Health and Human Services, and Dep't of Treasury, FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation Part 44, Feb. 26, 2021, *available at* https://www.cms.gov/files/document/faqs-part-44.pdf ("To the extent not inconsistent with the FFCRA's prohibition on medical management, plans and issuers may continue to employ programs designed to detect and address fraud and abuse."). As a result, Count VII of the Complaint fails to state a plausible claim for relief and should be dismissed.

## H.  PLAINTIFF IS NOT ENTITLED TO STATUTORY PENALTIES UNDER THE TEXAS PROMPT PAY ACT

With respect to Count IX, Plaintiff admits that it is an out-of-network provider with no direct contractual relationship with any of the Defendants. [Compl. ¶ 1.] This admission is fatal to its claim for violations of the Texas Insurance Code. In *Christus v. Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651 (Tex. 2012), the Texas Supreme Court held that a claim for violation of the

HMO prompt payment statute requires contractual privity between a provider and an HMO. *Id.* at 654. The Texas Supreme Court reasoned that the plain language of the statute requires only that, within the statutory time frame, an HMO pay a claim it has determined is payable "in accordance with the contract between the physician or provider and the [HMO]." TEX. INS. CODE § 843.338. Thus, as the court explained:

> The [HMO] Prompt Payment Statute requires HMOs to honor their own contracts with providers, but here, there are no such contracts. These sophisticated providers opted for a different contractual model, and the resulting lack of privity between the Hospitals and Aetna precludes the Hospitals' suit.

*Id.* at 656. The language in Section 1301.103 of the Texas Insurance Code, which is applicable to preferred provider benefit plans is identical. TEX. INS. CODE § 1301.103(1) ("[I]f the insurer determines the entire claim is payable, pay the total amount of the claim in accordance with the contract between the preferred provider and the insurer . . . .").

To avoid this result, Plaintiff attempts to rely on Sections 843.351 and 1301.069 of the Texas Insurance Code , which makes Sections 843.338 and 1301.103 applicable to out-of-network providers who provide "(A) care related to an emergency or its attendant episode of care as required by state or federal law; or (B) specialty or other health care services at the request of [the payor] or a physician or provider who is included in the health maintenance organization delivery network because the services are not reasonably available within the network." TEX. INS. CODE §§ 843.351, 1301.069. In that regard, the Complaint summarily states "[w]ith respect to the plans that United insures, United's processing of Covid Testing claims . . . is governed by the prompt payment requirements of the TPPA because the prompt payment deadlines apply to . . . [out-of-network] claims for emergency care." [Compl. ¶ 253.]

Even assuming that Plaintiff's services qualified as "care related to an emergency or its attendant episode of care," which United denies, "the penalties under the prompt payment statute

are not available to out-of-network providers." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458, 469 (Tex. App.—Dallas 2021, pet. filed). This is because the TPPA "provides for penalties based on the billed charges, as submitted on the claim, and the contracted rate." *Id.* Out-of-network providers do not have contracted rates, and thus there is no basis for statutory penalties. *Id.* (citing Op. Tex. Att'y Gen. No. KP-0250 (2019) (out-of-network physicians do not have a right to penalties under the prompt payment statute)). Accordingly, Plaintiff is not entitled to any statutory penalty, and Plaintiff's TPPA claim should be dismissed. *Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Tex.*, No. SA-19-CV-01211-OLG, 2020 WL 7017739, at *13 (W.D. Tex. Apr. 22, 2020) (dismissing TPPA claims asserted by out-of-network provider where provider did not sufficiently plead facts demonstrating it provided "emergency care" and because provider's request for penalties under the TPPA was improper).

## I. DECLARATORY AND INJUNCTIVE RELIEF ARE INAPPROPRIATE

For the reasons set forth herein, Plaintiff has failed to set forth any plausible claim for relief in its Complaint. As a result, it is not entitled to declaratory relief. *Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, No. 5:17-CV-1016-DAE, 2018 WL 2222854, at *10 (W.D. Tex. Apr. 20, 2018) ("In order for a court to grant declaratory relief, there must be a 'substantial and continuing controversy between two adverse parties' and 'a substantial likelihood that [the plaintiff] will suffer injury in the future.'"). Even if Plaintiff had stated a plausible claim for relief, its declaratory judgment action should nonetheless be dismissed because the issues between the parties would be resolved as part of the substantive claims in the lawsuit. *See Am. Equip. Co., Inc. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *3 (S.D. Tex. July 14, 2014) ("Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit."). Similarly, "[t]o obtain injunctive relief, a plaintiff must demonstrate, among other things, a likelihood of success

on the merits of his claim." *Samudio v. LoanCare, LLC*, No. 5:19-CV-1334-DAE, 2020 WL 8184064, at *3 (W.D. Tex. Apr. 2, 2020). Plaintiff has not pleaded any viable cause of action and, therefore, has not demonstrated a likelihood of success on the merits. As a result, Counts V and X of the Complaint should be dismissed.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court grant this Motion and dismiss the claims described above with prejudice, and grant such other and further relief as may be necessary.

Dated: September 24, 2021

By: */s/ Don Colleluori w/ permission*
    Andrew G. Jubinsky
    *Attorney in Charge*
    Texas Bar No. 11043000
    S.D. Tex. No. 8603
    andy.jubinsky@figdav.com
    Don Colleluori
    Texas Bar No. 04581950
    S.D. Tex. No. 8598
    don.colleluori@figdav.com
    Amber D. Reece
    Texas Bar No. 24079892
    S.D. Tex. No. 2695252
    amber.reece@figdav.com

    **FIGARI + DAVENPORT, LLP**
    901 Main Street, Suite 3400
    Dallas, Texas 75202
    T: (214) 939-2000
    F: (214) 939-2090

    **ATTORNEYS FOR DEFENDANTS**
    **UNITED AND THE EMPLOYER PLANS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2021, this document was served, via email, through the Court's electronic filing system on all attorneys deemed to accept electronic service.

*/s/ Don Colleluori*
Don Colleluori