IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DIAGNOSTIC AFFILIATES OF | § | |
| NORTHEAST HOU, LLC D/B/A 24 | § | |
| HOUR COVID RT-PCR LABORATORY | § | |
| | § | |
| *Plaintiff*, | § | C.A. No. 2:21-cv-00131 |
| | § | |
| v. | § | |
| | § | |
| UNITED HEALTH GROUP, INC., ET AL | § | |
| | § | |
| *Defendants.* | | |

### *OPPOSED MOTION FOR DISQUALIFICATION OF COUNSEL FIGARI + DAVENPORT, LLP*

Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory ("Plaintiff" or "24 Hour Covid") respectfully submits this Motion for Disqualification of Counsel – Figari + Davenport, LLP ("Figari") – for Defendants: (i) United[1] and the Employer Plans;[2] and (ii) UnitedHealth Group Incorporated ("UHG"). For purposes of this Motion, United and UHG shall be collectively referred to as "United".

## BACKGROUND

Plaintiff is a CLIA certified high complexity laboratory that has requested emergency use authorization under Section 564 of the Federal Food, Drug, and Cosmetic Act; therefore, has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services.

---

[1] *See* Defendants' Motion to Dismiss Plaintiff's Complaint and Brief in Support [Doc. 67]. "United" is defined as United HealthCare Services, Inc., UnitedHealthcare Benefits of Texas, Inc., UnitedHealthcare of Texas, Inc., UMR, Inc., and OptumHealth Care Solutions, LLC.

[2] *See* Defendants' Motion to Dismiss Plaintiff's Complaint and Brief in Support [Doc. 67]. The "Employer Plans" is defined as the Defendant employer-sponsored health benefit plans identified on Exhibit A of Defendants' Motion to Dismiss Plaintiff's Complaint and Brief in Support.

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
1 | P a g e

At the height of the pandemic Plaintiff operated seven specimen collection sites located across the States of Texas and Louisiana and partnered with employers and independent school districts across Texas to render Covid Testing services to employees, teachers, students, and other staff members.

United provides health insurance and/or benefits to members of United Plans pursuant to a variety of health benefit plans and policies of insurance, including employer-sponsored benefit plans and individual health benefit plans. United also serves in the trusted role of third-party claims administrator for self-funded health plans, including the Employer Plans.

Plaintiff filed its Original Complaint on June 29, 2021, and a brief summary of the accusations against United and/or the Employer Plans are as follows:

1. United and the Employer Plans have generally failed to comply with the requirements of Sections 6001 of the FFCRA and Section 3202(a) of the CARES Act;

2. United's institution of an Improper Record Request Scheme whereby United overwhelms OON providers, like Plaintiff, with improper, irrelevant, and burdensome medical record requests for the sole purpose of denying as many claims for bona fide Covid Testing services submitted by Plaintiff as possible;

3. United's arbitrary and inconsistent review of requested records supporting the rendering of Covid Testing services;

4. United and the Employer Plans' failure to properly respond and/or engage Plaintiff on its concerns regarding the Improper Record Request Scheme and United's "investigation" into Plaintiff's operations;

5. United's inconsistent adjudication of Covid Testing claims;

6. United's meritless and futile internal administrative appeals process;

7. United's misrepresentations of its obligations to comply with the FFCRA and the CARES Act to Plaintiff, member of health plans insured or administered by United, and to the Employer Plans and other self-funded health plans it administers; and

8. United's pattern of racketeering activity and its multiple, repeated, and continuous use of the mails and wires in furtherance of the Improper Record Request Scheme,

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
2 | P a g e

meritless claims and appeals processes, its disinformation campaign in violation of 18 U.S.C. §§ 1341 and 1343, and embezzlement and/or conversion of self-funded plans assets through its CRS Benchmark Program in violation 18 U.S.C. § 664.

The Employer Plans, through their silence and inaction, are dually liable for United's violations of the FFCRA, the CARES Act, and ERISA pursuant to 29 U.S.C. § 1105(a).

Plaintiff has attempted to resolve these disputes directly with self-funded health plans administered by United, including many of the Employer Plans, but has been prevented from moving forward on individual resolutions after the Employer Plan retained Figari as it pertains to this matter. As shown below, for self-funded health plans that have chosen independent counsel that is separate from the influences of Figari and United, the self-funded health plan have: (i) conducted their own independent investigations; (ii) concluded that their members' claims were not adjudicated in accordance with the FFCRA and the CARES Act; and (iii) have become materially and directly adverse towards United.

Plaintiff wrote to Figari on October 6, 2021, affording it an opportunity to recuse itself from the joint representation of United and the Employer Plans for the same reasons as set forth in this Motion, but Figari declined Plaintiff's request.[3] Figari knew or should have known that: (i) conflicts of interests exist in its joint representation of United and the Employer Plans; (ii) that these conflicts create an impermissible conflict that would bar its joint representation, and/or (iii) it had the professional and ethical obligations to remain impartial and/or to simply represent United. United has been a loyal and trusted client of Figari's for nearly two decades, and any reasonable attorney would come to the same conclusion that Figari can never provide the same level of loyalty to Employer Plans in this action than it has and will to continue to provide to United

---

[3] *See* Exhibit [P-1.A] (24 Hour Covid's Letter to Figari Requesting Recusal from Joint Representation dated October 6, 2021) and See Exhibit [P-1.B] (Figari's Response).

especially given the fact that any liability found against United through an independent investigation and/or through litigation would result in actionable claims against United by the Employer Plans and/or members of the Employers Plans.

## LEGAL STANDARD

Although Plaintiff is bringing this motion as a third-party to the relationship between United, the Employer Plans, and their Counsel, the Court has authority to review this conflict and disqualify opposing counsel pursuant to the narrow exception established by the United States Fifth Circuit of Appeals in *In re Yarn*. That exception applies when the conflicts are so "manifest and glaring" and "open and obvious" that they "confront the court with a plain duty to act."[4] Opposing counsel has standing to seek disqualification, if a conflict which violates the rules exists and is sufficiently severe to "call in question the fair or efficient administration of justice."[5]

A "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it," however it should not impose the sanction of disqualification "cavalierly."[6] Indeed "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration."[7] The Court must consider "all of the facts particular to [the] case … in the context of the relevant

---

[4] *In re Yarn Processing Patient Validity Litigation*, 530 F. 2d 83, 88-89 (5th Cir. 1976); *see also Nagle v. Gusman*, 2015 WL 1525827, pg. 3 (E.D. La. April 2, 2015).

[5] *In re Robinson*, 90 S.W.3d 921, 925 (Tex. App. 2002); Disciplinary R. Prof'l Conduct 1.06, cmt. 17; *Zarco Supply Co. v. Bonnell*, 658 So.2d 151, 154 (Fla.Dist.Ct.App.1995) (conferring on Zarco standing to seek disqualification of opposing counsel because conflict "clearly calls into question 'the fair or efficient administration of justice' "); see *Kenn Air Corp. v. Gainesville–Alachua County Regional Airport Auth.*, 593 So.2d 1219, 1222 (Fla.Dist.Ct.App.1992) (allowing someone other than former client to move for disqualification in instances involving conflicts of interest in simultaneous representations); *Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221 (Del.1990) (concluding that non-client litigant may move to disqualify opposing counsel, but must prove by clear and convincing evidence that conflict exists and that it will prejudice fairness of proceedings).

[6] *See Nagle*, 2015 WL 1525827 at 4 (citing *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299-300 (5th Cir. 2009)).

[7] *Id.*

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's Opposed Motion for Disqualification of Figari + Davenport LLP*

4 | P a g e

critical criteria and with meticulous deference to the litigant's rights."[8] Disqualification motions are governed by "state and national ethical standards adopted by the court."[9] "The local rules promulgated by the local court itself are the most immediate source of guidance for a district court."[10] Nonetheless, because "[m]otions to disqualify are substantive motions," they are decided under federal law."[11] Thus, also relevant are "the ethical rules announced by the national profession, the public interest, and the litigant's rights."[12]

A federal district court in Texas must consider its local rules, the Texas Disciplinary Rules of Professional Conduct, and the ethical rules announced by the national profession. [13] The American Bar Association's Model Rules of Professional Conduct and Model Code of Professional Responsibility are "'the national standards utilized by [the Fifth Circuit] in ruling on disqualification motions.'"[14] This case implicates both the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules") and the American Bar Association's Model Rules of Professional Conduct (the "Model Rules") governing an attorney's duty to his or her clients. The rules provide as follows:

Texas Rule 1.06 (Conflict of Interest: General Rule)
…
(b) In other and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

> (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

---

[8] *Id.*
[9] *F.D.I.C v. U.S. Fore Ins. Co.*, 50 F. 3d 1304, 1311-12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.* 972 F.2d. 605, 610 (5th Cir. 1992).
[10] *Id.* at 1312.
[11] *Id.*
[12] *Id.*
[13] *Stuebing Automatic Mach. Co. v. Gavronsky*, No. 1:17-CV-127, 2017 WL 7596916, at *1 (S.D. Tex. Sept. 27, 2017) (citing *F.D.I.C.* at 1312 (5th Cir. 1995).
[14] *Id.* (citing *F.D.I.C.* at 1312 (5th Cir. 1995) (quoting American Airlines, 972 F.2d at 610).

(2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer may represent a client in the circumstances described in (b) if:

(1) the lawyer reasonably believes the representation of each client will not be materially affected; and

(2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any, …

(e) If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these rules.

<u>Model Rule 1.7 (Conflict of Interest: Current Clients)</u>

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Model Rules 1.8 (Current Client: Specific Rules)

(g)  A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

Comments to ethical rules may be used as guides to the application.[15]

## **LEGAL ARGUMENT**

"Virtually all difficult ethical problems arise from apparent conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interests."[16] Figari should be disqualified from the representation of United and the Employer Plans for the following reasons: (i) Figari has owed a longstanding duty of loyalty to  United as United has been and remains an institutional client of Figari; (ii) an impermissible conflicts exists in this joint representation as the interests of United and the Employer Plans are directly adverse to one another; (iii) Figari has not fully disclosed all past, present, and potential conflicts to Employer Plans, therefore, Employer Plans have not provided their informed consent to the representation. Additionally, case law, advisory opinions issued by the State Bar of Texas and the American Bar Association, public policy and public perception favor this Motion.

A.    **FIGARI'S LOYALTIES LIE WITH UNITED AND NOT THE EMPLOYER PLANS**

The Fifth Circuit in *Beets v. Scott* analyzed loyalty in cases of multiple clients and provides the following statements:

---

[15] *See, e.g. Unauthorized Practice of Law Comm. V. Am. Home Assurance Co.,* 261 S.W. 3d 24, 35 (Tex. 2008) (utilizing comments to interpret the Texas Rules).
[16] Disciplinary R. Prof'l Conduct Preamble, No. 7.

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
7 | P a g e

Founding constitutional doctrine on the lawyer's "duty of loyalty" is an enterprise set in shifting sand. The term "duty of loyalty," narrowly defined, refers to an attorney's responsibility to place his client's interest ahead of his own interest or, in the case of multiple representation, not to sacrifice one client's interest for the other's. *See, e.g.*, ABA Annotated Model Rules of Professional Conduct, Rule 1.7 cmt. (1992) ... More troublesome, the boundaries of the duty of loyalty are elastic; they potentially subsume or overlap a number of other ethical responsibilities to the client ....

When multiple representation exists, the source and consequences of the ethical problem are straightforward: "counsel represents two clients with competing interests and is torn between two duties. Counsel can properly turn in no direction. He must fail one or do nothing and fail both." *Beets v. Collins*, 986 F.2d at 1492, (Higginbotham, J., concurring). "An attorney cannot properly serve two masters." *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir.1993) …

But only in the multiple representation context is the duty of loyalty so plain. Only then is the risk of harm high enough to employ a near-*per se* rule of prejudice. While loyalty may be implicated in other judgments a lawyer makes, in no other category of conflicts is the risk of prejudice so certain as to justify an automatic presumption. *See Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1719.[17]

The commentary for Texas Rule 1.06 and Model Rule 1.7 also provides insight as to when a conflict of interest presents itself because of a lack of loyalty for lawyer/firm exists when representing multiple parties in a single action:

- <u>Texas Rule 1.06, Comment 1</u>: Loyalty is an essential element in the lawyer's relationship to a client. … Under this Rule, any conflict that prevents a particular lawyer from undertaking or continuing a representation of a client also prevents any other lawyer who is or becomes a member of or an associate with that lawyer's firm from doing so.

- <u>Texas Rule 1.06, Comment 4</u>: Loyalty to a client is impaired not only by the representation of opposing parties in situations within paragraphs (a) and (b)(1) but *also in any situation when a lawyer may not be able to consider, recommend or carry out an appropriate course of action for one client because of the lawyer's own interests or responsibilities to others* [emphasis added]. The conflict in effect forecloses alternatives that would otherwise be available to the client … whether it will *materially and adversely affect the lawyer's independent professional judgment in considering alternatives or foreclose*

---

[17] *Beets v. Scott*, 65 F.3d 1258, 1269-1721 (5th Cir. 1995); *see also Cuyler v. Sullivan,* 446 U.S. 335, 349, 100 S. Ct. 1708, 1719, 64 L. Ed. 2d 333 (1980).

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
8 | P a g e

*courses of action that reasonably should be pursued on behalf of the client* [emphasis added].

- <u>Texas Rule 1.06, Comment 5</u>: The lawyer's own interests should not be permitted to have adverse effect on representation of a client, even where paragraph (b)(2) is not violated … If the probity of a lawyer's own conduct in a transaction is in question, it may be difficult for the lawyer to give a client detached advice.

- <u>Texas Rule 1.06, Comment 13 and Model Rule 1.7, Comment 26</u>: Relevant factors in determining whether there is potential for adverse effect include the *duration and intimacy of the lawyer's relationship with the client* or clients involved, the functions being performed by the lawyer, the *likelihood that actual conflict will arise and the likely prejudice* to the client from the conflict if it does arise. *The question is often one of proximity and degree* [emphasis added].

- <u>Model Rule 1.7, Comment 1</u>: Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests.

- <u>Model Rule 1.7, Comment 8</u>: Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests … The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

- <u>Model Rule 1.7, Comment 10</u>: The lawyer's own interests should not be permitted to have an adverse effect on representation of a client … In addition, a lawyer may not allow related business interests to affect representation…

United has been an institutional client of Figari at least since 2008, and has represented United not less than 87 times over that same period of time.[18] This fact is probative evidence as to the duration and intimacy of Figari's relationship with United and whether the longstanding

---

[18] *See* Exhibit [P-2] (Supporting Evidence of the Number of Cases Figari has Represented United in Civil Actions).

relationship will materially and adversely affect the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the Employer Plans.[19] Figari has an interest in protecting this longstanding client over the interests of the Employer Plans despite the fact that a conflict of interest existed between United and the Employer Plans even prior to the filing of this lawsuit.

By way of example, the Williams Companies, Inc. (the "Williams Companies") independently investigated whether United adjudicated its Covid Testing claims in compliance with Families First Coronavius Response Act, as amended (the "FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") and found that United "failed to consistently reimburse 24 Hour Covid the cash price for such Covid diagnostic tests as listed by 24 Hour Covid."[20] The Williams Companies has also instructed United to process all Covid Testing claims in accordance with the settlement agreement that was entered into between the Williams Companies and Plaintiff and the CARES Act moving forward.[21] The Williams Companies independently came to this conclusion. This statement from the Williams Companies is a prime example of how the proximity of the relationship between Figari and United has foreclosed Figari's ability to independently review the facts and laws relevant to this lawsuit and advise the Employer Plans as to the best course of action to resolve the underlying issues raised in

---

[19] *See IBM Corp. v. Levin,* 579 F.2d 271, 281 (3d Cir.1978) (even though law firm worked on a fee-for-service basis rather than pursuant to a retainer, and had no assignment on hand when the new suit was filed, the "pattern of repeated retainers supports the finding of a continuous relationship" for purpose of application of conflicts rules.); *see also Fiandaca v. Cunningham,* 827 F.2d 825, 829 (1st Cir.1987), where the First Circuit held that, under New Hampshire Rule 1.7 and the Comment thereto (which are based on Model Rule 1.7 and Comment), a law firm has an ethical duty to prevent its loyalties to other clients from coloring its representation of the plaintiffs in this action and from infringing upon the exercise of its professional judgment and responsibility. Moreover, in such a situation it would seem clear that the law firm will not be able to provide the clients with the "competent representation" required by Rule 1.1.
[20] *See* Exhibit [P-3] (The Williams Company Statement to Plaintiff regarding United's Compliance with the FFCRA and the CARES Act).
[21] *Supra* Footnote Exhibit [P-3].

the Original Complaint.[22] In an ethical opinion issued by the State Bar of Texas regarding an attorneys obligation to inform its insured of his rights against his insurance company, its committee writes, "[t]he interests of the insurance company and of the assured are said to be conflicting, especially with respect to the matter of settlement, and hence it is contended that it would be unethical for said attorney not to make 'full disclosure of the facts' and [that] would include an explanation…"[23]

Loyalty and independent judgment are essential elements in the lawyer's relationship to a client,[24] therefore, this joint representation poses a significant risk that Figari's ability to consider, recommend or carry out an appropriate course of action for the Employer Plans as the most prudent courses of action will be materially limited as a result of the Figari's other responsibilities, interests, and loyalties to its anchor client, United. As the Court puts in *Estates Theatres v. Columbia Pictures Industries*, an attorney should "not be permitted to put himself in a position where, even unconsciously, he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another."[25]

### B. Adversity between United and the Employer Plans Creates Material Limitations for the Joint Representation by Figari

The commentary for Texas Rule 1.06 and Model Rule 1.7 provides insight as to when a conflict of interest may present itself because of the materials limitations that already exist and/or arise from the joint representation of parties:

- <u>Texas Rule 1.06, Comment 2</u>: A fundamental principle recognized by paragraph (a) is that a lawyer may not represent opposing parties in litigation. The term "opposing parties" as used in this Rule contemplates a situation where

---

[22] *See* [Doc. No.2] Plaintiff's Original Complaint and Jury Demand.
[23] State Bar of Texas, Professional Ethics Committee, Opinion 156 (Conflicts of Interest – Advising on the Merits of a Client's Cause).
[24] *See* Tex. Disciplinary R. Prof. Conduct, Rule 1.06, Comment 1; *See also* Model Rule 1.7, Comment 1
[25] *Estates Theartes v. Columbia Pictures*, 345 F. Supp. 93, 99 (S.D.N.Y. 1972).

a judgment favorable to one of the parties will directly impact unfavorably upon the other party…

- <u>Texas Rule 1.06, Comment 3</u>: Simultaneous representation of parties whose interests in litigation are not actually directly adverse but where the potential for conflict exists, such as co-plaintiffs or co-defendants, is governed by paragraph (b). *An impermissible conflict may exist or develop by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question* [emphasis added]. Such conflicts can arise in criminal cases as well as civil…

- <u>Texas Rule 1.06, Comment 6</u>: Within the meaning of Rule 1.06(b), the representation of one client is "directly adverse" to the representation of another client if the lawyer's independent judgment on behalf of a client or the lawyer's ability or willingness to consider, recommend or carry out a course of action will be or is reasonably likely to be adversely affected by the lawyer's representation of, or responsibilities to, the other client. The dual representation also is directly adverse if the lawyer reasonably appears to be called upon to espouse adverse positions in the same matter or a related matter.

- <u>Model Rule 1.7, Comment 17</u>: Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding…

- <u>Model Rule 1.7, Comment 23</u>: …A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil…

- <u>Model Rule 1.7, Comment 29</u>: In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. *In some situations, the risk of failure is so great that multiple representation is plainly impossible* [emphasis added]. For example, *a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated* [emphasis added]. Moreover, because the lawyer is required to

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
12 | P a g e

be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good.

- <u>Model Rule 1.7, Comment 30</u>: A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.

- <u>Model Rule 1.7, Comment 31</u>: The lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other.

In *Johnson v. Clark Gin*, when applying Model Rule 1.7 the Court first considered whether there was either direct adversity between two or more jointly represented parties or a significant risk of material limitation on the counsel's advocacy due to counsel's relationship with multiple clients.[26] Though this Court determined that no direct adversity exists between the jointly represented parties, it does acknowledge that the representation does involve a material limitation conflict of interest under Model Rule 1.7(a)(2).[27] It goes on to explain that that a concurrent conflict of interest exists where there is a significant risk that the representation of one or more clients will be "materially limited" by the lawyer's responsibilities to another client.[28] In determining the existence of a conflict, the question is not whether a party's claim is likely to succeed but rather whether an attorney's ability to "recommend or advocate all possible positions" that a client may

---

[26] *Johnson v. Clark Gin Serv., Inc.*, No. 15- 3315;, 2016 WL 7017267, at *8 (E.D. La. Dec. 1, 2016)
[27] *Id.* at 9.
[28] *Id.*

take would be "materially limited" because of the lawyer's "duty of loyalty" to another client.[29] The Court ultimately determined that "[h]ere, there is a significant risk that Plaintiffs' counsel will be materially limited in recommending or advocating all possible positions to their clients because of the conflicting interests of the Plaintiffs."[30] The Fifth Circuit has also held that "an actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing."[31]

Because Figari is also supposed to have a duty of loyalty to the Employer Plans, Figari should have conducted an independent investigation and come to the same conclusion as the Williams Companies. As discussed above, Figari's impartiality in favor of United has foreclosed any opportunity for the Employer Plans to conduct an independent review of the issues for the Employer Plans then act in the Employer Plans' best interests. Importantly, Figari understands that if it conducted an independent investigation on behalf of the Employer Plans, the results of such independent investigation would: (i) create adversity between United and the Employer Plans, (ii) create material limitations in their abilities to represent both United and the Employer Plans simultaneously, and (iii) create further liabilities for its institutional client, United, as the Employer Plans and the members of the Employer Plans would then have actional claims against United.

Furthermore, an independent investigation would give rise to breach of contract, breach of fiduciary duty, and other federal and state claims that may be brought against United by the Employer Plans and/or members of the Employer Plans. Per the terms of its Administrative Service

---

[29] *Id.* at 11; Model Rules of Prof'l Conduct R. 1.7, cmt. 8.
[30] *Id.*
[31] *United States v. Rico*, 51 F.3d 495, 509 (5th Cir. 1995).

Agreements (the "ASO Agreement(s)") between United and the Employer Plans, the Employer Plans appoint United to act its ERISA fiduciary to ensure compliance with ERISA claims procedures.[32] As alleged in the Original Complaint, United failed to comply with such claims procedures.[33]

Also, United has already commenced with withholding information and materials from self-funded health plans and members of those plans. Despite United's obligations under ERISA, the Affordable Care Act, and its summary plan documents, United has failed to provide any requested materials and/or transcripts of calls to members that have issued formal or telephonic requests for materials and/or transcripts of calls with United relevant to their claims.[34,35] As of the date of this Motion, the materials requested by the members of these health plans have not been provided by United. The failures of United to produce information to members of the health plans whom United owes the same legal and contractual obligations to produce relevant information when requested are representative of the adversity between United and the Employer Plans and the members of the Employer Plans, and the material limitations that are presented for Figari in this joint representation. Any communications, policies, or materials (or lack thereof) that United has in its possession that are relevant to its adjudication practices (and other practices) have not and will not be produced as production of those materials to the Employer Plans and the members of the Employer Plans will harm United and further create adversity between the parties. In a

---

[32] *See* Exhibit [P-4] (ASO Terms Appointing United as the Employer Plans' ERISA Fiduciary).

[33] *See* Doc. No. 2 Original Complaint, ¶¶ 141-159, 178-184; *see also* Exhibits Q, R of the Original Complaint Doc. 2 [1-17] and [1-18].

[34] *See* Exhibit [P-5] (Formal Requests for Information and/or Transcripts Relevant to the Covid Testing Claims from Members of Health Plans Either Insured or Administered by United).

[35] *See* Exhibit [P-6] (Transcripts Reflecting Requests for Information between Member of Self-Funded and United). Please note, this transcript was jointly prepared through the efforts of the Patient at issue and Plaintiff using the Patient's own recording of the call. This transcript was not provided to Patient by United despite Patient's multiple requests to United to produce the recordings and/or transcripts of the calls.

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
15 | P a g e

formal ethical opinion issued by the American Bar Association, the Standing Committe on Ethics and Professional Responsibility states:

> Because the scope of the "implied authority" granted in Rule 1.6(a) to reveal confidential information "to carry out a representation" applies separately and exclusively to each representation the lawyer has undertaken, a conflict of interest arises when the lawyer recognizes the necessity of revealing confidential information relating to one client in order effectively to carry out the representation of another. In such a circumstance, the lawyer would be required to withdraw from representing one or both of her clients.[36]

Figari cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated especially since revealing private and confidential information of United is necessary in order to effectively carry out the representation of the Employer Plans.

Finally, adversity already existed prior to the filing of the lawsuit as United and Figari have already presented conflicting statements to self-funded health plans that it administers as it relates to United's obligations to comply with the FFCRA and the CARES Act when administering Covid Testing claims on behalf of the members of the Employer Plans. When a benefits manager of a self-funded health plan inquired with United as to when its members' Covid Testing claims were not being adjudicated in compliance with the FFCRA and the CARES Act, United provided the following response, "Non-participating providers can charge any amount they choose. However, the insurance company will look at Medicare rates or other sources to determine what amount is actually eligible to pay on. For COVID-19 tests, we will pay even if the provider or lab is out-of-network, but we will only pay on the eligible amount."[37] United goes on to inform this self-funded

---

[36] American Bar Association, Formal Opinion 08-450 (Confidentiality When Lawyer Represents Multiple Clients in the Same or Related Matters).
[37] *See* Exhibit S [Doc 1-19] of the Original Complaint and Jury Demand.

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
16 | P a g e

health plan that "[n]on-network providers do not have a contract that they have to comply with. So we process the claims according to the Medicare rates or the MNRP fee schedules."[38]

However, in United's publicized FAQs to its self-funded health plan clients, United states the following:

**Are self-funded clients required to follow the different rules on COVID-19?**

Self-Funded clients are generally not impacted by state laws and regulations but instead are required to follow federal standards under ERISA and other federal legislation such as The Families First Coronavirus Response Act (HR 6201). If a self-funded client chooses to follow the state regulations, please contact your Account Executive to work through UnitedHealthcare's ability to support the request.

**What is the process for a self-funded client who declines to cover the test and test-related expenses at no cost share?**

Based on federal legislation passed on March 18, all plans are required to cover these services.

**What is UnitedHealthcare's intent to comply with all requirements of the CARES Act?** New 6/26

The CARES Act and the related guidance create both permissive, as well as mandatory, requirements.

UnitedHealthcare's administration of self-insured plans is aligned with the requirements of the CARES Act including supplementary guidance provided from time to time by applicable regulatory agencies.

However, self-funded plans have some discretion in what is implemented/administered.   [39]

The messaging from United to the Employer Plans and other self-funded health plans that it administers conflict with one another and are wholly inconsistent. Another prime example is the inconsistent representations made to members of self-funded health plans as to how their Covid Testing claims should be adjudicated.[40] United created this adversity between United and the

---

[38] *Supra* Footnote [Doc 1-19].
[39] *See* United's ASO – Business Disruption and Stop Loss Support FAQ (https://www.uhc.com/content/dam/uhcdotcom/en/B2B-Newsletters/b2b-pdf/covid-19/faqs-aso_business_disruption_and_stop_loss.pdf).
[40] *Supra* Footnote, See Exhibits [P-5] [P-6].

Employer prior to the filing of the Lawsuit, and, because of these self-conflicting statements, United has created this adversity on its own accord.

Here, substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question already exists or is imminent. "The Texas Rules, Model Rules and Restatement all demand the same outcome when a concurrent conflict of interest would otherwise burden legal representation: withdrawal or disqualification.[41]

### OTHER AUTHORITIES SUPPORTING THE NECESSITY OF FIGARI'S DISQUALIFICATION

The Louisiana State Bar Association Rules of Professional Conduct Committee adopts the Model Rules, as such, has issued an ethical advisory opinion that provides a roadmap as to how Model Rule 1.7 and the simultaneous representation of parties should be reviewed and considered. In this advisory opinion that considered the simultaneous representation of a driver and guest passenger, this Committee states:

> Lawyers often inquire whether the conflict rules permit them to represent both the driver and the guest-passenger in an automobile accident. *In almost all such cases, there will be a prohibited conflict of interest* between the driver and the guest-passenger that will prevent such a joint/simultaneous representation. *The most common conflict will arise when the driver is even slightly at fault* in the accident, which is a fact that may not be known or realized until the case is factually developed. Thus, even when a conflict is not apparent at the outset of the representation, in most cases a conflict will arise when the defense begins to assert and develop facts that the driver was partially at fault. At that moment, even the lawyer who believed in good faith that the driver was not at fault will have a conflict that must be addressed, since the passenger client will now have an interest in pursuing a claim based on that driver-fault theory, if ultimately proven to be true. For all of these reasons, the only safe ethical course is to decline the proposed joint

---

[41] United States v. Lucio, 996 F. Supp. 2d 514, 524 (S.D. Tex. 2013) (citing Tex. Disciplinary Rules Prof'l Conduct R. 1.06; Model Rules of Prof'l Conduct R. 1.7; Restatement (Third) of Law Governing Lawyers § 125.13).

representation of the driver and guest-passenger from the outset [emphasis added].[42]

The Committee goes on to provide that there is a three-step process that must be considered when evaluating such conflicts:

1. Some conflicts are so pronounced that they are not susceptible to waiver by the clients and, accordingly, are fatal to the representation.

2. The lawyer must reasonably believe that he can "provide competent and diligent representation to each affected client," notwithstanding the conflict.  Of course, if the lawyer does not believe that he can do so (or a disinterested lawyer would find the belief unreasonable), the lawyer must decline the representation. In performing this analysis, the relationship and wishes of the clients should be taken into account. Moreover, the lawyer's duty of disclosure is ongoing.

3. Third, assuming that the first two conditions noted above are satisfied, the lawyer must obtain the informed consent of each of the affected clients, confirmed in writing. However lawyer who neglected to explain at the outset of the dual/simultaneous representation that confidentiality is shared commonly/equally between the co-clients is particularly at risk of being disqualified from continuing to represent either client.[43]

Other authorities supporting the need for Figari's disqualification from jointly representing both United and the Employer Plans in this action are as follows:

In *Kaiser v. Stewart*, the question before the Eastern District of Pennsylvania was whether to disqualify a law firm from its joint representation of fourteen co-defendants.[44] Plaintiff, the Pennsylvania Insurance Commissioner, commenced a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action with pendent state claims against the co-defendants, and Plaintiff has moved to disqualify the law firm as counsel because the co-defendants have interests adverse to one another.[45] This Court recognizes that material limitations existed in the

---

[42] Louisiana State Bar Association Rules of Professional Conduct Committee, Public Opinion 08-RPCC-016 (Conflict of Interest: Simultaneous Representation of Driver and Guest Passenger) (March 29, 2008).
[43] *Supra* p. 3.
[44] *Kaiser v. Stewart*, No. CIV. A. 96-6643, 1997 WL 186329, at *1 (E.D. Pa. Apr. 10, 1997).
[45] *Id.*

representation of the co-defendants and states, "at this early stage of the litigation, that the potential for conflicts of interest exists in this complex civil action where the Liquidator is seeking millions of dollars. It is not unreasonable to expect that, in a case such as this, the roles and interests of the various defendants may be incongruent. Thus, the representation of one or more clients here, in the words of Rule 1.7, '*may* be materially limited by the lawyer's responsibilities to another client (emphasis added).'"[46] The Court did allow counsel to represent some co-defendants *provided that* counsel obtained affidavits from each consenting co-defendant that attests to the following: (i) counsel supplied the client with a copy of the motion to disqualify, (ii) counsel advised the client of the implications of joint representation and apprised each of the advantages and disadvantages including potential conflicts of interest that may arise; (iii) the counsel advised the client of Rule 1.7 of the Model Rules; and (iv) after having had an opportunity to consult with counsel, the client consented to the joint representation and waived any potential conflict of interest which may arise.[47]

In *Wittenborn v. Pauly*, Plaintiff brought, amongst other things, RICO and other state claims against multiple co-defendants, and has requested the Court to consider disqualifying joint counsel for all co-defendants.[48] The Northern District of Illinois determined counsel should be disqualified from joint representation of certain co-defendants and relied upon Canon 5 of the American Bar Association Code of Professional Responsibility which provides that a lawyer "[s]hould [e]xercise [i]ndependent [p]rofessional [j]udgment on [b]ehalf of a [c]lient" and "[t]he professional judgment of a lawyer should be exercised solely for the benefit of his client and free

---

[46] *Id*. at 3.
[47] *Id*.
[48] *Wittenborn v. Pauly*, No. 87 C 5814, 1988 WL 33723, at *1 (N.D. Ill. Apr. 1, 1988).

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
20 | P a g e

from compromising influences and loyalties ... [T]he interest of other clients ... should [not] be permitted to dilute his loyalty to his client."[49]

In *McGinn v. DeSoto*, Plaintiff brought an ERISA class action against a company, the company's employee stock ownership plan, the company's pension plan, and the individual trustees of the stock and pension plans.[50] Northern District of Illinois acknowledged that Model Rule 1.7(b) indicates that representation of two parties with potentially conflicting interest may be permissible if both parties consent after full disclosure; however, it further provides that consent in this case would be inappropriate.[51] The Court states, "The situation here resembles shareholder derivative suits, where courts disfavor the representation by a single lawyer or law firm of both a corporation and the individual directors [trustees] … Because the [stock and pension] plans may benefit from proof of the individual defendants' [trustees'] wrongdoing, the interests of the [stock and pension] plans conflict with those of the individual defendants [trustees] and DeSoto [the company]."[52] Like in this case, not only do the Employee Plans benefit from proof of United's wrongdoing, so do the members of the Employee Plans as both the Employee Plans and/or the members of the Employee Plans have potential actions against United if wrongdoing is established in this case.

## REQUEST FOR RELIEF

As detailed above, Figari has owed a longstanding duty of loyalty to United, and the representation of the Employer Plans by Figari has been and will continue to be prejudiced by this

---

[49] *Id*. at 3 (citing to *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209, 215 (N.D.Ill.1975), aff'd in part, 532 F.2d 1118 (7th Cir.1976) (quoting Ethical Consideration 5–1 of the American Bar Association Code of Professional Responsibility)).
[50] *McGinn v. DeSoto, Inc.*, No. 90 C 4481, 1990 WL 251753, at *1 (N.D. Ill. Dec. 21, 1990)
[51] *Id* at 4.
[52] *Id*.

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
21 | P a g e

joint representation. The facts and circumstances presented in this Motion stretch beyond a mere insinuation that there is a conflict of interest with Figari's representation of both United and the Employer Plans. Figari cannot ethically deny its conflict of interests. For the foregoing reasons, Plaintiff respectfully requests that the Court disqualify Figari from representation of United and the Employer Plans, strike all previous pleadings and/or motions filed by Figari in this lawsuit, and for all relief the Court deems appropriate. Additionally and/or in the alternative, Plaintiff respectfully requests the Court to require Figari to produce each and every written informed consent obtained from each of the Employer Plans and review the consent documents to determine whether Figari complied with its requirements to properly disclose all past, present, and potential conflicts that may arise from this joint representation in accordance with Texas Rules 1.6 and Model Rule 1.7. All doubts should be resolved in favor of disqualification.[53]

Dated: November 4, 2021

Respectfully Submitted,

By: /s/ Ebad Khan
Ebadullah (Ebad) Khan
Federal Bar No. 2810999
State Bar No. 24092625
ekhan@24hourcovid.com
23330 US-59, Suite 300
Kingwood, Texas 77339
(281) 319.8306 Direct
(281) 605.6690 Facsimile
***Attorney for Plaintiff***

---

[53] *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975); cited in *Cannon*, 398 F.Supp. at 213 and 222.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of November 2021 the above and foregoing *Plaintiff's Opposed Motion for Disqualification of Figari + Davenport, LLP,* was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all counsel of record.


*/s/ Ebad Khan*
ATTORNEY FOR PLAINTIFF

*Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24Hour Covid RT-PCR-Laboratory's*
*Opposed Motion for Disqualification of Figari + Davenport LLP*
23 | P a g e