**EXHIBIT P-1.A**

October 6, 2021

**Via Email: andy.jubinsky@figdav.com**
Figari + Davenport
Attn: Andy Jubinsky

    Re:    **Diagnostic Affiliates of Northeast Hou, LLC v. United Health Group, Inc. et al**
              **Request for Recusal; Motion to Disqualify Counsel**

Andy:

    I write this letter out of concern that the Employer Plans (as defined in the Initial Complaint) that have engaged your firm, Figari + Davenport, as counsel (as identified on Exhibit A of the Motion to Dismiss (Doc. 67)) are not and cannot be represented with the same level of commitment and duty that you and your firm offer to the United Defendants (as defined in the Initial Complaint). Notwithstanding all the other factors detailed below, the United Defendants have long been institutional clients of Figari; thus, it is a very reasonable presumption that Figari's representation of the Employer Plans has been and will continue to be prejudiced by this longstanding relationship.

    The purpose of this letter is to inform Figari that its continued concurrent representation of the United Defendants and the Employer Plans is a prohibited conflict of interest on many levels as will be briefly detailed below and to request that Figari recuse itself from representation of the Employer Plans in this instant action. If Figari is unwilling to recuse itself then we fully intend to file a Motion to Disqualify with the Court and leave the decision as to whether Figari should be permitted to represent the United Defendants and/or the Employer Plans to the Court's discretion.

    I.    **Texas and Federal Rules of Professional Conduct**

    As you know, both the State Bar of Texas and the American Bar Association prescribe specific rules and commentary as it pertains to the concurrent representation of clients whose interests are adverse to one another. Clearly, the concurrent representation of the United Defendants and the Employer Plans conflict with the prohibitions/guidance established by these rules and their commentary.

        a.    *State Bar of Texas: Texas Disciplinary Rules of Professional Conduct*

<u>Rule 1.06 (Conflict of Interest: General Rule) states as follows</u>:

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

    (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

    (2) <u>reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client</u> or to a third person or by the lawyer's or law firm's own interests…

(e) If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.



Relevant State Bar of Texas Commentary to this Rule is as follows:

1. Loyalty is an essential element in the lawyer's relationship to a client… If such a conflict arises after representation has been undertaken, the lawyer must take effective action to eliminate the conflict, including withdrawal if necessary to rectify the situation….

3. … <u>An impermissible conflict may exist or develop by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question</u>. Such conflicts can arise in criminal cases as well as civil…

4. Loyalty to a client is impaired not only by the representation of opposing parties in situations within paragraphs (a) and (b)(1) but also <u>in any situation when a lawyer may not be able to consider, recommend or carry out an appropriate course of action for one client because of the lawyer's own interests or responsibilities to others. The conflict in effect forecloses alternatives that would otherwise be available to the client</u>. Paragraph (b)(2) addresses such situations.

6. <u>Within the meaning of Rule 1.06(b), the representation of one client is "directly adverse" to the representation of another client if the lawyer's independent judgment on behalf of a client or the lawyer's ability or willingness to consider, recommend or carry out a course of action will be or is reasonably likely to be adversely affected by the lawyer's representation of, or responsibilities to, the other client</u>. The dual representation also is directly adverse if the lawyer reasonably appears to be called upon to espouse adverse positions in the same matter or a related matter.

7. However, as indicated in paragraph (c)(1), when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved should not ask for such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each client. <u>Moreover, there may be circumstances where it is impossible to make the full disclosure necessary to obtain informed consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.</u>

      b.    *American Bar Association: Model Rules of Professional Conduct*

Rule 1.7 (Conflict of Interest: Current Clients)

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client; or

    (2) <u>there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client,</u> a former client or a third person or by a personal interest of the lawyer.

Relevant American Bar Association Commentary to this Rule is as follows:

1. Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests…



6. Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent … <u>In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client.</u> <u>Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.</u>

8. <u>Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests</u>. For example, a lawyer asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. <u>The conflict in effect forecloses alternatives that would otherwise be available to the client</u>… <u>The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.</u>

23. … On the other hand, simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (a)(2). <u>A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question</u>. Such conflicts can arise in criminal cases as well as civil.

26. … Relevant factors in determining whether there is significant potential for material limitation include the <u>duration and intimacy of the lawyer's relationship with the client or clients involved</u>, the functions being performed by the lawyer, <u>the likelihood that disagreements will arise and the likely prejudice to the client from the conflict</u>. The question is often one of proximity and degree.

29. In considering whether to represent multiple clients in the same matter, <u>a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination</u>. Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. In some situations, the risk of failure is so great that multiple representation is plainly impossible. <u>For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated</u>. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good…

30. A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. <u>With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised</u>.

31. As to the duty of confidentiality, <u>continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit</u>. See Rule 1.4. The lawyer should, at the outset of the



common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other.

II. **Relevant Factors for Figari + Davenport's Recusal/Disqualification**

Below is a non-exhaustive list of relevant factors as to why Figari + Davenport should recuse itself from representation of the Employer Plans or face disqualification based upon the discretion of the Court. If necessary, these factors will be elaborated upon in any Motion to Disqualify filed with the Court.

1. The United Defendants have long been clients of Figari. On information and belief, Figari has, at the very least, been counsel of record for one or more of the United Defendants dating as far back as 2008. Because of this nearly two-decade long attorney-client relationship with what is likely an anchor client for the firm, Figari owes a special duty of loyalty and diligence to the United Defendants; therefore, the Employer Plans have been and will continue to be prejudiced by Figari's bias towards the United Defendants, implicitly or otherwise. The duration and intimacy of Figari's relationship with the United Defendants as compared to the Employer Plans are relevant factors in determining whether there is significant potential for material limitation.

2. Figari's bias towards the United Defendants and the sensitive nature of its longstanding attorney-client relationship will prevent Figari from: (i) independently judging the merits of the allegations/causes of action brought against the United Defendants from the perspective of the Employer Plans, and (ii) considering, recommending, or carrying out any appropriate course of action for the Employer Plans because of Figari's own interests and responsibilities to the United Defendants. This conflict has and will continue to foreclose alternative courses of action that are available to the Employer Plans that should be reasonably pursed on their behalf regardless of whether such pursuit conflicts with the United Defendants' position.

3. The Employer Plans currently have ripe claims to be made against the United Defendants for, amongst other things, breach of the Administrative Services Agreements that each Employer Plan has with a United Defendant or a Breach of Fiduciary Duty claim under ERISA. Moreover, if any of the allegations made against the United Defendants in the Original Complaint or throughout the course of this instant action prove to be true then the Employer Plans' actionable claims against the United Defendants are further bolstered.

4. The duty of confidentiality does not extend between parties represented by the same counsel; therefore, the Employer Plans have the right to be informed of anything bearing on the representation that might affect the Employer Plans' interests and the right to expect that their counsel will use that information to the Employer Plans' benefit. However, because the Employer Plans have actionable claims against the United Defendants, especially if any allegations made against the United Defendants are proven to be true, Figari may become conflicted, if not already, in the event it comes across or uncovers information/material that is detrimental to the United Defendants but probative to the Employer Plans. Similarly, attorney-client privilege does not extend between commonly represented parties in the same action.

5. There is a strong likelihood that an impermissible conflict will develop between the United Defendants and the Employer Plans by reason of substantial discrepancy in the parties' testimony or evidence set forth at trial or at any other point in this instant action.

6. Between the United Defendants and the Employer Plans there are substantially different possibilities of settlement of the claims or liabilities in question. If any allegations against the United Defendants are proven to be true then the United Defendants are not just liable to 24 Hour Covid but also to the Employer Plans and all members of the Employer Plans that have obtained Covid Testing services from 24 Hour Covid. Additionally, the possibilities of settlement between 24 Hour Covid and the United Defendants and 24 Hour Covid and the Employer Plans are vastly different as any settlement discussions between 24 Hour Covid and



      the Employer Plans will likely require, at the very least, an independent investigation of whether United complied with the requirements of the FFCRA, the CARES Act, ERISA, the ACA, Texas insurance laws, and/or the terms of any Administrative Services Agreement and some level of acknowledgment that the United Defendants did not comply with any applicable laws or guidance when adjudicating Covid Testing claims if an independent investigation find this to be wholly or partially true. Importantly, any request by 24 Hour Covid to the Employer Plans represented by Figari for an independent investigation of 24 Hour Covid's allegations begs the question as to whether any investigation conducted by Figari on behalf of the Employer Plans can truly be independent and without any prejudice or deference of one party over another.

7. The Employers Plans will need to acquire probative evidence from the United Defendants through document production and/or sworn testimony for their own self-interests, and the purpose of such requests can likely be adverse to interests of the United Defendants. Any negative probative evidence obtained from the United Defendants by the Employer Plans will lead to the likelihood where contentious litigation or negotiations between the United Defendants and an Employer Plan is imminent or contemplated.

8. Because Figari has or will likely temper the interests of the Employer Plans in order to protect the conflicting interests of the United Defendants, there is a strong likelihood that public suspicion from this impropriety will outweigh any social interests which would be served by permitting Figari to continue in its concurrent representation of the United Defendants and the Employer Plans.

     In the event that your firm has disclosed/explained to each of the engaged Employer Plans the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege, and the advantages and risk involved in concurrent representation with the United Defendants, then we ask that you please provide copies of each Employer Plans' informed consent obtained in writing for us to confirm that proper, sufficient, and unambiguous disclosures were made. Copies of such informed consents are imperative for us to withdraw this request for recusal and/or from moving forward with a Motion for Disqualification.

     I ask that you please provide a response to this letter and/or copies of the informed consents no later than <u>Wednesday, October 13</u>. Please do not hesitate to contact me if you wish to discuss this matter further.

                                                                Regards,

                                                               Ebad Khan, Esq.
Chief Legal Officer
24 Hour Covid
ekhan@24hourcovid.com
D: 281.319.8306