United States District Court
Southern District of Texas
**ENTERED**
January 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DIAGNOSTIC AFFILIATES OF | § | |
| NORTHEAST HOU, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00131 |
| | § | |
| UNITED HEALTHCARE SERVICES, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTIONS TO DISMISS FILED BY
## PLANS AND PLAN ADMINISTRATORS (D.E. 67, 105, 112, 119, 130, 141, 145)

Plaintiff Diagnostic Affiliates of Northeast Hou, LLC d/b/a 24 Hour Covid RT-PCR Laboratory (Diagnostic Affiliates) filed this action to recover payments for COVID-19 testing and related services against three categories of Defendants: (1) UnitedHealth Group, Inc. (UHG),[1] the parent company of subsidiaries that administer health insurance plans; (2) health insurance plan administrators, collectively referred to as United;[2] and (3) employer healthcare plans.[3] Before the Court are seven motions to dismiss directed at Diagnostic Affiliates' amended complaint (D.E. 2).

---

[1] UHG filed its own motion to dismiss, which is addressed by separate order.

[2] "United" refers to: United Healthcare Services, Inc., United Healthcare Benefits of Texas, Inc., United Healthcare of Texas, Inc., UMR, Inc., and OptumHealth Care Solutions, LLC (sued as OptumHealth Care Solutions, Inc.).

[3] "Employer healthcare plans" refers to: American International Group, Inc. Medical Plan; Anadarko Petroleum Corp. Health Benefit Plan; Apple Inc. Health And Welfare Benefit Plan; Group Health And Welfare Plans (Aramark Uniform Services); AT&T Umbrella Benefit Plan No. 1; AT&T Umbrella Benefit Plan No. 3; Baker Hughes, A GE Company Welfare Benefits Plan; Baylor College Of Medicine Health And Welfare Benefits Plan; Brookdale Senior Living, Inc. Welfare Plan; C.H Robinson Company Group Health Major Medical Plan; Calpine Corporation Employee

The amended complaint alleges nine counts as follows:

Count I:    Violation of the FFCRA[4] and the CARES Act[5] (the Act(s)) - against all Defendants;

Count II:    Violation of ERISA[6] for failure to pay provider charges with or without an assignment of benefits - against all Defendants;

Count III:    Violation of ERISA for failure to provide a full and fair review of the claims - against all Defendants;

Count IV:    Violation of RICO[7] - against United;

Count V:    Request for a declaratory judgment[8] - against United;

---

Benefit Plan; Caterpillar Inc. Group Insurance Master Trust; Celanese Health And Welfare Benefits Program; Centerpoint Energy Group Welfare Benefits Plan For Retirees; Citgo Petroleum Corporation Defined Contribution Master Trust; Delta Account Based Healthcare Plan; Envision Healthcare Corporation Welfare Benefits Plan; H&E Equipment Services Inc. Benefit Plan; Flour Employee Benefit Trust Plan; Fresenius Medical Care Travelling Nurses Health And Welfare Benefits Plan; Geico Corp. Consolidated Welfare Benefits Program; Geospace Technologies Welfare Benefit Plan; Hudson Group (HG) Inc. Employee Benefits Plan; IQOR Health And Welfare Plan; Jones Lang Lasalle Group Benefits Plan; Kellogg Brown & Root, Inc, Welfare Benefits Plan; Kinder Morgan, Inc. Master Employee Welfare Plan; Lexicon Pharmaceuticals Inc. Comprehensive Welfare Benefits Plan; Lineage Logistics LLC Benefits Plan; Lockton, Inc. Welfare Benefits Plan; M/I Homes, Inc. Health, Life And Dental Welfare Plan; Maersk Inc. Active Nonunion Health And Welfare Plan; The Mallinckrodt Pharmaceuticals Welfare Benefit Plan; Motiva Enterprises LLC Health and Wellness Benefit Plan; Novo Nordisk Inc. Welfare Benefit Plan Petsmart Smartchoices Benefit Plan; Procter And Gamble Retiree Welfare Benefits Plan; Railroad Employees National Health Flexible Spending Account Plan; Raising Canes USA Health And Welfare Benefits Wrap Plan; Republic Services Inc. Employee Benefit Plan; Republic National Distributing Company, LLC Welfare Benefits Plan; Saia Motor Freight Line LLC Employee Preferred Provider Plan; Siemens Corporation Group Insurance And Flexible Benefits Program; Skadden, Arps, Slate, Meagher & Flom Partners' Welfare Benefits Plan; Skywest Inc. Cafeteria Plan; Southwest Airlines Co. Welfare Benefit Plan; Spirit Airlines Inc. Health And Welfare Benefits Plan; Swissport North America Holdings, Inc. Health & Welfare Plan; Targa Resources LLC Welfare Benefits Plan; Texas Capital Bancshares Inc. Employee Benefit Plan; Textron Non-Bargained Welfare Benefits Plan; Adecco, Inc Welfare Benefits Plan; T-Mobile USA, Inc. Employee Benefit Plan; Transocean Group Welfare Benefit Plan; UHS Welfare Benefits Plan; UnitedHealth Group Ventures, LLC Health And Welfare Benefit Plan; Valero Energy Corporation Retiree Benefits Plan; Valmont Industries Inc. Welfare Benefit Plan; Walgreens Health And Welfare Plan; WCA Management Company, LP Welfare Benefit Plan; Webber, LLC Welfare Benefit Plan; Winstead PC Flexible Benefit Plan; Group Benefits Plan For Employees Of Worleyparsons Corporation.

[4]  Families First Coronavirus Response Act, Pub. L. No. 116-127, § 6001(a), 134 Stat. 178 (2020) (relating to 42 U.S.C. § 1320b–5 NOTE, authority to waive peer review and administrative requirements during national emergencies).

[5]  Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 3202(a) 134 Stat. 281 (relating to 42 U.S.C. § 256b, primary health care drug pricing agreements).

[6]  Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

[7]  Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

[8]  28 U.S.C. § 2201.

Count VI:   Claim for unjust enrichment and quantum meruit - against United:

Count VII:  Claim for promissory estoppel - against United;

Count IX:[9]  Violation of the Texas Prompt Payment of Claims Act[10] - against United; and

Count X:    Claim for injunctive relief - against United.

D.E. 2, pp. 72-86.

      The first motion to dismiss (D.E. 67), filed by United, challenges each of the nine counts. Plaintiff responded (D.E. 99) and United replied (D.E. 121). Envision Physician Services, LLC Health and Welfare Benefit and Cafeteria Plan (Envision) and Swissport North American Holding, Inc. Health & Welfare Plan's (Swissport's) motions to dismiss (D.E. 105 and 145) adopt United's arguments and reinforce the challenges. Plaintiff responded to Envision's motion (D.E. 125) and Envision replied (D.E. 128). Delta Account Based Health Plan, H&E Equipment Services Inc. Benefit Plan, Hudson Group, Inc. Employee Benefits Plan, and Geospace Technologies Welfare Benefit Plan filed their motions, simply adopting United's motion. D.E. 112, 119, 130, 141. The briefing on United's motion will be applied to those motions accordingly. *See* D.E. 133, 140, 144. For the reasons set out below, the motions are **GRANTED IN PART** and **DENIED IN PART** and the following counts are **DISMISSED:** III, V, VI, and IX. All other counts are **RETAINED**.

---

[9]  The amended complaint does not include a Count VIII.

[10]  Texas Insurance Code §§ 843.351 and 1301.069.

## STANDARD OF REVIEW

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The requirement that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id.* In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible. *Id.* at 557. The Court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory

nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 681.

## FACTUAL CONTEXT

To address the public health emergency presented by the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act.  In relevant part, these statutes require group health insurance plans to cover COVID-19 diagnostic testing by qualified providers at no cost to their patients.  In the absence of a negotiated rate, insurance carriers are required to pay for the testing administered to their insureds at the cash rate the provider publishes on its website (and the providers are required to post a public cash price).

The relevant terms of the FFCRA are:

> SEC. 6001. COVERAGE OF TESTING FOR COVID–19.
>
> (a) IN GENERAL.—A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . ***shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management requirements***, for the following items and services furnished during any portion of the emergency period . . . beginning on or after the date of the enactment of this Act:
>
> (1) In vitro diagnostic products. . . for the detection of SARS–CoV–2 or the diagnosis of the virus that causes COVID–19 that are approved, cleared, or authorized . . . and the administration of such in vitro diagnostic products.

(emphasis added).  The CARES Act then states:

> SEC. 3202. PRICING OF DIAGNOSTIC TESTING.
>
> (a) REIMBURSEMENT RATES.—A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the Families First Coronavirus Response Act (Public Law 116–127) with respect to an enrollee ***shall reimburse the provider*** of the diagnostic testing ***as follows***:

(1) If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), such negotiated rate shall apply throughout the period of such declaration.

(2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer *shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website,* or such plan or issuer may negotiate a rate with such provider for less than such cash price.

(b)   REQUIREMENT   TO   PUBLICIZE   CASH   PRICE   FOR DIAGNOSTIC TESTING FOR COVID–19.—

(1) IN GENERAL.—During the emergency period declared under section 319 of the Public Health Service Act (42 U.S.C. 247d), each provider of a diagnostic test for COVID–19 shall make public the cash price for such test on a public internet website of such provider.

(emphasis added).

Diagnostic Affiliates alleges that it was qualified and provided COVID-19 testing to Defendants' insureds at its public cash price of $900 per test, as permitted by law, for which it has presented claims to Defendant United as insurer or as insurance administrator for the Defendant employer health care plans.  In response, Defendants have engaged in a number of improper tactics and have delayed, denied, or reduced payment of the claims in a manner that violates the dictates of the FFCRA and CARES Act.

## DISCUSSION

## COUNT I:
## VIOLATION OF THE FFCRA AND THE CARES ACT

**Rubric**.  Defendants challenge Count I on the basis that there is no private right of action to enforce the FFCRA or CARES Act.  "[T]he plaintiff has the relatively heavy burden to show Congress intended private enforcement, and must overcome the

presumption that Congress did not intend to create a private cause of action." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (per curiam).

By proceeding directly to the question of an implied right of action, Diagnostic Affiliates concedes that the Acts do not create an express private right of action to enforce their provisions.  D.E. 99, p. 10.  So the question is whether the terms of the legislation support the conclusion that there is an implied private right of action.  This is a question of law.  *San Juan Cable LLC v. P. R. Tel. Co., Inc.*, 612 F.3d 25, 29 (1st Cir. 2010); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378-88 (1982) (describing the analysis of whether a statute includes an implied private right of action as a matter of the legal context in which the statute was passed); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) (statutory construction and legislative intent are matters of law).

The Supreme Court identified four factors to consider in answering this question:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant.  First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78 (1975) (citations omitted).  The Court later modified the rubric as follows:

> It is true that in *Cort v. Ash*, the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort* —the language and focus of the statute, its legislative history, and its purpose—are ones traditionally relied upon in determining legislative intent.

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76 (1979) (citations omitted). This Court considers the four factors and weighs them consistent with *Touche Ross*.

**Precedent**. As a preliminary matter, the Court considers Defendants' assertion that other courts have already done this work for us, finding that there is no implied private right of action in the FFCRA or CARES Act. After examining each of the cases, discussed below, the Court concludes that they do not address the claim advanced here and are not based on reasoning that applies to this particular case.

In *American Video Duplicating, Inc. v. City National Bank*, 220CV04036JFWJPR, 2020 WL 6882735, at *2 (C.D. Cal. Nov. 20, 2020), the court found no private right of action for agent fees for producing Payment Protection Program (PPP) loans in the CARES Act because the Act did not require payment of any such fees. It only provided for a cap on them, if they were contracted. *See also Daniel T.A. Cotts PLLC v. Am. Bank, N.A.*, 2:20-CV-185, 2021 WL 2196636, at *4 (S.D. Tex. Feb. 9, 2021) (same); *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F. Supp. 3d 421, 434 (S.D. Tex. 2020) (same). Here, however, payment is required regardless of a contract. And the amount is determinable using the provisions of the CARES Act.

8 / 32

The remaining cases offered by Defendants are even further removed from a mandatory payment scheme. In *Profiles, Inc. v. Bank of America Corp*., 453 F. Supp. 3d 742, 752 (D. Md. 2020), the court found no private right of action to obtain a PPP loan from the lender of the borrower's choice.  The CARES Act did not address the matter of choice and it contains no mandatory language to support such a private right of action. Likewise, in *Shehan v. United States Department of Justice*, 1:20-CV-00500, 2020 WL 7711635, at *11 (S.D. Ohio Dec. 29, 2020), the court declined to find an implied right of action where the plaintiff complained of having been rejected for a PPP loan for fraudulent reasons.  "Nothing in the statute indicates that a would-be borrower, even an eligible one, has a right to receive a PPP loan, let alone to receive one from a particular lender." *Id*.  In contrast, COVID-19 testing providers are given the right to payment and the method for determining the amount.

In *Puckett v. United States Department of Treasury Internal Revenue Service*, 1:21 CV 425, 2021 WL 2550995, at *2 (N.D. Ohio June 22, 2021), the court rejected a private right of action against the Internal Revenue Service for an economic impact payment (stimulus check).  The pro se prisoner filing the case had not articulated a cause of action, had not shown that he could overcome a sovereign immunity defense, had not addressed the conditions precedent to entitlement to the payment, and filed his case after the deadline expired for issuance of checks—leaving a credit on taxes as his only remedy.  Because the right to a check was qualified and time-sensitive, no private right of action was supported. And sovereign immunity would have barred the claim.

In *Mescall v. United States Department of Justice*, 2:20-CV-13364, 2021 WL 199277, at *2 (E.D. Mich. Jan. 19, 2021), a pro se federal prisoner complained that he was improperly disciplined in retaliation for having filed a complaint under the CARES Act because the prison was not doing enough to prevent the spread of COVID-19.  The court found no private right of action under the CARES Act as there was no language indicating congressional intent to create such a claim.  This case has no application here.

In *Autumn Court Operating Co. LLC v. Healthcare Ventures of Ohio*, 2:20-CV-4901, 2021 WL 325887, at *5 (S.D. Ohio Feb. 1, 2021), CARES Act funds had been paid into an account.  The dispute was over ownership of the funds because of private agreements between the parties regarding ownership and operation of nursing homes that triggered the CARES Act payment and ownership of the relevant account.  No private right of action under the CARES Act was articulated or found, but the case proceeded on the basis of numerous other causes of action arising out of the private agreements.  *See also Healthcare Ventures of Ohio, LLC v. HVO Operations Windup LLC*, 20-CV-04991, 2020 WL 6688994, at *7 (S.D. Ohio Nov. 13, 2020) (on motion for remand, finding that the dispute over the ownership of the account into which CARES Act funds had been deposited did not pose a federal question to support jurisdiction).  In both of these cases, any money due under the CARES Act had been paid and thus the Act had only tangential relevance to the case.  Nothing in that analysis translates here.

In *Matava v. CTPPS, LLC*, 3:20-CV-01709 (KAD), 2020 WL 6784263, at *2 (D. Conn. Nov. 18, 2020), the pro se plaintiff sought to enjoin a state court from taking action

to evict him from his residence.  He did not join his landlord as a defendant, but sought only to interfere with the state court's jurisdiction by invoking the CARES Act.  The court held that the plaintiff had failed to articulate a cause of action, a basis for federal jurisdiction, or a reason that any provision of the CARES Act, if relevant, could not be enforced by a state court.  More specifically, there was no express cause of action identified under the CARES Act and no attempt to show an implied private right of action.  The court further noted that the requested relief would violate the Anti-Injunction Act.  The court dismissed the complaint, which sought only injunctive relief.  Like the others, the *Matava* case has no application here.

Defendants' cases fail to address whether the FFCRA or CARES Act contains an implied right of action in favor of a COVID-19 testing provider seeking statutorily-mandated reimbursements.  Neither do the cases contain any analogous fact patterns that would make their conclusions persuasive.  Thus, the Court considers the matter on a clean slate, using the Supreme Court's rubric.

### 1.    Is Plaintiff in a Class the Statutes Intended to Benefit?

Diagnostic Affiliates argues that the mandatory nature of the obligation to pay for testing indicates that it was an intended beneficiary of the statutes.  It is clear that the legislative objective was to ensure that COVID-19 testing was widely available to the entire population.  This required that providers be willing to supply and administer the tests, which in turn required a reliable method of payment for that service.  Payment of providers was sufficiently essential for the legislature to create a mandatory scheme, using the term

"shall," for determining the amount to be paid and protecting patients from any burden associated with the cost or other administrative requirements.

On this point, Diagnostic Affiliates' claim is fully distinguishable from the FFCRA and CARES Act cases that Defendants cited.  Defendants also rely on one case that does not address the FFCRA or CARES Act:  *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 772 (1981).  In *Coutu*, workers sought back pay for the minimum wage required for the type of work they performed.  But the federal statute that included the minimum wage requirement did not apply to the contract under which they worked.  Because the federal statute was not properly invoked, it could not provide a private right of action.  In contrast, the FFCRA and CARES Act directly apply to Diagnostic Affiliates' services.

While the parties have not identified any other case that addresses—positively or negatively—a private right of action for the cost of COVID-19 testing, the cases finding no private right of action under the FFCRA and CARES Act address very different provisions and are not persuasive.  The mandatory reimbursement language in favor of testing providers supports finding an implied private right of action for the claims.[11]  *See Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1320 (2020).  The plain language of the statutes indicates that Diagnostic Affiliates is among the class of providers for whose benefit the payment provisions were included.

---

[11]   The Court is aware that Defendants complain that the price Diagnostic Affiliates has charged is unreasonably high. The Court's view of the mandatory language of the statutes for purposes of creating a private right of action should not be read to foreclose any defense or counterclaim challenging the propriety of Diagnostic Affiliates' pricing.  That issue is not presently before the Court.

In the reply, Defendants assert that the FFCRA and the CARES Act were intended to benefit patients only.  And an out-of-network provider may routinely assert its claim through an insured patient's rights under the applicable group health plan.  D.E. 121, p. 6.  But this construction of the rights and remedies in the statutes fails to account for the fact that patients were to be spared any cost or administrative burden in obtaining COVID-19 testing.  No plan coverage decision is necessary because the FFCRA requires coverage.  No rate decision is necessary because the CARES Act prescribes the method for determining the rate.  Therefore, there is no reason to involve the patient in the enforcement of the claim.

In short, Defendants have not supplied any authority for the argument that a statute may intend to benefit only one class of persons.  The FFCRA and CARES Act do intend to benefit patients.  But to effectuate that, it also intends to benefit testing providers.  These are not mutually exclusive concepts.

### 2.   Is There Evidence of Legislative Intent to Create or Deny a Private Right of Action?

Envision argues that Diagnostic Affiliates pretermitted the issue of an intent to create a private right of action by admitting that "there appears to be limited extrinsic evidence of legislative intent one way or the other on the issue of a private cause of action with respect to the particular provisions at issue here."  D.E. 128, p. 2 (quoting D.E. 125 at 5).  But Diagnostic Affiliates did not say that there was no evidence, just limited "extrinsic" evidence.  The terms of the statutes, themselves, evidence legislative intent as addressed more fully below.

The mandatory nature of the reimbursement right supports recognition of an implied private right of action. *See Maine Cmty. Health Options*, 140 S. Ct. at 1320. Envision argues against that proposition, citing *Hawaii Motor Sports Center v. Babbitt*, 125 F. Supp. 2d 1041, 1047 (D. Haw. 2000) as stating that mandatory language does not automatically imply a private right of action. But the Court does not treat the mandatory language as dispositive. Consistent with the analysis in *Hawaii Motor Sports*, the mandatory language is one aspect to consider when doing the four-part *Cort* review. *Id.* n.3. In *Hawaii Motor Sports*, the mandatory language was unavailing because the claimant was not the intended beneficiary of the statute at issue. Here, Diagnostic Affiliates is an intended beneficiary and the mandatory language works in its favor.

Envision also cites *Kogan v. Robinson*, 432 F. Supp. 2d 1075, 1076 (S.D. Cal. 2006) as holding that a provision that a party "shall reimburse" did not create a private right of action or any specific remedy. D.E. 128, p. 3. That conclusion was based on the structure of the statute and the fact that the requirement of reimbursement was accompanied by an opportunity for exemption from the requirement as determined by the administrative agency. The conflict in enforcement powers between those claimed by the private claimant to be implied in his favor and those expressly delegated to the administrative agency prevented treatment of that particular reimbursement requirement as creating a private right of action. No such conflict exists in the FFCRA or CARES Act.

Defendants argue that that there are enforcement provisions in the FFCRA and CARES Act that demonstrate that the legislature intended administrative enforcement to

the exclusion of private enforcement.  These administrative enforcement provisions have different purposes and fall short of providing any avenue for a COVID-19 testing provider to recover the reimbursements required by the statutes.  And Defendants have not suggested what recourse, other than this action, Diagnostics Affiliates might have for its claims.

The Secretaries of Health and Human Services, Labor, and Treasury are empowered to implement the relevant FFCRA provisions through sub-regulatory guidance, program instruction or otherwise.  FFCRA § 6001(c).  And the same Secretaries are directed to enforce them through ERISA and the regulation and taxation of group health plans. FFCRA § 6001(b).[12]  But FFCRA § 6001 is relevant here because it requires insurers to cover COVID-19 testing through their health insurance plans.  This provision indicates who is responsible for payment, not how payment is to be made.  Its enforcement scheme is appropriately designed for the purpose of ensuring coverage for insureds.  Nothing in the amended complaint indicates Defendants have denied or reduced claims because the service is not covered or that it was provided to a person who was not an insured.

The direct requirement for reimbursement to COVID-19 testing providers is, instead, in the CARES Act § 3202(a).[13]  The only enforcement provision related to that

---

[12]   Referring to "part A of title XXVII of the Public Health Service Act, part 7 of the Employee Retirement Income Security Act of 1974, and subchapter B of chapter 100 of the Internal Revenue Code of 1986."

[13]   When challenging the methodology for enforcing the CARES Act, United refers to § 3201, which amends the FFCRA to provide the administrative qualifications for making particular COVID-19 testing appropriate under the statutes.  The parties have not raised any issue at this juncture regarding whether Diagnostic Affiliates was using approved testing materials and methods.  The issue is the right to reimbursement, which appears in § 3202.  United's motion thus technically fails to challenge a private right of action for reimbursement under § 3202.

requirement is for a civil fine against providers who do not publish their cash price—the premise on which their payment is to be calculated.  CARES Act § 3202(b).   There is no dispute that Diagnostic Affiliates properly published its cash price.  Thus, the CARES Act has no express enforcement provision—administrative or otherwise—that is relevant here for claims against insurance companies responsible for reimbursements.

Defendants rely on the concept that, "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).   But the administrative enforcement provisions address other provisions and do not address the manner in which a COVID-19 testing provider can obtain its reimbursements (which are no less mandatory).   Therefore, the administrative enforcement scheme cannot be said to evidence an intent to deny a private right of action.

Defendants also contend that the express creation of private enforcement rights for other provisions of the statutes indicates that the legislature would have likewise created a private enforcement right for reimbursement, had one been intended.   D.E. 67, p. 7 ("Sections 3102, 5102, and 5105 of the FFCRA expressly incorporate the private enforcement provisions of Fair Labor Standards Act and Family and Medical Leave Act to remedy improper denials of emergency paid employee leave.").   Diagnostic Affiliates responds that the lack of specificity in creating a private right of action for reimbursement was likely the result of the speed with which Congress had to act in response to the pandemic emergency.

16 / 32

These statutes broadly address multifaceted aspects of the pandemic.  Under the circumstances, seeking consistency in the treatment of remedies elevates form over substance where clear rights to reimbursement were created and no other enforcement mechanism exists.  An implied private right of action is a more appropriate construction of the statute than the creation of a right without any remedy.

The terms of the FFCRA and CARES Act support finding an implied private right of action to enforce the right to reimbursement for COVID-19 testing against insurance plans and administrators.

### 3.   Is a Private Right of Action in Favor of Plaintiff Consistent with the Legislative Scheme?

Defendants do not directly address this question.  As discussed, Congress wanted widespread COVID-19 testing, which could only be accomplished by private entities quickly incurring the cost of establishing testing sites across the country and procuring the necessary supplies to administer tests.  Legislative impatience with the finer points of the relationship between providers and insurance companies to properly allocate those costs or to determine appropriate pricing is evidenced by the inclusion of a mandatory methodology for determining the rate to be paid, if the parties did not have the time or cooperation to negotiate rates.  A private right of action to recover the mandated reimbursement is fully consistent with the legislative scheme.

### 4.   Would It Be Inappropriate to Create a Federal Right, Given the Context of State Concerns?

Defendants did not address this issue, except insofar as Envision footnoted the observation that this factor is not relevant in this case.  D.E. 128, p. 4 n.1.  Diagnostic Affiliates argues that the regulation of group health care plans, including ERISA, already contemplates federal litigation for enforcement.  D.E. 99, pp. 14-15.  And the federal response to the COVID-19 pandemic is consistent with, not contrary to, state interests.  Therefore, no state concerns counsel against recognizing an implied private right of action as a remedy to redress a federally-created right.

In conclusion, considering the four factors set out in *Cort*, and giving the greatest weight to the first three as most indicative of Congress's intent, the Court concludes that there is an implied private right of action to enforce the provisions of the FFCRA and CARES Act reimbursement requirement.  Therefore, the motions are **DENIED IN PART** to the extent that they challenge the claims made under Count I.

### COUNT II:
### VIOLATION OF ERISA - FAILURE TO PAY

Defendants raise two challenges to Diagnostic Affiliates' claims for failure to pay under ERISA:  (a) Diagnostic Affiliates does not have standing to advance the patients' claims; and (b) it failed to exhaust administrative remedies (and it does not escape that requirement because the exceptions for futility and deemed-exhausted claims are not properly pled).  The Court considers each argument below.

**Standing**.  With respect to standing, Diagnostic Affiliates pled that it obtained appropriate assignments of benefits from many of the patients.  The fact that it may also be making claims for patients who did not execute assignments is an insufficient reason to dismiss the claim in its entirety.  And this is not the stage of proceedings to evaluate the facts surrounding individual claims.

Swissport has its own variation on this argument.  It contends that Diagnostic Affiliates had to specifically allege that its claims against Swissport are based entirely on Swissport's patient's assignments.  D.E. 145, pp. 5-6.  Given the nature of this case and the purposes of *Twombly/Iqbal* specificity, along with the Court's decision on the private right of action under the FCRA and CARES Act, the Court declines to require Diagnostic Affiliates to name in its pleading each plan whose patients assigned their rights for enforcement purposes.

The defense that the plans may include anti-assignment provisions negating the existing assignments and requiring notarized powers of attorney is a matter not properly before the Court on these motions to dismiss.  According to the standard of review, the Court is to make its Rule 12(b) decision on the basis of the allegations on the face of the complaint, accepted as true.  A defense can require dismissal at this stage only if all of the elements necessary to support the defense are apparent in the complaint.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  Even if the plan terms were to be considered incorporated into the complaint and contain anti-assignment provisions, Defendants have not submitted any Rule 12(b)(6) evidence of their contents.

While Diagnostic Affiliates also pleads standing on the basis of Defendants' failure to furnish information, the Court does not rely on that argument and thus need not address Defendants' argument that a provider, as assignee, is not entitled to those documents. *See* D.E. 121, p. 8 (citing *Mem'l Hermann Health Sys. v. Sw. LTC, Ltd.*, No. 4:14-CV-02572, 2016 WL 3526137, at *8 (S.D. Tex. June 7, 2016), *adopted*, No. 4:14-CV-2572, 2016 WL 3552281 (S.D. Tex. June 23, 2016), *aff'd*, 683 Fed. App'x 274 (5th Cir. 2017). Neither does the Court opine at this time on Diagnostic Affiliates' argument that the FFCRA and CARES Act altered the ERISA standing requirements.

Diagnostic Affiliates has pled sufficient factual allegations to support its standing to assert ERISA claims on behalf of the patients it served by pleading that it has obtained many assignments from patient members of the plans.

**Deemed Exhaustion and Futility**. Diagnostic Affiliates does not deny failing to exhaust some of the claims. And Defendants do not deny that there are exceptions to the exhaustion requirements based on inadequate claims procedures and futility. *See* 29 C.F.R. § 2560.503-1(l)(1) (ERISA claim processing requirements); 45 C.F.R. § 147.136(b)(2)(ii)(F) (regulations for group health plans and health insurance issuers in group and individual markets incorporating ERISA requirements); *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479-80 (5th Cir. 2000) (recognizing the futility exception). They only deny that the exceptions are sufficiently pled.

Diagnostic Affiliates' amended complaint is replete with detailed factual allegations—including documentary evidence—describing the claim processing and

20 / 32

review procedures that they have invoked with Defendants and the allegedly improper, inconsistent, insufficient, and overwhelmingly negative results they have obtained, even where all procedures are exhausted.  Included are allegations of Defendants' voluminous and repetitive record requests and hostility to the claims across-the-board.  These factual allegations suggest systemic issues implicating bias and conflicts of interest.  And they are consistent with violations of the itemized minimum requirements for claim processing procedures set out in 29 C.F.R. § 2560.503-1.  *See also* 45 C.F.R. § 147.136(b)(3)(1).

With respect to futility, Defendants argue that the allegations are insufficient unless they show that an adverse result was certain.  D.E. 67, p. 10.  Cases on which Defendants rely that reject the futility argument have involved a single patient and a single claim.  *See McGowin v. ManPower Intern., Inc*., 363 F.3d 556, 559 (5th Cir. 2004) (citing *Bourgeois*, 215 F.3d 475, 480 (5th Cir. 2000)).  In these cases, the claimants were complaining that results or representations made in preliminary reviews indicated that higher level reviews would be futile because the preliminary results would likely be affirmed.  That was held insufficient because the lower reviews were not necessarily predictive of the possible results of a final review.

In contrast, Diagnostic Affiliates is complaining of futility because all but one or a very small fraction of the hundreds of claims submitted to final review were rejected.  This reflects actual results from actual submissions at the final level, not just prognostications from preliminary results.  Futility would not represent an exception to exhaustion if every single claim had to be exhausted in order to show the certainty of an adverse result.  It is

sufficient under *McGowin* and *Bourgeois* that the allegations reflect bias or hostility at the highest level.  These allegations meet that requirement.

In conclusion, Diagnostic Affiliates' amended complaint contains allegations sufficient to support its standing to raise ERISA claims and the plausibility that the claims review process of those claims still pending should be deemed exhausted or futile. Therefore, the motions are **DENIED IN PART** to the extent they challenge Count II.

**COUNT III:**
**VIOLATION OF ERISA - FULL AND FAIR REVIEW**

Defendants challenge Count III on the basis that a complaint for declaratory and equitable relief for failure to provide a full and fair review under 29 U.S.C. § 1132(a)(3) does not apply when the claimant has a cause of action for failure to pay under 29 U.S.C. § 1132(a)(1)(B).  Diagnostic Affiliates responds simply that it has adequately pled claims under each subsection.  This response does not join issue with the basis of Defendants' challenge.

Defendants cite binding Supreme Court and Fifth Circuit precedent holding that a § 1132(a)(3) claim for declaratory and equitable relief is not appropriate when the claimant also has a claim for payment of benefits under § 1132(a)(1)(b)—whether or not the claimant prevails on its claim for payment.  *Manuel v. Turner Indus. Group, L.L.C.*, 905 F.3d 859, 867 (5th Cir. 2018); *Rhorer v. Raytheon Eng'rs & Constructors, Inc*., 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011); *Tolson v. Avondale Indus., Inc*., 141 F.3d 604, 610 (5th Cir. 1998) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).  This construction of the availability of the

ERISA remedies is based on the different goals and standards of review applicable to each. *Varity*, 516 U.S. at 512.

This Court is bound by these cases and Diagnostic Affiliates has failed to demonstrate that this case poses an exception to the rules they announce.  Consequently, the motions to dismiss are **GRANTED IN PART** and the Court **DISMISSES** Count III.

### COUNT IV:
### RICO

United makes two challenges to the RICO claim.  First, it argues that the conduct complained of was nothing more than ordinary claims processing.  This argument reads the amended complaint too narrowly, in violation of the standard of review.  Diagnostic Affiliates clearly alleges that the actions United took—requesting excessive and repetitious documentation, misrepresenting the coverage or reimbursable amount for the service, and diverting claims to its CRS Benchmark Program to pocket unearned funds—went beyond ordinary claims processing and revealed a calculated and coordinated effort to delay, deny, or reduce the recovery Diagnostic Affiliates could make for its COVID-19 testing services and to profit by doing so.  The Court rejects United's challenge on this basis.

Second, United complains that Diagnostic Affiliates has not pled sufficient facts to show that any such predicate acts proximately caused its alleged injury—the failure to pay its claims in whole or in part.  *See generally Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 461 (2006).  By way of example, United cites *Anza* and *Shannon v. Ham*, 639 Fed. App'x 1001, 1004 (5th Cir. 2016) as cases in which the defendant's activities or communications may have been wrongful, but did not directly cause the plaintiff's injury.

23 / 32

In *Anza*, the fraud was perpetrated directly on a state taxing authority, which provided a tax savings to the fraudster, making the business more competitive. The plaintiff, a competing business, thus lost sales. But the Supreme Court held that the injured party was the defrauded state and that the related injury was lost tax revenue. While this provided the defendant with a competitive edge, the loss of sales by the competing plaintiff were too attenuated to maintain a RICO claim.

In *Shannon*, the RICO conduct was the defendant's misrepresentation of his licensure to sell crop insurance. The injury was mishandled insurance. The Fifth Circuit found that the misrepresentation of licensure had been ongoing for several years with no injury. And the link between any misrepresentations and the mishandling of insurance was too attenuated to support proximate causation for a RICO claim.

Here, as it details more fully in its response, Diagnostic Affiliates complains of communications in the claims handling process that were designed to, among other purposes, misrepresent plan coverage of the COVID-19 testing charges and create unreasonable obstacles to payment of claims so as to deny full payment and discourage efforts to enforce the payment requirements of the FFCRA, CARES Act, and plan documents in a coordinated effort among all United-related Defendants. The link between at least some of the conduct complained of and some of the injuries sustained is sufficiently direct to support proximate causation and survive Rule 12(b)(6) review.

The motion is **DENIED IN PART** to the extent that it challenges Count IV.

24 / 32

## COUNT V:
## DECLARATORY JUDGMENT

United has combined its challenges to Count V and Count X.  D.E. 67, pp. 19-20. With respect to Count V, it makes two arguments.  First, it contends that declaratory relief is improper because Diagnostic Affiliates is not entitled to relief under any of the causes of action set out in its pleadings, thus negating any entitlement to relief on the merits, declaratory or otherwise.  This argument fails because United has failed to defeat all of Diagnostic Affiliates' other causes of action.

Second, United argues that even if meritorious, the causes of action for damages adequately address the claims so invocation of declaratory relief under 28 U.S.C. § 2201 is impermissibly redundant.  *See Am. Equip. Co., Inc. v. Turner Bros. Crane & Rigging, LLC*, 4:13-CV-2011, 2014 WL 3543720, at *3 (S.D. Tex. July 14, 2014).  The *American Equipment* opinion cites *Collin County, Texas v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) for the proposition that the federal declaratory judgment statute was created as a procedural vehicle by which to obtain a remedy only if no other satisfactory remedy is available.

Diagnostic Affiliates' response is simply that it seeks declaratory relief in addition to other remedies.  D.E. 99, p. 34.  This does not address the issue of why damages and/or injunctive relief are not a satisfactory remedy available through the other causes of action, thus negating the need for declaratory relief.  In its amended complaint, Diagnostic Affiliates prays for declaration of statutory violations in the same breath as awarding damages and injunctive relief for those violations.

25 / 32

United has demonstrated that Diagnostic Affiliates' request for declaratory relief is redundant.  Its motion is **GRANTED IN PART** and the Court **DISMISSES** Count V seeking a declaratory judgment.

### COUNT VI:
### UNJUST ENRICHMENT AND QUANTUM MERUIT

United first argues that the theories of unjust enrichment and quantum meruit must fail because those theories require that the plaintiff provide a benefit to the defendant.  *See Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (quantum meruit); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) (unjust enrichment).  According to United, any services rendered by Diagnostic Affiliates were rendered to and for the benefit of the patient insureds, not to United or to the employer health plans.  *See ACS Primary Care Physicians Sw., P.A. v. UnitedHealthcare Ins. Co.*, 514 F. Supp. 3d 927, 935 (S.D. Tex. 2021); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011).

Diagnostic Affiliates responds, citing *El Paso Healthcare System, Ltd. v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) as holding that a service provided to an insured has the effect of benefiting the insurer by fulfilling the obligation to provide health care services.  That proposition was rejected by *ACS Primary Care* because the insurance company's responsibility is not to provide healthcare but to provide payment for health care if, as, and when provided by others to its insureds.  *ACS Primary Care*, 514 F. Supp. 3d at 935 (citing *El Paso Healthcare*).  In other words, any

26 / 32

benefit of the COVID-19 testing was received by the insured.  The insurance company only incurs a liability to pay for the service.

Diagnostic Affiliates invites this Court to align itself with the holding in *El Paso Healthcare* and the Third Circuit's decision in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co*., 967 F.3d 218, 242 (3d Cir. 2020).  The Court declines the invitation, agreeing with *ACS Primary Care* and finding that the *Plastic Surgery* decision was more about three things not at issue here—New Jersey law, a specific plan provision imposing special duties on Aetna for referring the insured to a specific provider under its plan, and ERISA preemption—than about whether an ordinary health care plan is benefitted by the provision of health care to its insureds.

United also argues that the quantum meruit claim is defeated by the fact that the parties' relationship is controlled by a written contract—the health care plans.  "As a general rule, the presence of an express contract bars recovery under quantum meruit." *Pepi Corp*, 254 S.W.3d at 462 (citing *In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 740 (Tex. 2005)).  Diagnostic Affiliates responds that its claim is controlled by the FFCRA and CARES Act and not the health care plans.  The Court disagrees.

In this action, Diagnostic Affiliates has presented its claims to Defendants because they are responsible for payment for the services rendered to their insured patients.  As United points out in its reply, the import of the FFCRA and CARES Act is to impose upon those health care plans the obligation to include COVID-19 testing as a covered service under their plans.  The terms of the plans are effectively modified to prevent the imposition

of cost sharing and other charges or administrative procedures on the insureds.   The
requirement to pay is imposed on Defendants because they have a contractual obligation
to pay for the insured's health care—not because of some independent equitable purpose.

For these reasons, United's motion is **GRANTED IN PART** and the Court
**DISMISSES** Count VI with respect to both quantum meruit and unjust enrichment
theories.

## COUNT VII:
## PROMISSORY ESTOPPEL

United challenges the claim for promissory estoppel, complaining of Diagnostic
Affiliates' pleading:   "None of these allegations show that United made a sufficiently
specific and definite promise to the Plaintiff that it would pay COVID testing claims such
that Plaintiff's purported reliance on any statements would be reasonable."   D.E. 67, p. 17
(citing *Walker v. Walker*, 631 S.W.3d 259 (Tex. App.—Houston [14th Dist.] 2020, no
pet.)).   Moreover, United notes that nothing in the FFCRA or CARES Act prevents United
from reviewing claims for fraud and abuse.   *Id*.

The *Walker* case was a summary judgment case.   And United's arguments do not
comport with the Rule 12(b)(6) standard of review in which the Court takes the allegations
of the complaint and all reasonable inferences in favor of the plaintiff as true.   Contrary to
United's reading of the complaint, the allegations do provide factual support for finding
that United made specific and definite representations as a commitment to future action on
which Diagnostic Affiliates could reasonably rely.   Anything to the contrary can be
investigated in discovery and proven at trial.

28 / 32

United's motion is **DENIED IN PART** with respect to its challenge to Count VII.

**COUNT IX:**
**TEXAS PROMPT PAYMENT OF CLAIMS ACT**

Under the Texas Insurance Code's Prompt Payment of Claims Act (PPCA), insurance companies must pay (or deny) properly documented claims within 30 or 45 days of receipt, depending on whether the claim was submitted electronically.  Tex. Ins. Code §§ 843.338 (HMO plans), 1301.103 (PPO plans).  Failure to do so requires payment of a significant penalty.  §§ 843.342, 1301.137.

However, those provisions require payment "in accordance with the contract" between the provider and the insurance company.  §§ 843.338(1), 1301.103(1).  The Texas Supreme Court has declared unequivocally that this means that contractual privity is required for a PPCA cause of action.  *Christus Health Gulf Coast v. Aetna, Inc*., 397 S.W.3d 651, 656 (Tex. 2013).  Diagnostic Affiliates does not dispute this general rule for interpreting the statute.  However, there is an exception.

The terms of the PPCA apply to an out-of-network provider for providing "care related to an emergency or its attendant episode of care as required by state or federal law." §§ 843.351, 1301.069.  Without reference to the particular reasons or contexts in which patients sought COVID-19 testing, Diagnostic Affiliates claims that its services were related to a federally-declared pandemic emergency.  The Court need not decide whether testing in a pandemic is the type of emergency contemplated by the PPCA.

As United argues, whether or not the exception makes other parts of the PPCA applicable to Diagnostic Affiliates as an out-of-network provider, it is not eligible for the

29 / 32

penalty because the penalty must be calculated on the basis of a contracted rate, which Diagnostic Affiliates does not have.  *See Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458, 469 (Tex. App.—Dallas 2021, pet. filed); *see also Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Tex.*, SA-19-CV-01211-OLG, 2020 WL 7017739, at *13 (W.D. Tex. Apr. 22, 2020).  Diagnostic Affiliates responds, without benefit of authority, that this case is distinguishable because the statutory reimbursement provisions of the FFCRA and CARES Act supply an easily quantifiable payment rate, which it impliedly argues is the equivalent of a contracted rate.

Diagnostic Affiliates' argument fails by its own terms.  While the FFCRA and CARES Act impose a statutory method of determining the rate of reimbursement, the method provides for either a negotiated rate or a unilaterally-declared publicly posted rate. And Diagnostic Affiliates relies solely on a publicly posted rate.  This Court sees no reason to consider these methods as contractual rates.  While Diagnostic Affiliates argues that the publicly posted rate, by virtue of the statutes, is more readily ascertainable than a "usual, customary, and reasonable" rate, the question is not about how easily determinable the rate is.  Rather, the question is whether it was set by agreement.

United's motion to dismiss is **GRANTED IN PART** and the Court **DISMISSES** Count IX.

### COUNT X:
### INJUNCTIVE RELIEF

United's remaining challenge to Diagnostic Affiliates' request for injunctive relief is that it cannot show a likelihood of success on the merits.  *See Planned Parenthood of*

*Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (likelihood of success on the merits is the first of four elements that must be shown to obtain injunctive relief).  This argument is predicated on the success of United's motion to dismiss as to every one of the causes of action.  Because this Court has retained a number of the causes of action, United has not demonstrated, and cannot show at the Rule 12(b)(6) stage, that Diagnostic Affiliates does not have a likelihood of success on the merits and this challenge fails.

United's motion is **DENIED IN PART** with respect to Count X.

## PREJUDICIAL DISMISSALS

Diagnostic Affiliates has asked that any dismissal be without prejudice.  Absent a full or partial final judgment,

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  The Court is aware that many of these issues are in rapidly developing areas of the law and that the COVID-19 pandemic presents an unusual context for these claims.  Should any party have appropriate new grounds on which to resubmit these matters to the Court, Rule 54(b) allows reconsideration.  No disposition at this point is final or prejudicial.

## CONCLUSION

For the reasons set out above, the motions to dismiss (D.E. 67, 105, 112, 119, 130, 141, and 145) are **GRANTED IN PART** and **DENIED IN PART**.   The Court **DISMISSES** the following claims:

Count III:   Violation of ERISA for failure to provide a full and fair review of the claims - against all Defendants;

Count V:   Request for a declaratory judgment - against United;

Count VI:   Claim for unjust enrichment and quantum meruit - against United: and

Count IX:   Violation of the Texas Prompt Pay Act - against United.

All other claims are **RETAINED**.

ORDERED on January 18, 2022.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE